UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GRANT KAISER and
JOHN FURNISH,
    Plaintiffs,

                                 CIVIL ACTION NO.
                                 21-10590-MBB

       v.

WILLIAM DEAN KIRCHICK, CAROL
RUDNICK KIRCHICK, Individually
and as Trustee of the 41 SEAVIEW
TERRACE REAL ESTATE TRUST,
and RONALD STEVEN RUDNICK,
    Defendants.


**MEMORANDUM AND ORDER RE:**
**DEFENDANT RONALD STEVEN RUDNICK'S SPECIAL MOTION TO DISMISS**
**PURSUANT TO G.L. c. 231, § 59H AND PARTIAL MOTION TO DISMISS**
**PURSUANT TO FED. R. CIV. P. 12(c) (DOCKET ENTRY # 25);**
**DEFENDANTS WILLIAM KIRCHICK AND CAROL RUDNICK KIRCHICK'S SPECIAL**
**MOTION TO DISMISS PURSUANT TO G.L. c. 231, § 59H AND PARTIAL**
**MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) (DOCKET**
**ENTRY # 28)**

**December 16, 2021**

**BOWLER, U.S.M.J.**

    Pending before this court are two motions: (1) a special
motion to dismiss and partial motion to dismiss filed by
defendant Ronald Steven Rudnick ("Rudnick") (Docket Entry # 25);
and (2) a special motion to dismiss and partial motion to
dismiss filed by defendants William Dean Kirchick and Carol
Rudnick Kirchick (together, "the Kirchicks") (Docket Entry #
28).  Plaintiffs Grant Kaiser ("Kaiser") and John Furnish
("Furnish") (together, "plaintiffs") oppose the motions.

(Docket Entry ## 40, 41).  After conducting a hearing on
September 10, 2021, this court took the motions under
advisement.  (Docket Entry # 52).

PROCEDURAL BACKGROUND

Plaintiffs initiated this action on April 9, 2021, bringing
five counts against Rudnick and the Kirchicks (together,
"defendants"): violation of Massachusetts General Laws (sections
11H, 11I, and 11J of chapter 12) and the Massachusetts
Declaration of Rights (Articles I, X, and XII) (Count I);
defamation (Count II); intentional infliction of emotional
distress ("IIED") (Count III); conspiracy (Count IV); and abuse
of process (Count V).  (Docket Entry # 1).

More specifically, the complaint alleges that defendants:
subjected plaintiffs to a nearly three-year "pattern of threats,
intimidation, harassment, coercion, and defamation" (Count I)
(Docket Entry # 1, p. 25, ¶ 82); "knowingly and intentionally,
and falsely, published to a substantial portion of the Chatham
community that" plaintiffs "engaged in bad behavior sufficient
to warrant the issuance of no trespass orders" (Count II)
(Docket Entry # 1, p. 25, ¶ 85); "intended to" and "did cause
plaintiffs emotional distress" and engaged in extreme and
outrageous conduct (Count III) (Docket Entry # 1, p. 26, ¶ 87);
"joined together to act in concert and by agreement over the
course of several years for the unlawful purpose of threatening,

2

intimidating, harassing and coercing [p]laintiffs . . . to remove trees from [p]laintiffs' own property" (Count IV) (Docket Entry # 1, p. 26, ¶ 90); and "have filed various actions without basis in fact or law . . . ." (Count V) (Docket Entry # 1, p. 27, ¶ 93).

Rudnick filed a special motion to dismiss counts II and V pursuant to Massachusetts General Laws, chapter 231, section 59H (the "anti-SLAPP statute"), and a partial motion to dismiss counts II and V pursuant to Fed. R. Civ. P. 12(c) ("Rule 12(c)"). (Docket Entry # 25). The Kirchicks filed a special motion to dismiss counts II and V pursuant to the anti-SLAPP statute and a partial motion to dismiss counts II and III pursuant to Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)"). (Docket Entry # 28).

### FACTUAL BACKGROUND[1]

Plaintiffs have seasonally resided at 39 Seaview Terrace in Chatham, Massachusetts since July 2008. (Docket Entry # 1, pp. 4, 6, ¶¶ 8, 18). The Kirchicks have seasonally occupied the adjacent home at 41 Seaview Terrace since 1999, when 41 Seaview Terrace Real Estate Trust bought the property. (Docket Entry # 1, pp. 4-6, ¶¶ 12, 15, 19). The two homes are directly across

---

[1] The factual background from the complaint applies to both motions to dismiss (Docket Entry ## 25, 28). Additional facts from the affidavits filed with respect to each motion are set out in the Discussion section.

from each other.  (Docket Entry # 1, p. 6, ¶ 20).  Rudnick, Mrs.
Kirchick's brother, operates Lighthouse Realty and "is a
licensed real estate broker and a licensed contractor who owns
and/or manages properties in Chatham and throughout Cape Cod."
(Docket Entry # 1, p. 5, ¶ 14).

Between 2008 and 2009, the Kirchicks constructed a new home
on their property.  (Docket Entry # 1, p. 6, ¶ 19).  Plaintiffs
also made modifications to their property, including planting
trees along the 39 and 41 Seaview Terrace fence line.  (Docket
Entry # 1, p. 6, ¶ 21).  On May 4, 2011, plaintiffs emailed the
Kirchicks their landscaping plans, which included moving a pear
tree and removing a tree and bushes.  (Docket Entry # 1-1, p.
2).  In his reply two days later, the Kirchicks communicated
that they "were fine" with plaintiffs' proposal.  (Docket Entry
# 1-1, p. 2).

During the summer of 2017, however, the Kirchicks grew
concerned about the location of two mature pear trees on
plaintiffs' property.  (Docket Entry # 1, p. 7, ¶¶ 23-24)
(Docket Entry # 1-2, p. 2).  In an email to Rudnick on July 27,
2017, Mrs. Kirchick expressed her concern that the height of the
two trees on plaintiffs' property blocked "the ocean view from
the upstairs back bedroom."  (Docket Entry # 1-2, p. 2).  During
a meeting with Kaiser on August 12, 2017, the Kirchicks

requested that plaintiffs remove the two pear trees and showed Kaiser the obstructed view.  (Docket Entry # 1, p. 6, ¶ 21).

After this meeting, plaintiffs contacted "landscape architects, landscape maintenance companies, and arborists about what options might be available" for relocating the two pear trees.  (Docket Entry # 1, p. 7, ¶ 26).  Throughout August 2017, Rudnick instructed his Lighthouse Realty workers to park their vehicles "at the entrance of the private way leading to [p]laintiffs' home, which is the sole means of accessing [p]laintiffs' home."  (Docket Entry # 1, p. 8, ¶ 30).  Mrs. Kirchick emailed Rudnick to thank him for doing so.  (Docket Entry # 1, p. 9, ¶ 31) (Docket Entry # 1-3, p. 2).  Further communication between defendants included discussions as to whether to contact the Cape Cod Chronicle to write a story about plaintiffs or to "burn" plaintiffs' trees.  (Docket Entry # 1, p. 9, ¶¶ 33-34) (Docket Entry # 1-5, p. 2).

In an email dated August 22, 2017, Kaiser informed Mr. Kirchick that plaintiffs were "consulting with [their] landscaping company to determine whether the tree can be transplanted successfully somewhere else on [their] property." (Docket Entry # 1-5, p. 2).  Defendants, however, wanted both pear trees removed.  (Docket Entry # 1-5, p. 2).  On September 10, 2017, Kaiser emailed the Kirchicks to schedule a time to meet and discuss their request.  (Docket Entry # 1-9, p. 3).

5

On September 13, 2017, Kaiser emailed Mr. Kirchick and
noted that "[w]hile the Lighthouse Realty truck has been parked
at the entrance to [plaintiffs'] property for more than 3 weeks,
there have been no workers around."  (Docket Entry # 1-8, p. 2).
Mrs. Kirchick suggested to Mr. Kirchick that he reply: "'Does
the truck bother you even though it doesn't affect your
enjoyment of your property?  Now you know what those damn trees
are doing to us.'"  (Docket Entry # 1-8, p. 2).  The following
day, Mrs. Kirchick suggested to Rudnick that plaintiffs had not
"received the message" and it was maybe "time to move the truck
back and start planting in the flatbed."  (Docket Entry # 1-4,
p. 2).  Defendants discussed additional courses of action, such
as removing cobblestones from the private way and painting it
purple.  (Docket Entry # 1, pp. 11-12, ¶¶ 41-42) (Docket Entry #
1-11, p. 2) (Docket Entry # 1-12, p. 2).

In a letter to plaintiffs dated March 23, 2018, an attorney
representing the Kirchicks communicated the results of a survey
of the Kirchicks' property and the shared driveway.  (Docket
Entry # 1-13, p. 2).  The Kirchicks' attorney stated that
plaintiffs' mailbox and fence were on the Kirchicks' property
and that the Kirchicks owned the portion of the shared driveway
in front of plaintiffs' house.  (Docket Entry # 1-13, p. 2).  He
noted that the Kirchicks would "accept the placement of the
fence and mailbox" in exchange for plaintiffs' removal of the

two trees and their granting the Kirchicks a "view easement over
the area where those trees are located."  (Docket Entry # 1-13,
p. 2).  The Kirchicks would also "give up their right to park or
otherwise use the portion of the private way which [plaintiffs]
have planted and treat as [their] private drive."  (Docket Entry
# 1-13, p. 2).  The letter asked that plaintiffs respond by
April 30, 2018.  (Docket Entry # 1-13, p. 2).  On April 11,
however, and before a response from plaintiffs, the attorney
notified them that Rudnick would be re-surfacing the Kirchicks'
portion of the driveway and asked where they "would like the
mailbox and fence placed."  (Docket Entry # 1-14, p. 2).

Beginning on April 12, 2018, Kaiser received several phone
calls from Rudnick threatening to "make plaintiffs' lives
'miserable' and 'drive' [them] 'out of town'" if they did not
capitulate to the Kirchicks' demands and cut down the trees.
(Docket Entry # 1, p. 13, ¶ 48).  Rudnick offered to "'call off
the dogs'" if plaintiffs complied and threatened to "'send the
suits in'" if they did not.  (Docket Entry # 1, p. 14, ¶¶ 50–
51).  In a call with Rudnick the following day, Kaiser offered
to cut down one of the two trees but Rudnick rejected the offer
and responded that he would "'start tearing stuff out, like
bushes and mailboxes.'"  (Docket Entry # 1, pp. 14–15, ¶ 52).
The same day, Mrs. Kirchick emailed Rudnick that "[plaintiffs]
should move" and suggested that defendants proceed with removing

the fence.  (Docket Entry # 1-16, p. 2).  On May 24, 2018, Rudnick and his employees assisted the Kirchicks in "severely butcher[ing] and damag[ing] the side of a mature privet lining the private way leading to [p]laintiffs' home."  (Docket Entry # 1, p. 16, ¶ 57).  "On June 1, 2018, the Kirchicks' attorney informed [p]laintiffs' attorney that [d]efendants . . . planned to destroy [p]laintiffs' property" and "remove vegetation on June 8, 2018."  (Docket Entry # 1, p. 17, ¶ 59).

"Concerned that [d]efendants' threats would escalate into physical violence," plaintiffs approached the Chatham police on June 6, 2018.  (Docket Entry # 1, p. 17, ¶¶ 59-60).  On June 8, 2018, acting on the Chatham police's recommendation, plaintiffs obtained harassment prevention orders pursuant to Massachusetts General Laws, chapter 258E ("chapter 258E orders"), from the Orleans District Court against Rudnick and the Kirchicks. (Docket Entry # 1, p. 18, ¶ 63).  Although the chapter 258E orders were set to expire July 2 and July 17, respectively, the Kirchicks agreed to a 60-day extension.  (Docket Entry # 1, p. 18, ¶¶ 64-65).  However, the Orleans District Court denied an extension of the chapter 258E order against Rudnick on July 17, "indicating that the parties could pursue their remedies through civil litigation."  (Docket Entry # 1, pp. 18-19, ¶ 66).  As the parties left "the courtroom after the hearing, [] Rudnick said

to [p]laintiffs, 'Now the fun begins.'"  (Docket Entry # 1, p. 18, ¶ 66).

On July 26, 2018, the Kirchicks filed a special permit request with the Chatham Zoning Board of Appeals (the "ZBA") for "authority to pave over . . . the cobble and rock private way" and to "remove [p]laintiffs' mailbox and [] several mature trees."  (Docket Entry # 1, p. 19, ¶ 68).  On the same day, they also initiated an action against plaintiffs in Barnstable Superior Court, "alleging, among other things, abuse of process (in connection with the [chapter 258E orders] issued against them by the Orleans District Court) and trespass" (the "State Action").  (Docket Entry # 1, p. 20, ¶ 69).  After doing so, Rudnick wrote in an email to Mrs. Kirchick: "The fun begins remember I said that to [Kaiser]."  (Docket Entry # 1-18, p. 2).  After the Kirchicks failed to comply with their discovery obligations, however, the court entered a default judgment against them.  (Docket Entry # 1, pp. 20-21, ¶ 71).  The Kirchicks did not appeal.  (Docket Entry # 1, pp. 20-21, ¶ 71).

On July 31, 2018, Rudnick procured no-trespass orders against Kaiser from "numerous Chatham restaurants, stores and other retail establishments that are otherwise open to the public," many of which were "located on land managed by and/or

in which Rudnick holds an ownership interest."[2]   (Docket Entry #
1, pp. 21-22, ¶¶ 72-74).   Rudnick sent the orders to the Chatham
police to serve on Kaiser, which the police did on August 2,
2018.   (Docket Entry # 1, p. 21, ¶ 73).   He also obtained a no-
trespass order from the Chatham Orpheum Theater, but the Chatham
police declined to serve it on Kaiser because Rudnick had no
ownership interest in that nonprofit or connection to that
property.   (Docket Entry # 1, p. 22, ¶ 75).

Since that time, there have been several other incidents
involving Rudnick and the Kirchicks, notably:

a.  On multiple occasions, Rudnick . . . was at and near
[p]laintiffs' home taking photographs and talking on his
phone . . .

b.  Rudnick and Mrs. Kirchick took photographs of
[p]laintiffs' home and of [p]laintiffs working in their
yard.  Rudnick and Mrs. Kirchick even used a golf cart from
the local golf course . . . to approach [p]laintiffs'
property from the backyard.

c.  Rudnick regularly drove his . . . car to the front of
[p]laintiffs' property, sometimes to just sit in his car
watching, and other times getting out of his car . . .

d.  On September 4, 2018, [] four days after the extended
[chapter 258E orders] against the Kirchicks expired, Mrs.
Kirchick and Rudnick gathered once again in the private way
and directed his employees to severely butcher, cutback,

---

[2]  "Plaintiffs were permanently barred from entering, . . .
without limitation, Delmar Restaurant, Bistro Restaurant and Raw
Bar, Sandi's Diner, Carmine's Pizza, Focus Gallery, Ports &
Company, the Chatham Liquor Locker, Lighthouse Realty, parking
lots, and virtually every other establishment located in the
middle of downtown Chatham that is part of the 595 Main Street
complex."  (Docket Entry # 1, pp. 21-22, ¶ 74).

and damage the side of the privet lining the private way
leading to [p]laintiffs' home.

e.  Defendants regularly interfered with [p]laintiffs'
service providers . . . by [] approaching them and
photographing them . . .

f.  Defendants continued periodically to park vehicles in
the private way leading to [p]laintiffs' home to impede
[p]laintiffs' (and their service providers') ingress and
egress to their home.

g.  The Kirchicks' attorney sent an email to the Kirchicks
on March 29, 2019, confirming that one of the concrete
bounds erected for the purpose of designating the boundary
of [p]laintiffs' property had been [] removed.  Plaintiffs
did not authorize or request removal of the bound.

h.  Defendants filed a [] complaint on June 11, 2019,
claiming that [p]laintiffs had violated the Special Permit
they obtained in 2011 in connection with configuring the
parking area in front of their house . . . .  Instead of
litigating the [] matter, [p]laintiffs reconfigured the
parking area at a lesser, but substantial cost.

i.  On July 23, 2019, while [p]laintiffs were in their
home, Rudnick [] walked up the private way leading to
[p]laintiffs' home and into their backyard to examine the
pear trees [d]efendants want to cut down.  Rudnick did not
have [p]laintiffs' permission to enter their property.

j.  Seven (7) days later, in a letter dated August 1, 2019,
Mr. Kirchick and Mrs. Kirchick issued another no trespass
notice, this time to both [p]laintiffs.  The notice cited
G.L. c. 266 § 120, again threatening [p]laintiffs with the
risk of arrest and imprisonment.

k.  Eighteen days later, on the morning of August 18, 2019,
Mr. Kirchick . . . repeatedly trespassed on [p]laintiffs'
property by bringing orange traffic cones onto
[p]laintiffs' property, placing the cones there, removing
them and then replacing them there, doing so multiple
times.

(Docket Entry # 1, pp. 22-24, ¶ 77).

STANDARD OF REVIEW

I.  Special Motion Pursuant to The Anti-SLAPP Statute

"The anti-SLAPP statute was enacted by the [Massachusetts] Legislature to provide a quick remedy for those citizens targeted by frivolous lawsuits based on their government petitioning activities."  Kobrin v. Gastfriend, 821 N.E.2d 60, 62 (Mass. 2005).  Under the statute, a party may "bring a special motion to dismiss" if the civil claims "are based on said party's exercise of its right to petition under the" United States or Massachusetts constitutions.  Mass. Gen. Laws ch. 231, § 59H; Fustolo v. Hollander, 920 N.E.2d 837, 840 (Mass. 2010).

The party moving for dismissal under the anti-SLAPP statute "bears the burden of establishing by a preponderance of the evidence that the putative SLAPP suit . . . was 'solely based on [the moving party's] own petitioning activities.'"  Blanchard v. Steward Carney Hosp., Inc., 130 N.E.3d 1242, 1248 (Mass. 2019) (citation omitted) ("Blanchard II").  Once the moving party has satisfied such burden, the burden then shifts to the nonmovant to "show[] that: (1) the moving party's exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law and (2) the moving party's acts caused actual injury to the [nonmoving] party."  Mass. Gen. Laws ch. 231, § 59H.

"When a defendant advances motions to dismiss based both on the anti-SLAPP statute and on other grounds, courts 'first should decide . . . whether to grant' the anti-SLAPP motion before deciding other grounds for dismissal." de Lench v. Archie, 406 F. Supp. 3d 154, 158 (D. Mass. 2019) (quoting Kobrin, 821 N.E.2d at 70).  In ruling on a special motion to dismiss under the anti-SLAPP statute, "courts consider pleadings and affidavits without indulging inferences in favor of the non-moving party."  Bargantine v. Mechs. Co-op. Bank, No. 13-11132-NMG, 2013 WL 6211845, at *2 (D. Mass. Nov. 26, 2013).  The standard of review under the anti-SLAPP framework is therefore "fundamentally different from a Rule 12 motion" or Rule 12(b)(6) motion because it "incorporates additional fact-finding beyond the facts alleged in the pleadings."  S. Middlesex Opportunity Council, Inc. v. Town of Framingham, No. 07-12018-DPW, 2008 WL 4595369, at *10 (D. Mass. Sept. 30, 2008).  Thus, to prevail, the moving party must "make a threshold showing through pleadings and affidavits that the claims against [him] are based on the petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities." Fustolo v. Hollander, 920 N.E.2d 837, 840 (Mass. 2010) (citation and internal quotation marks omitted).

II.  <u>Rule 12(b)(6) Motion</u>

The standard of review for a Rule 12(b)(6) motion is well established.  To survive a Rule 12(b)(6) motion to dismiss, the complaint and documents attached thereto "must contain 'enough facts to state a claim to relief that is plausible on its face'" even if actual proof of the facts is improbable.  <u>Miller v. Town of Wenham Massachusetts</u>, 833 F.3d 46, 51 (1st Cir. 2016) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 556, 570 (2007)); <u>see also</u> Fed. R. Civ. P. 10(c) (providing that exhibits to a pleading are "part of the pleading for all purposes").  The "standard is 'not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.'"  <u>Saldivar v. Racine</u>, 818 F.3d 14, 18 (1st Cir. 2016) (quoting <u>Ashcroft v. Iqbal</u>, 656 U.S. 662, 678 (2009)).  "[A]ll reasonable inferences" are drawn "in the pleader's favor."  <u>Sanders v. Phoenix Ins. Co.</u>, 843 F.3d 37, 42 (1st Cir. 2016).

In evaluating a Rule 12(b)(6) motion, a court may consider certain narrow categories of documents outside the complaint without converting the motion into one for summary judgment.  <u>Ironshore Specialty Ins. Co. v. United States</u>, 871 F.3d 131, 135 (1st Cir. 2017).  These "'narrow exceptions'" include "'documents the authenticity of which are not disputed by the parties; official public records; documents central to the

plaintiff's claim; and documents sufficiently referred to in the complaint' . . . ." Newman v. Lehman Bros. Holdings Inc., 901 F.3d 19, 25 (1st Cir. 2018) (ellipses and brackets omitted) (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)).

It is also appropriate for a court deciding a Rule 12(b)(6) motion to consider "matters of public record and facts susceptible to judicial notice." U.S. ex rel. Winkelman v. CVS Caremark Corp., 827 F.3d 201, 208 (1st Cir. 2016). Documents susceptible to judicial notice include state court filings. See United States v. Mercado, 412 F.3d 243, 247–48 (1st Cir. 2005) (taking judicial notice of state court docket entries); Smith v. Grondolsky, 299 F. Supp. 3d 287, 290 (D. Mass. 2018), aff'd, No. 18-1316, 2019 WL 10378245 (1st Cir. Sept. 4, 2019) ("[T]his court can and does take judicial notice of the docket of other courts."). Accordingly, in evaluating the Kirchicks' partial motion to dismiss pursuant to Rule 12(b)(6), this court may consider the filings in the parties' various state court proceedings. See Mercado, 412 F.3d at 247–48.

III. Rule 12(c) Motion

A Rule 12(c) motion for judgment on the pleadings "'is treated much like a Rule 12(b)(6) motion to dismiss.'" Villeneuve v. Avon Prod., Inc., 913 F.3d 50, 43 n.2 (1st Cir. Mar. 19, 2019) (citation omitted). "[T]he well-pleaded facts and the reasonable inferences therefrom'" in the complaint are

viewed "in the light most favorable to the nonmovant (here, []

plaintiff[s])." Kando v. R. I. State Bd. of Elections, 880 F.3d

53, 58 (1st Cir. 2018). Judgment on the pleadings "is proper

if—after accepting all well-pleaded facts as true and viewing

them in the light most favorable to [the plaintiff]—the

complaint fails to allege a plausible right to relief."

Villeneuve, 913 F.3d at 49 (citations omitted). In the event

that "a court grants a . . . Rule 12(c) motion based on an

affirmative defense, the facts establishing that defense must:

(1) be 'definitively ascertainable from the complaint and other

allowable sources of information,' and (2) 'suffice to establish

the affirmative defense with certitude.'" Gray v. Evercore

Restructuring L.L.C., 544 F.3d 320, 324 (1st Cir. 2008).

DISCUSSION

I. Rudnick

Because Rudnick "advances motions to dismiss based both on

the anti-SLAPP statute and" under Rule 12(c), this court will

begin with "the anti-SLAPP motion before deciding other grounds

for dismissal." See de Lench, 406 F. Supp. 3d at 158 (quoting

Kobrin, 821 N.E.2d at 70).

A.   Special Motion to Dismiss Counts II (Defamation) and
     V (Abuse of Process) Pursuant to the Anti-SLAPP Statute

Rudnick seeks dismissal of counts II (defamation) and V

(abuse of process) on the basis that his activities underlying

16

those claims are protected forms of petitioning under the anti-SLAPP statute.  (Docket Entry # 26, p. 7) (Docket Entry # 48, p. 7).  More specifically, he argues that his procurement and transmittal of no-trespass orders from local business owners against Kaiser: (1) are protected petitioning activities; and (2) were "on a good-faith and reasonable factual basis," thereby fulfilling his burden under the anti-SLAPP statute.  (Docket Entry # 26, p. 1) (Docket Entry # 48, p. 8).

Plaintiffs, in turn, argue that: (1) Rudnick has failed to meet his burden in establishing that their claims are solely based on his petitioning activity; and (2) plaintiffs have met their burden under the anti-SLAPP statute by showing that "(i) Rudnick's petitioning activity had no basis in law or fact" (Docket Entry # 41, p. 6); "(ii) [p]laintiffs' claims were not brought primarily to chill Rudnick's exercise of [his] petitioning rights . . . ."  (Docket Entry # 41, p. 6); and (iii) Rudnick's "sham petitioning" caused them actual injury in the form of reputational harm, humiliation, and inability to enjoy their property (Docket Entry # 41, pp. 10, 11-12). Although the no-trespass orders were against only Kaiser, plaintiffs allege that the orders "practically implicate[] [Furnish]" by virtue of plaintiffs' being a same-sex couple. (Docket Entry # 1, pp. 21-22, ¶ 74).

17

    i.   <u>Burden-Shifting Framework of the Anti-SLAPP Statute</u>

The party moving for dismissal under the anti-SLAPP statute "bears the burden of establishing by a preponderance of the evidence that the putative SLAPP suit . . . was 'solely based on [the moving party's] own petitioning activities.'" <u>Blanchard II</u>, 130 N.E.3d at 1248 (citation omitted).  Thus, "defendants do not obtain dismissal through an anti-SLAPP motion just because <u>some</u> of the allegations in the complaint are directed at conduct by the defendants that constitutes petitioning activity." <u>Haverhill Stem LLC v. Jennings</u>, 172 N.E.3d 410, 418 (Mass. 2021).  "[T]he key inquiry" at this stage "is whether 'the only conduct complained of is . . . petitioning activity.'" <u>477 Harrison Ave., LLC v. Jace Bos., LLC</u>, 74 N.E.3d 1237, 1244 (Mass. 2017) (citation omitted).

Once the moving party satisfies its burden, "the nonmoving party . . . must establish by a preponderance of the evidence . . . that '(1) the moving party's . . . exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law and (2) the moving party's . . . acts caused actual injury to the responding party . . . .'" <u>Blanchard II</u>, 130 N.E.3d at 1248 (citation omitted). Alternatively, the nonmoving party may demonstrate, "such that the [court] could conclude with fair assurance, that" its suit (a) was "'colorable'" and (b) "not brought with the 'primary

motivating goal' of chilling the [moving party's] exercise of its petitioning rights, i.e., that it was not retaliatory." 477 Harrison Ave., LLC v. JACE Bos., LLC, 134 N.E.3d 91, 101 (2019) (quoting Blanchard II, 130 N.E.3d at 1249).  The nonmoving party's claim is "colorable" if it "offers some reasonable possibility of a decision in [that] party's favor." Blanchard II, 130 N.E.3d at 1251 (citation and internal quotation marks omitted).

Under the anti-SLAPP statute, the right to petition encompasses:

> [1] any written or oral statement made before or submitted to a legislative, executive, or judicial body, or any other governmental proceeding; [2] any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding; [3] any statement reasonably likely to encourage consideration or review of an issue by a legislative executive, or judicial body or any other governmental proceeding; [4] any statement reasonably likely to enlist public participation in an effort to effect such consideration; or [5] any other statement falling within constitutional protection of the right to petition government.

Mass. Gen. Laws ch. 231, § 59H.  Petitioning activities include "all statements made to influence, inform, or at the very least, reach governmental bodies—either directly or indirectly." Burley v. Comets Cmty. Youth Ctr., Inc., 917 N.E.2d 250, 254 (Mass. App. Ct. 2009); see also Garabedian v. Westland, 59 Mass. App. Ct. 427, 431, 796 N.E.2d 439, 444 (2003) (explaining that defendants' activities "had the character of

'petitioning activity'" because they had, <u>inter alia</u>, summoned police and made representations to town and state officials to obtain public intervention in the plaintiff's land filling work). Protected petitioning includes, for instance, contacting the police regarding suspected criminal activity or the procurement and transmittal of no-trespass orders. <u>See</u> <u>O'Gara v. St. Germain</u>, 77 N.E.3d 870, 872 (Mass. App. Ct. 2017) (reporting to police violation of no-contact order); <u>Burley</u>, 917 N.E.2d at 254 (transmittal of no-trespass letter to police). However, the mere fact "[t]hat a statement concerns a topic that has attracted governmental attention, in itself, does not give that statement the [petitioning] character contemplated by the statute." <u>Glob. NAPS, Inc. v. Verizon New England, Inc.</u>, 828 N.E.2d 529, 533 (Mass. App. Ct. 2005)).

Lastly, Massachusetts courts have interpreted the anti-SLAPP statute as requiring a petitioner to undertake the protected activities on his own behalf. <u>Cardno ChemRisk, LLC v. Foytlin</u>, 68 N.E.3d 1180, 1188 (Mass. 2017); <u>Kobrin</u>, 821 N.E.2d at 63 (holding defendant's activities not protected by anti-SLAPP statute because "he was not seeking from government any form of redress for a grievance of his own or otherwise petitioning on his own behalf . . . ."). Additionally, for defamation claims, there must be a "'plausible nexus between the statement and the governmental proceeding.'" <u>Blanchard v.</u>

Steward Carney Hosp., Inc., 75 N.E.3d 21, 30 (Mass. 2017)

("Blanchard I").

> ii.  Rudnick Has Not Satisfied His
>      Burden Under the Anti-SLAPP Statute

As the moving party, Rudnick "bears the burden of establishing by a preponderance of the evidence that" plaintiffs' defamation and abuse of process claims are "'solely based on [his] own petitioning activities.'"  See Blanchard II, 130 N.E.3d at 1248 (citation omitted).  At this initial stage, Rudnick's "motive behind [any] petitioning activity is irrelevant . . . ."  See Off. One, Inc. v. Lopez, 769 N.E.2d 749, 757 (Mass. 2002).  According to Rudnick, "[i]t is undisputed" that the defamation and abuse of process claims are both solely based on his petitioning activities, namely his procurement and transmittal of no-trespass orders.  (Docket Entry # 48, p. 7); see also (Docket Entry # 26, pp. 3-4).  For the following reasons, this court disagrees.

"Under the [anti-SLAPP] statute's broad definitions," the procurement and transmittal of no-trespass orders can indeed qualify as petitioning activities.  See Burley, 917 N.E.2d at 254 (explaining that petitioning activity includes all statements made to reach governmental bodies and that "if the only defamatory conduct alleged by [the plaintiff] were the sending of copies of the no-trespass letter to the police and

the court, . . . the complaint [would be] subject to dismissal under the anti-SLAPP statute"); McLarnon v. Jokisch, 727 N.E.2d 813, 817 (Mass. 2000) (concluding that "any written or oral statement made before or submitted to a . . . judicial body" includes filing for abuse protection orders); Mass Gen. Laws ch. 231, § 59H. "[A]n actionable abuse of process claim will always be, at least in part, based on a special movant's petitioning activities" because "the invocation of process necessarily constitutes petitioning activity for the purposes of the anti-SLAPP statute." 477 Harrison Ave., 74 N.E.3d at 1244-45. "[H]owever, this does not mean that an abuse of process claim will always be solely based on a special movant's petitioning activities." Id.

Rudnick has failed to meet his burden under the anti-SLAPP statute for several reasons. To begin with, plaintiffs' defamation claim is based on statements he allegedly made to various members of the Chatham community, including local businesses. See (Docket Entry # 1, pp. 25-26, ¶ 85). Under the present facts, making such statements to local businesses "is not constitutionally protected activity" and therefore the defamation claim is "not based solely on petitioning activity." Radfar v. City of Revere, No. 1:20-CV-10178-IT, 2021 WL 4121493, at *4 (D. Mass. Sept. 9, 2021) (concluding that, where defendant made statements to plaintiff's employer and later police,

statements to plaintiff's employer were "not constitutionally protected petitioning activity" and therefore plaintiff's defamation claim was "not solely based on petitioning activity").

For defamation claims, there must be a "'plausible nexus between the statement[s] and the governmental proceeding.'" Blanchard I, 75 N.E.3d at 30. "[P]rivate statement[s] to a select group of people do[] not, without more, establish a plausible nexus to a governmental proceeding." Id. The nexus requirement could potentially still be satisfied, however, if the private statements were "reasonably geared to reaching" the government. See id. (finding no nexus between governmental proceeding and executive's statements to employees because defendants did not show that employees forwarded or communicated, or were reasonably expected to forward or communicate, the statements to a governmental agency). In addition, the private statements must be "essentially 'mirror images' of those communicated to the police . . . ." See Burley, 917 N.E.2d at 255 (quoting Wynne v. Creigle, 825 N.E.2d 559, 566 (Mass. App. Ct. 2005)).

Rudnick's statements to Chatham businesses are insufficient to satisfy the nexus requirement of defamation claims under the anti-SLAPP statute. See Blanchard I, 75 N.E.3d at 30; Burley, 917 N.E.2d at 255. "An examination of the materials supporting

[Rudnick's] motion does not indicate" that Rudnick's comments about plaintiffs to local businesses "had the potential or intent to redress a grievance, or directly or indirectly to influence, inform, or bring about governmental consideration of the issue."  See Glob. NAPS, 828 N.E.2d at 534; see also Burley, 917 N.E.2d at 254.  He also has not shown that his statements to local businesses were essentially identical to those he made to the police for transmittal of the no-trespass orders.  See Burley, 917 N.E.2d at 255; Wynne, 825 N.E.2d at 566 (concluding that defendant's statements to media were "mirror images" of other admittedly protected statements made in course of governmental investigation).  Nor has he shown that the businesses would reasonably be expected to communicate his statements to the police (or other government entity).  See Blanchard I, 75 N.E.3d at 30.  As such, his interactions with the local businesses are not forms of petitioning protected under the anti-SLAPP statute.

With respect to both the defamation and abuse of process claims, Rudnick's statements to businesses which he did not own or otherwise control also fail to qualify as petitioning activity because he was not petitioning on his behalf.[3]  In his

---

[3] Rudnick is the owner of Lighthouse Realty but alleges that he also "owns and/or controls" the other Chatham businesses that issued no-trespass orders against Kaiser.  See (Docket Entry # 26, p. 3).  According to plaintiffs, however, he "had no

reply to plaintiffs' opposition to his special motion to dismiss
(Docket Entry # 48), Rudnick does not address plaintiffs'
argument that he does not in fact own or control all of the
businesses that issued no-trespass orders.  Nor does he address
plaintiffs' contention that, because he transmitted other
businesses' no-trespass orders, he was not petitioning on his
own behalf.  As noted above, while the statutory definition of
petitioning activity is broad, it is limited to a "party's
exercise of its right to petition."  Mass. Gen. Laws ch. 231, §
59H.  The Massachusetts Supreme Judicial Court has interpreted
this phrase to mean that a special movant must show that he or
she has "'petitioned the government on his or her own behalf . .
. in his or her status as a citizen.'"  Cardno, 68 N.E.3d at
1187 (brackets omitted) (quoting Kobrin, 821 N.E.2d at 64).  In
procuring and transmitting the no-trespass orders on behalf of
businesses which he does not own or control, Rudnick was not

---

ownership interest whatsoever in the Orpheum theater," which
issued a no-trespass order, "and he did not 'control' the
premises of commercial properties that he (or businesses with
which he was affiliated) leased to other businesses."  (Docket
Entry # 41, p. 8, n. 2); see also (Docket Entry # 51-1, pp. 6-7)
(police report noting that Rudnick "does not own all property
from 595 – 641 Main St.," including the Orpheum Theater).  In
their opposition to Rudnick's special motion to dismiss (Docket
Entry # 41), plaintiffs argue that Rudnick's transmission of the
other businesses' no-trespass orders, "even if done to promote
[his] rights as a business owner, is not Rudnick petitioning on
his own behalf . . . ."  (Docket Entry # 41, p. 9).

petitioning on his behalf.  See Cardno, 68 N.E.3d at 1188.  Such activity is therefore not protected by the anti-SLAPP statute.

Rudnick has also failed to show that the claims against him "have no substantial basis other than or in addition to" his purported petitioning activities.  See Fustolo, 920 N.E.2d at 840.  Even if "one could infer that [Rudnick's] persistent petitioning activities played a role in the plaintiffs' decision to file the complaint, there was also an independent basis for the complaint—that [] defendants were intentionally interfering with [] plaintiffs' right to use and enjoy their property." Ayasli v. Armstrong, 780 N.E.2d 926, 933 (Mass. App. Ct. 2002). The complaint is riddled with facts suggesting "[i]t was more than [Rudnick's] petitioning activities that promoted [plaintiffs'] suit" against him.  See id.  To name just a handful, for instance: (1) beginning in April 2018, Rudnick made several calls to Kaiser, threatening to "make plaintiffs' lives 'miserable' and 'drive' [them] 'out of town'" if they did not capitulate to the Kirchicks' demands (Docket Entry # 1, p. 13, ¶ 48); (2) he stated that he would "'call off the dogs'" if plaintiffs complied, and, if they did not, would "'send the suits in'" (Docket Entry # 1, p. 14, ¶¶ 50-51); he "took photographs of [p]laintiffs' home and of [p]laintiffs working in their yard" (Docket Entry # 1, p. 23, ¶ 77); he regularly approached and took photographs of plaintiffs' service providers

(Docket Entry # 1, p. 23, ¶ 77); and he periodically parked (or instructed his workers to park) vehicles in plaintiffs' private way, "which is the sole means of accessing [p]laintiffs' home." (Docket Entry # 1, pp. 8, 23, ¶¶ 30, 77).

"These facts supported [] plaintiffs' claim that [Rudnick was] interfering with their use and enjoyment of their property" and attempting to intimidate them into removing the two pear trees on their property. See Ayasli, 780 N.E.2d at 934 (concluding "[i]t was more than the [defendants'] petitioning activities that prompted the [plaintiffs'] suit" because one defendant had, inter alia, "clearly stated that she wanted the [plaintiffs'] home to 'stay down,' and that she intended to do everything she could to stop the work on their house"); (Docket Entry # 1, p. 24, ¶ 78).

Furthermore, even assuming that some of Rudnick's activities constituted petitioning, he is not entitled to dismissal of the defamation and abuse of process claims "just because some of the allegations in the complaint [may be] directed at conduct by" him "that constitutes petitioning activity." See Haverhill, 172 N.E.3d at 418. Rudnick has therefore failed to meet his "burden of establishing by a preponderance of the evidence that" plaintiffs' defamation and abuse of process claims are "'solely based on [his] own

petitioning activities.'"  See Blanchard II, 130 N.E.3d at 1248
(citation omitted).

### iii. Plaintiffs Have Met Their Burden Under the Anti-SLAPP Statute

Even if Rudnick had successfully met his burden under the
anti-SLAPP statute, thereby shifting the burden to plaintiffs,
plaintiffs' claims would still survive dismissal.[4]  To meet their
burden under the statute, plaintiffs may show by a preponderance
of the evidence that Rudnick: (1) lacked "reasonable factual
support or any arguable basis in law" when obtaining and
transmitting the no-trespass orders, and that such conduct (2)
injured plaintiffs.  See Burley, 917 N.E.2d at 254.
Alternatively, plaintiffs could survive dismissal by
demonstrating, such that this court "could conclude with fair
assurance," that their suit (a) was "'colorable'" and (b) "not
brought with the 'primary motivating goal' of chilling

---

[4]  As discussed above, nonmovants can meet their burden under the
second stage of the anti-SLAPP statute in one of two ways.
Under the first, "the nonmoving party . . . must establish by a
preponderance of the evidence . . . that '(1) the moving party's
. . . exercise of its right to petition was devoid of any
reasonable factual support or any arguable basis in law and (2)
the moving party's . . . acts caused actual injury to the
responding party . . . .'"  Blanchard II, 130 N.E.3d at 1248.
Under the second method, the nonmoving party must establish,
"such that the motion judge could conclude with fair assurance,"
that its claim was colorable and not "'brought primarily to
chill the special movant's . . . legitimate petitioning
activities,'" meaning "that [the claim] was not retaliatory."
477 Harrison Ave., LLC v. JACE Bos., LLC, 134 N.E.3d 91, 98, 100
(2019) (quoting Blanchard I, 75 N.3.3d at 38).

[Rudnick's] exercise of [his] petitioning rights, i.e., that it was not retaliatory." See 477 Harrison Ave., 134 N.E.3d at 101 (quoting Blanchard II, 130 N.E.3d at 1249)). Plaintiffs argue that they have satisfied their burden under both methods. See (Docket Entry # 41, pp. 6, 10-12).

With respect to the first method, Rudnick argues that he "had reasonable factual support for his petitioning activities, wherein he sought to minimize future contact with Mr. Kaiser to prevent him from asserting additional and exaggerated allegations of harassment." (Docket Entry # 26, p. 5). These "allegations of harassment" are namely the chapter 258E orders (harassment prevention orders) that plaintiffs obtained against defendants in June 2018.[5] (Docket Entry # 26, p. 26). Rudnick claims that his seeking no-trespass orders against Kaiser was a "prophylactic measure . . . to prevent future incidental interactions with him" at properties that Rudnick either owned or controlled. (Docket Entry # 26, p. 4).

Although Rudnick's motive in obtaining and transmitting the no-trespass orders is irrelevant at the threshold stage of the burden-shifting framework, this court may consider the context in which such activities occurred when evaluating the factual

---

[5] After those orders expired, Rudnick solicited and obtained no-trespass orders from various businesses in Chatham between July 31 and August 2, 2018. (Docket Entry # 1, p. 21, ¶¶ 72-73).

and legal basis for seeking the no-trespass orders.  See
Keystone Freight Corp. v. Bartlett Consol., Inc., 930 N.E.2d
744, 752 (Mass. App. Ct. 2010) (explaining that "attribution of
a motive, alone, is never sufficient" to survive an anti-SLAPP
motion but "'evidence of improper action, separate and distinct
from the exercise of petitioning activity, is necessary'"
(citation omitted)); N. Am. Expositions Co. Ltd. P'ship v.
Corcoran, 898 N.E.2d 831, 841 (Mass. 2009) ("In order to
determine if statements are petitioning, we consider them in the
over-all context in which they were made.").  This court may
therefore consider Rudnick's conduct "before, after, and
separate from [his] petitioning activity."  See Keystone, 930
N.E.2d at 752-753.

To begin with, the complaint alleges that Rudnick:
threatened to "make [plaintiffs] lives 'miserable' and 'drive'
[them] 'out of town'" (Docket Entry # 1, p. 13, ¶ 48);
threatened to "'send the suits in'" if plaintiffs did not
capitulate to the Kirchicks' demands and cut down the pear trees
(Docket Entry # 1, p. 14, ¶ 51); and told plaintiffs "'[n]ow the
fun begins'" after the chapter 258E order against him was
dismissed (Docket Entry # 1, pp. 18-19, ¶ 66) (Docket Entry # 1-
18, p. 2).  Additionally, even after Rudnick obtained no-
trespass orders against Kaiser, he continued to take measures
that increased his contact with plaintiffs.  He trespassed on

plaintiffs' property on numerous occasions.  (Docket Entry #1, pp. 22-24, ¶ 77).  Four days after the expiration of the chapter 258E orders, he gathered with Mrs. Kirchick on plaintiffs' private way to direct his employees "to severely butcher, cutback and damage the side of . . . the private way leading the [p]plaintiffs' home."  (Docket Entry #1, pp. 22-24, ¶ 77).  On July 23, 2019, he entered plaintiffs' backyard without permission.  (Docket Entry #1, pp. 22-24, ¶ 77).  The complaint also suggests that Rudnick frequently approached plaintiffs' property to take photographs of it and that he continued to park vehicles in the plaintiffs' private way to impede their (and their service providers') access to their home.[6]

Also compelling is the fact that Rudnick sought no-trespass orders from a broader swath of businesses than those where he would likely run into plaintiffs, such as parking lots and a women's clothing store.  See (Docket Entry # 1, pp. 21-22, ¶ 74) (Docket Entry # 41-1, p. 9, ¶ 34).  He also unsuccessfully attempted to obtain a no-trespass order from the Chatham Orpheum Theater, a nonprofit of which plaintiffs are donors and "Major

---

[6]  While it is unclear from the complaint exactly when Mr. Rudnick took photographs of plaintiffs' property or parked vehicles in their private way, the complaint alleges that these instances occurred in "the ensuing months" after defendants obtained no-trespass orders against Kaiser.  See (Docket Entry #1, pp. 22-24, ¶ 77).

Benefactors."  See (Docket Entry # 1, p. 22, ¶ 75) (Docket Entry # 41-1, p. 9, ¶ 36).

Additional facts in Furnish's affidavit (submitted with plaintiffs' sur-reply) further suggest that Rudnick's transmittal of the no-trespass orders was devoid of any reasonable factual or legal basis.[7]  See (Docket Entry # 51-1). On June 19, 2018, the day after plaintiffs' chapter 258E order against him was initially set to expire, Rudnick spoke with an officer from the Chatham Police Department to "request[] information regarding issuing a trespass notice for all of his commercial property owned by him."  (Docket Entry # 51-1, p. 3). Rudnick "advised" that his request for no-trespass orders against Kaiser "was solely based on retaliation for a [chapter 258E order] that was issued against him."  (Docket Entry # 51-1, p. 3).  He also chose to stagger the delivery of the no-trespass orders, despite being advised that "he [wa]s tying up lot [sic] of police resources in spanning out and purposefully delaying his trespass orders."  (Docket Entry # 51-1, p. 3).

---

[7]  In deciding Rudnick's special motion to dismiss under the anti-SLAPP statute, this court reviewed Furnish's affidavit because the standard of review for such a motion "incorporates additional fact-finding beyond the facts alleged in the pleadings," such as those in the parties' affidavits filed with their anti-SLAPP motions and oppositions.  See S. Middlesex Opportunity Council, 2008 WL 4595369 at *10.

Given these facts, plaintiffs have satisfied their burden of showing that Rudnick lacked "reasonable factual support or any arguable basis in law" when obtaining and transmitting the no-trespass orders.  See Burley, 917 N.E.2d at 254.  In addition, plaintiffs have demonstrated that Rudnick's activities injured them, alleging that the no-trespass orders caused them severe emotional distress, publicly humiliated them, and "curtail[ed] the use and enjoyment of their property in Chatham."  (Docket Entry # 1, p. 22, ¶ 76).  According to Furnish, plaintiffs bought their Chatham property because of its proximity to the downtown businesses and restaurants.  (Docket Entry # 41-1, p. 8, ¶ 31).  Because of the no-trespass orders, however, plaintiffs can no longer gather socially with friends at the various restaurants that issued such orders.  (Docket Entry # 41-1, p. 8, ¶ 33).

Because plaintiffs have met their burden under the second step of the anti-SLAPP statute by demonstrating that Rudnick lacked factual and legal support when obtaining the no-trespass orders and injured plaintiffs in so doing, this court need not also discuss whether their claims are colorable or brought primarily to chill Rudnick's exercise of his petitioning rights. See 477 Harrison Ave., 134 N.E.3d at 101.

B.   Partial Motion to Dismiss Pursuant to Rule 12(c)

This court will now consider Rudnick's Rule 12(c) motion to dismiss plaintiffs' defamation and abuse of process claims. (Docket Entry # 25).

1.   Defamation (Count II)

Rudnick seeks dismissal of plaintiffs' dismissal claim pursuant to Rule 12(c) on the basis that the complaint "does not identify or describe any allegedly defamatory statements published by [] Rudnick to the Chatham police or local business establishments, and thus falls short of stating a claim for defamation." (Docket Entry # 26, p. 11).  His argument also relies on the notice pleading requirements of Fed. R. Civ. P. 8 ("Rule 8").  See (Docket Entry # 26, pp. 11-13).  Additionally, Rudnick contends that, "to the extent [] Furnish alleges [] Rudnick defamed him by obtaining the [] no-trespass orders, such a claim would fail, as [] Rudnick's no-trespass activities pertained only to [] Kaiser."  (Docket Entry # 26, p. 11).

Plaintiffs concede that they do not know Rudnick's exact statements but maintain that, "in federal court, [they] are 'not required to set forth the alleged defamatory statements verbatim."  (Docket Entry # 41, p. 15).  According to plaintiffs, the mere likelihood "that whatever [Rudnick] said was untrue, reputation-harming, and concerned both [p]laintiffs"

satisfies the Rule 8 notice pleading requirements and survives a Rule 12(c) motion.  (Docket Entry # 41, p. 14).

"Under Massachusetts law, 'defamation is the publication, either orally or in writing, of a statement concerning the plaintiff which is false and causes damage to the plaintiff.'" Ayyadurai v. Floor64, Inc., 270 F. Supp. 3d 343, 355 (D. Mass. 2017) (quoting Yohe v. Nugent, 321 F.3d 35, 39-40 (1st Cir. 2003)).  To survive a motion to dismiss, a plaintiff alleging defamation must show "(1) that '[t]he defendant made a statement, concerning the plaintiff, to a third party'; (2) that the statement was defamatory such that it 'could damage the plaintiff's reputation in the community'; (3) that '[t]he defendant was at fault in making the statement'; and (4) that '[t]he statement either caused the plaintiff economic loss . . . or is actionable without proof of economic loss.'"  Shay v. Walters, 702 F.3d 76, 81 (1st Cir. 2012) (quoting Ravnikar v. Bogojavlensky, 782 N.E.2d 508, 510-11 (Mass. 2003)).

Because "[c]laims for defamation are subject to the notice pleading requirements set forth in [Rule 8,] . . . plaintiffs are not required to set forth the alleged defamatory statements verbatim."  See N. Shore Pharmacy Servs., Inc. v. Breslin Assocs. Consulting LLC, 491 F. Supp. 2d 111, 124 (D. Mass. 2007).  Rule 8 simply requires that a complaint contain "a short and plain statement of the claim showing that the pleader is

entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "[H]owever, there must be 'sufficient detail in the complaint to give a defendant fair notice of the claim and the grounds upon which it rests.'"  Colon-Fontanez v. Municipality of San Juan, 660 F.3d 17, 46 (1st Cir. 2011) (citation omitted).  "[T]he complaint should at least set forth minimal facts as to who did what to whom, when, where, and why—although why, when why means the actor's state of mind, can be averred generally."  Educadores Puertorriquenos en Accion v. Hernandez, 367 F.3d 61, 68 (1st Cir. 2004).

Thus, in this case, plaintiffs need only "set forth such allegations in support of [their] defamation claim that were sufficient to give [Rudnick] 'fair notice' of [their] claim and the grounds upon which it rests."  See N. Shore Pharmacy Servs., 491 F. Supp. 2d at 124.  "Although the precise words used by [] Rudnick are currently unknown," plaintiffs allege, "they would have necessarily included false and defamatory statements of and concerning [p]laintiffs sufficient to cause persons who do not know [p]laintiffs to bar them from their premises."  (Docket Entry # 1, pp. 25–26, ¶ 85) (Docket Entry # 26, p. 7).  The complaint is compliant with Rule 8's notice pleading requirements, according to plaintiffs, because it provides details as to whom the statements were made, "approximately when they were made," "and their general character."  (Docket Entry #

41, p. 15).  More specifically, the complaint alleges that
Rudnick made defamatory statements to local Chatham business
owners while obtaining no-trespass orders between July 31 and
August 2, 2018.  (Docket Entry # 1, pp. 25-26, ¶ 85).

     This court finds that the complaint falls short of the
notice pleading requirements.  While the complaint has "at least
set forth minimal facts as to who . . .[,] to whom, when, where,
and why," the "what" is notably absent from the complaint.
Hernandez, 367 F.3d at 68.  That is, plaintiffs allege
defamation against Rudnick but fail to allege a single
defamatory statement made by him.  See generally (Docket Entry #
1).  While this court reviews the complaint's facts and the
reasonable inferences therefrom in plaintiffs' favor, it cannot
ignore "factual allegations in the complaint [that] are too
meager, vague, or conclusory to remove the possibility of relief
from the realm of mere conjecture . . . ."  See SEC v. Tambone,
597 F.3d 436, 442 (1st Cir. 2010) (en banc).  Although it may be
"highly likely that whatever [Rudnick] said was untrue,
reputation-harming, and concerned both [p]laintiffs," such
allegations are merely speculation.  See (Docket Entry # 41, p.
14).  Given the absence of even a single defamatory statement in
the complaint, plaintiffs fail to "set forth such allegations in
support of [their] defamation claim that were sufficient to give
[Rudnick] 'fair notice' of [their] claim and the grounds upon

which it rests." See N. Shore Pharmacy Servs., 491 F. Supp. 2d at 124. Moreover, plaintiffs' allegations that Rudnick's procurement of the no-trespass orders "practically implicate[d]" Furnish and suggested that he had "engaged in bad behavior" is too conclusory and vague to provide Rudnick with fair notice under Rule 8. See (Docket Entry # 1, pp. 22, 25, ¶¶ 74, 85).

This court therefore allows Rudnick's motion to dismiss plaintiffs' defamation claim against him under Rule 12(c), subject to the following qualification. "In the absence of exceptional circumstances, a district court is under no obligation to offer a party leave to amend when such leave has not been requested by motion." Hochendoner v. Genzyme Corp., 823 F.3d 724, 735-36 (1st Cir. 2016). However, given the preference to decide cases on the merits, this court declines to impose an outright denial of plaintiffs' defamation claim. See generally Rodi v. S. New England Sch. of Law, 389 F.3d 5, 20 (1st Cir. 2004) ("'[T]he purpose of pleading is to facilitate a proper decision on the merits.'" (quoting Conley v. Gibson, 355 U.S. 41, 48 (1957))). If, upon further discovery, plaintiffs are able to meet Rule 8's pleading requirements, they may file a motion for leave to file an amended complaint solely to cure the deficiencies in the defamation claim. See Browne v. Compass Grp. USA, Inc., No. CIV.A. 11-12038-JLT, 2012 WL 3260265, at *3 (D. Mass. July 12, 2012), report and recommendation adopted, No.

CIV.A. 11-12038-JLT, 2012 WL 3257880 (D. Mass. Aug. 7, 2012) (dismissing allowing plaintiff 30 days to file motion for leave to amend complaint and explaining that where "complaint is dismissed for lack of specificity, a dismissal without prejudice is more appropriate than a dismissal with prejudice").  This court expresses no opinion on the merits of such a motion.

   2.  <u>Abuse of Process (Count V)</u>

   Rudnick also seeks dismissal of plaintiffs' abuse of process claim under Rule 12(c).  His argument for dismissal under Rule 12(c), limited to two short paragraphs, is that "[p]laintiffs fail to allege facts to establish a claim of abuse of process because . . . Rudnick had reasonable factual support for petitioning the government."  <u>See</u> (Docket Entry # 26, p. 14).  He does not discuss the elements of abuse of process and whether plaintiffs have sufficiently established such elements to survive dismissal under Rule 12(c).[8]  <u>See generally</u> (Docket Entry # 26, p. 14).  Instead, he reiterates that "[p]laintiffs have offered no evidence" as to Rudnick's purported defamatory statements "in obtaining the no-trespass orders."  (Docket Entry

---

[8]  In Rudnick's argument for his special motion to dismiss, he notes the elements to an abuse of process claim (i.e. process was used for an ulterior purpose, resulting in damage).  <u>See</u> (Docket Entry # 26, p. 8).  Nowhere does he evaluate, however, each element to demonstrate how plaintiffs have apparently failed to prove each under Rule 12(c).  <u>See generally</u> (Docket Entry # 26).

# 26, p. 14).   Rudnick also argues that he was "lawfully entitled pursuant to [Massachusetts General Laws, chapter 266, section 120] to obtain no trespass orders for private properties he owns and controls after Kaiser's failed attempt to secure a harassment order against him . . . ."[9]   (Docket Entry # 26, p. 2).   Lastly, because Rudnick did not procure or transmit any no-trespass orders against Furnish, he argues that the abuse of process claim as to Furnish must be dismissed for lack of factual support.   (Docket Entry # 26, p. 2).

Plaintiffs argue that they have sufficiently plead abuse of process by Rudnick because: (1) he used process by obtaining and transmitting no-trespass orders to the police, as well as assisting the Kirchicks with their applications to the ZBA and action in Superior Court (Docket Entry # 41, p. 17); (2) his harassment of plaintiffs is evidence that his use of process served an ulterior purpose of "forc[ing] [p]laintiffs to capitulate to [defendants'] demands" to cut down the pear trees obstructing the Kirchicks' view (Docket Entry # 41, p. 18); and

---

[9]   Mass. Gen. Laws ch. 266, § 120 provides: "Whoever, without right enters . . . [the] buildings . . . of another . . . after having been forbidden to do so by the person who has lawful control of said premises, whether directly or by notice posted thereon . . . shall be punished by a fine of not more than one hundred dollars or imprisonment for not more than thirty days or both . . . ."

(3) plaintiffs were harmed as a result (Docket Entry # 41, p. 19).

A common law claim for abuse of process consists of three elements: "1) process [] was used 2) for an ulterior or illegitimate purpose 3) resulting in damage." Iantosca v. Benistar Admin. Servs., Inc., 738 F.Supp.2d 212, 222 (D. Mass. 2010) (citing Millennium Equity Holdings, LLC v. Mahlowitz, 925 N.E.2d 513, 522 (Mass. 2010)). "'[I]t is immaterial that the process was properly issued, that it was obtained in the course of proceedings which were brought with probable cause and for a proper purpose or even that the proceedings terminated in favor of the person instituting or initiating them.'" Humphrey v. Comoletti, No. 1:15-CV-14170-ADB, 2017 WL 1224539, at *4 (D. Mass. Mar. 31, 2017) (quoting Gutierrez v. Mass. Bay Transp. Authy., 772 N.E.2d 552, 563 (Mass. 2002)).

To successfully allege abuse of process, a plaintiff must demonstrate that the defendant had an ulterior purpose "'to gain some collateral advantage,' which 'has been compared to extortion, in that the defendant has allegedly tried to extract some advantage by wrongful means.'" Damon v. Hukowicz, 964 F. Supp. 2d 120, 141 (D. Mass. 2013) (quoting Psy-Ed Corp. v. Klein, 947 N.E.2d 520, 535 n. 36 (Mass. 2011)). The element of an "ulterior purpose is not simply the intent to harm the other party directly by [using process], but rather the intent to gain

41

some other end indirectly." Psy-Ed Corp., 947 N.E.2d at 535.
"An ulterior purpose exists when the defendant uses process 'to
accomplish some ulterior purpose for which it was not designed
or intended, or which was the legitimate purpose of the
particular process employed.'" Boyle v. Barnstable Police
Dep't, 818 F. Supp. 2d 284, 304 (D. Mass. 2011); Psy-Ed Corp.,
947 N.E.2d at 534.  Additionally, the ulterior purpose must be
extraneous or collateral to the proceeding itself.[10]

"Whether a person has grounds to bring a claim may of
course be relevant in assessing whether he had an ulterior
purpose." Millennium Equity Holdings, 925 N.E.2d at 523; see
also Lorusso v. Bloom, 71 N.E.2d 218, 218 (Mass. 1947)
(commencement of additional "action known to be groundless" to
collect twice on already paid debt constitutes abuse of
process).  The ulterior purpose element, however, "'is not
satisfied merely by a showing that a person commenced litigation

---

[10] See, e.g., American Velodur Metal, Inc. v. Schinabeck, 481
N.E.2d 209, 215 (Mass. App. Ct. 1985) (sufficient facts to infer
ulterior purpose where husband filed complaint against wife to
coerce more favorable settlement in separate divorce action);
Carroll v. Gillespie, 436 N.E.2d 431, 439 (Mass. App. Ct. 1982)
(knowingly initiating groundless criminal complaints to collect
a civil debt demonstrated illegitimate purpose); Stromberg v.
Costello, 456 F. Supp. 848, 849-850 (D. Mass. 1978) (applying
for criminal complaint, maliciously and without probable cause,
to coerce plaintiff to withdraw civil action demonstrated
ulterior purpose); cf. Cohen v. Hurley, 480 N.E.2d at 661
(bringing groundless allegations to challenge proposed
subdivision of land is not illegitimate purpose when lawsuit was
aimed at defeating the subdivision proposals).

knowing it was groundless.'"  Barnstable Police Dep't, 818
F.Supp.2d at 305 (quoting Psy-Ed Corp., 947 N.E.2d at 534);
accord Empire Today, LLC v. Nat'l Floors Direct, Inc., 788
F.Supp. 2d 7, 23 (D. Mass 2011) ("[F]iling a groundless claim or
having an improper motive of vexation, harassment, or annoyance
is relevant but does not alone suffice to demonstrate ulterior
purpose.").

Here, for the purposes of Rudnick's 12(c) motion to
dismiss, plaintiffs have satisfied the first element of an abuse
of process claim by sufficiently alleging Rudnick's involvement
in obtaining no-trespass orders against Kaiser and assisting the
Kirchicks with their application to the Chatham Zoning Board of
Appeals (the "ZBA").  Specifically, plaintiffs allege that
Rudnick leveraged his influence in the Chatham community to
induce several local businesses to issue no-trespass orders
against Kaiser.  (Docket Entry #1, pp. 21-22, ¶¶ 72, 75).  They
also allege that he assisted the Kirchicks' efforts in filing
for "a request for a special permit with [ZBA] in an attempt to
claim some authority to pave over . . . the . . . private way
providing access to [p]laintiffs' home, remove [p]laintiff's
mailbox and remove several mature trees that provide privacy for
[p]laintiffs' home."  (Docket Entry #1, pp. 19-20, ¶ 68).  He
"repeatedly told [p]laintiffs that he had connections to and
specific influence over . . . Chatham zoning officials and would

use it to prevent [p]laintiffs from obtaining approval of anything they might seek to do." (Docket Entry #1, pp. 19-10, ¶¶ 67, 68).

Plaintiffs have also sufficiently alleged that Rudnick used process to obtain a "collateral advantage" and "for the ulterior or illegitimate purpose of harassing [them] into either cutting down their trees, selling their home, or leaving Chatham altogether . . . ." See (Docket Entry # 1, p. 27, ¶ 93); see also Barnstable Police Dep't, 818 F.Supp.2d at 305. The complaint alleges that: in a phone call between Kaiser and Rudnick on April 12, 2018, Rudnick threatened to "make "[p]laintiffs' lives 'miserable' and 'drive' [p]laintiffs 'out of town'" (Docket Entry # 1, p. 13, ¶ 48); on the same day, he threatened to "'send the suits in'" if plaintiffs did not capitulate to the Kirchicks' demands and cut down the pear trees (Docket Entry # 1, p. 14, ¶ 51); and, after the dismissal of the chapter 258E [o]rder against him, he told plaintiffs, "'Now the fun begins'" (Docket Entry # 1, pp. 18-19, ¶ 66) (Docket Entry # 1-18, p. 2). Additionally, as previously noted and contrary to Rudnick's purported desire to "prevent future incidental interactions" with Kaiser after the chapter 258E

order was issued against him,[11] Rudnick actively put himself in situations that increased his contact with plaintiffs.

Lastly, plaintiffs have sufficiently alleged damage resulting from Rudnick's use of process.  The complaint alleges that the no-trespass orders ruined plaintiffs' reputations, subjected them to public humiliation, and "curtail[ed] the use and enjoyment of their property in Chatham."  (Docket Entry # 1, p. 22, ¶ 76).  Additionally, plaintiffs allege that the no-trespass orders remain in effect and continue to cause them severe emotional distress.  (Docket Entry # 1, p. 22, ¶ 76).  These types of harm are cognizable under Massachusetts law.  See 477 Harrison Ave., 74 N.E.3d at 1249 (embarrassment from criminal complaint, inter alia, was enough to constitute actual injury under the anti-SLAPP statute); Millennium Equity Holdings, 925 N.E.2d at 528 (emotional, reputational, and fiscal harms of malicious prosecution are "compensable category[ies] of damages for an abuse of process claim so long as . . . affirmatively proved").  This court therefore finds that plaintiffs have alleged sufficient facts for their abuse of process claim to survive Rudnick's Rule 12(c) motion to dismiss.

---

[11]   (Docket Entry # 26, p. 4) (Docket Entry # 48, p. 7).

II.   <u>The Kirchicks</u>

A.   Special Motion to Dismiss Defamation (Count II) and Abuse
     <u>of Process (Count V) Claims Under the Anti-SLAPP Statute</u>

     The Kirchicks also seek dismissal of counts II (defamation)

and V (abuse of process) under the anti-SLAPP statute, arguing

that these claims are solely based on defendants' petitioning

activities that were made "on a good-faith and reasonable

factual basis."  (Docket Entry # 29, pp. 1, 10).  Plaintiffs

disagree and contend that, even so, the complaint would survive

the second stage of the anti-SLAPP statute's burden-shifting

framework because: "(i) [d]efendants' petitioning activity had

no basis in law or fact" and "(ii) [p]laintiffs' claims were . .

. colorable and" neither "retaliatory" nor "brought primarily to

chill [d]efendants' exercise of their petitioning rights."

(Docket Entry # 40, p. 11).  At the threshold stage, the

Kirchicks bear the burden of establishing by a preponderance of

the evidence that the claims brought by plaintiffs are based

solely on defendants' petitioning activities.  <u>See</u> <u>Blanchard I</u>,

75 N.E.3d at 38.

     1.   <u>Defamation (Count II)</u>

     Plaintiffs' opposition to the Kirchicks' special motion to

dismiss essentially mirrors their opposition to Rudnick's

special motion to dismiss, discussed above.  <u>See generally</u>

Docket Entry ## 40, 41).  As such, plaintiffs argue that: (1)

their defamation is based on defamatory statements that Rudnick, acting on the Kirchicks' behalf, made to local Chatham businesses to obtain no-trespass orders against Kaiser; and (2) such activity is not a protected form of petitioning under the anti-SLAPP statute because the statements were made to private individuals and not on his own behalf.  See (Docket Entry # 41, p. 10).  For the reasons set forth above, this court agrees and finds that the Kirchicks have not met their burden under the anti-SLAPP statute with respect to the defamation claim.[12]

2.   Abuse of Process (Count V)

According to the Kirchicks, plaintiffs' abuse of process claim is also solely based on defendants' petitioning activities: specifically, the Kirchicks' applications for special zoning permits, their filing of an action in the Superior Court, and Rudnick's conduct in obtaining and transmitting the no-trespass orders.  (Docket Entry # 29, pp. 11-12).  Plaintiffs argue, in turn, that these actions "were merely discrete steps in [d]efendants' broader, protracted campaign of harassment designed to force [p]laintiffs to capitulate to the [d]efendants' demands."  (Docket Entry # 40,

---

[12]  Because plaintiffs filed Furnish's affidavit, which provided additional facts as to the defamation claim against Rudnick, only in support of their opposition to Rudnick's special motion to dismiss, this court did not consider such affidavit for the purposes of the Kirchicks' special motion to dismiss.

p. 12).  Plaintiffs also assert that the Kirchicks have not met their burden in establishing why their purported petitioning activities "should be viewed independently of the context of their other wrongful behavior."  (Docket Entry # 40, p. 12).

Unlike Rudnick's actions in obtaining the no-trespass orders, the Kirchicks' applications for special zoning permits and filing the Superior Court lawsuit constituted forms of petitioning that they undertook on their own behalf.  See Miller v. SBA Towers V, LLC, 391 F. Supp. 3d 123 (D. Mass. 2019) (concluding that petition for a variance and application for a special permit was legitimate petitioning activity); Carr v. Cesari & McKenna, LLP, No. SUCV20162087H, 2017 WL 2623126 (Mass. Super. Mar. 27, 2017) ("[F]iling a lawsuit 'is the paradigm of petitioning activity' within the definition of § 59H.") (citations omitted); Kobrin, 821 N.E.2d at 64 (explaining special movant must show he "petitioned the government on his or her own behalf").  However, the complaint alleges facts that suggest plaintiffs' claims against the Kirchicks had a "substantial basis other than or in addition to" the Kirchicks' petitioning activities.  See Fustolo, 920 N.E.2d at 840.  Even if "one could infer that" the Kirchicks' "petitioning activities played a role in the plaintiffs' decision to file the complaint," the complaint also points to "an independent basis for the complaint—that [] defendants were intentionally

interfering with [] plaintiffs' right to use and enjoy their property" and attempting to coerce plaintiffs into cutting down the two pear trees.[13]  See Ayasli, 780 N.E.2d at 933.  The Kirchicks have therefore failed to show that the claims against them "have no substantial basis other than or in addition to" their purported petitioning activities.  See Fustolo, 920 N.E.2d at 840.

However, even if the Kirchicks had met their burden under the first stage of the anti-SLAPP statute's burden-shifting framework, dismissal of the abuse of process claim would still

---

[13]  For instance: Rudnick indicated to plaintiffs that he was acting on Mrs. Kirchick's behalf and at her request and then threatened to "make [p]laintiffs' lives 'miserable' and 'drive' [p]laintiffs 'out of town'" if plaintiffs "did not cut down the trees" (Docket Entry # 1, p. 13, ¶ 48); "at the request of Mrs. Kirchick," Rudnick instructed his employees to park their trucks "at the entrance of the private way leading to [p]laintiffs' home, which is the sole means of accessing [p]laintiffs' home" (Docket Entry # 1, p. 8, ¶ 30); on August 22, 2017, Mrs. Kirchick suggested to Mr. Kirchick and Rudnick that, if plaintiffs' landscapers could not find a place to move the trees, the Kirchicks would "pay for them and burn them" (Docket Entry # 1-5, p. 2); on August 31, 2017, Mrs. Kirchick wrote in an email to Mr. Kirchick and Rudnick: "[]By the way, [plaintiffs' landscapers] had trouble getting the[ir] truck in the driveway…:)" (Docket Entry # 1-6, p. 2); on September 14, 2017, Mrs. Kirchick suggested to Rudnick that it was "[m]aybe time to move the truck back and start planting in the flatbed" (Docket Entry # 1-4, p. 2); on December 13, 2017, Mrs. Kirchick emailed Rudnick, "I know we can't impair their right of way, but can we restrict them from their improvements? Can you paint it purple because we like it purple?" (Docket Entry # 1-12, p. 2); and, on August 18, 2019, without plaintiffs' permission, Mr. Kirchick repeatedly brought and removed traffic cones onto plaintiffs' property (Docket Entry #1, p. 24, ¶ 77).

be inappropriate if plaintiffs satisfy their burden under the second stage.  See 477 Harrison Ave., 134 N.E.3d at 101 (explaining that nonmoving party meets their burden by establishing: (1) the moving party's purported petitioning lacked any reasonable factual support or basis in law and caused the nonmoving party actual injury; or (2) the nonmoving party's claim was colorable and not brought with the primary intent of chilling the moving party's petitioning rights, i.e. it was not retaliatory).  Plaintiffs argue they can meet such burden because: (1) defendants' "petitioning" activities lacked "credible legal or factual bases" and caused them actual harm (Docket Entry # 40, p. 13); and (2) plaintiffs' claims are colorable and not retaliatory.  (Docket Entry # 40, pp. 16-19).  While the Kirchicks state that their petitioning activities "are factually and legally supported," they notably do not actually explain how so.  See (Docket Entry # 29, p. 13).

Under the first path, plaintiffs maintain that the Kirchicks' applications for special zoning permits have no credible basis.  (Docket Entry # 40, p. 13).  The Kirchicks filed an application to convert their garage into an apartment for Mrs. Kirchick's mother and create a new driveway and parking area, "just feet from [plaintiffs'] front door," which "would have required the destruction and removal of mature" vegetation that plaintiffs had planted years prior with the Kirchicks'

consent.  (Docket Entry # 42, p. 4, ¶¶ 15, 17).  Plaintiffs note that the permit "relied on a special exemption" requiring the guest unit to be "occupied by a member of the immediate family occupying the principal dwelling," which plaintiffs suggest "has a reasonable connotation of more than seasonal and occasional residents."  (Docket Entry # 42, p. 5, ¶ 18).  According to plaintiffs, however, the Kirchicks "have never occupied the home in Chatham on a full-time basis since . . . approximately 2008-2009" and Mrs. Kirchick's mother has visited "very rarely" and for only "brief" periods.  (Docket Entry # 42, p. 5, ¶¶ 19-20).  Plaintiffs also allege that the Kirchicks "repeatedly caused the [zoning permit] hearing to be continued immediately before, or even at, the scheduled hearing, knowing [p]laintiffs already incurred the cost to travel to Massachusetts in order to attend."  (Docket Entry # 40, p. 14); see (Docket Entry 42, pp.6-7, ¶¶ 22-27).  Additionally, after "the ZBA intended that it intended to deny the application because it did not meet the exemptions requirements[,] the Kirchicks [] withdrew the application" and, "[t]he next month, [] refiled a nearly identical application" that the ZBA ultimately denied.  (Docket Entry # 40, p. 14); see (Docket Entry 42, p. 7, ¶¶ 26-28).

Plaintiffs also argue that the Superior Court lawsuit, in which the Kirchicks alleged abuse of process and trespass against plaintiffs, lacks any legal or factual basis.  (Docket

Entry # 29, p. 4) (Docket Entry # 40, p. 14).  According to plaintiffs, the Kirchicks' abuse of process claim (which targeted Kaiser's petitioning for chapter 258E orders against defendants) was baseless because Kaiser had a good faith basis to obtain the orders (i.e., the police advised plaintiffs to seek the orders and the court issued the orders).  (Docket Entry # 40, p. 15).  Plaintiffs also argue that the Kirchicks' trespass claim was baseless because plaintiffs installed plantings in the disputed area only after receiving the Kirchicks' written consent, and consent vitiates a trespass claim.  (Docket Entry # 40, p. 15); see 14D Mass. Prac., Summary of Basic Law § 16:25 Privileged entries: consent or license (5th ed.).  Lastly, plaintiffs contend that the Kirchicks failed to "diligently prosecute the Superior Court action," as evidenced by their failure to comply with their discovery obligations (which prompted the court to enter a default judgment against them).  (Docket Entry # 40, p. 15).

Plaintiffs also maintain that the Kirchicks' actions caused them actual harm in that that they have incurred hundreds of thousands of dollars in legal fees and travel expenses to attend the various hearings and depositions.  (Docket Entry # 40, pp. 15-16) (Docket Entry # 41-1, ¶ 38).  Additionally, they allege that they have suffered embarrassment, reputational harm, and emotional distress.  (Docket Entry # 40, p. 16) (Docket Entry #

41-1, ¶¶ 29-37, 39).  Plaintiffs have therefore alleged harm
from the Kirchicks' conduct.  See 477 Harrison Ave., 74 N.E.3d
at 1249; Millennium Equity Holdings, 925 N.E.2d at 528.

Despite the high bar that nonmovants face under the anti-
SLAPP statute, plaintiffs have demonstrated that the Kirchicks'
applications for special zoning permits and the Superior Court
lawsuit lacked a credible legal or factual basis and harmed
plaintiffs.  They have thus satisfied the second stage of the
anti-SLAPP statute's burden-shifting framework.  See Blanchard
II, 130 N.E.3d at 1248-1249.  This court therefore need not also
discuss whether their claims are colorable or brought primarily
to chill the Kirchicks' exercise of their petitioning rights
(the second, alternative path for plaintiffs to meet their
burden).[14]  See 477 Harrison Ave., 134 N.E.3d at 101.

B.  Partial Motion to Dismiss Under Rule 12(b)(6)

This court will now address the Kirchicks' Rule 12(b)(6)
motion to dismiss plaintiff's defamation and IIED claims.
(Docket Entry # 28).

1.  Defamation (Count II)

The Kirchicks seek dismissal of Count II (defamation) under
Rule 12(b)(6) on the basis that "the [c]omplaint does not allege
that the Kirchicks made any false statements concerning"

---

[14]  Additionally, defendants did not address the second path of
plaintiffs' burden under the anti-SLAPP statute.

plaintiffs but rather only allege[s] that []Rudnick defamed plaintiffs by allegedly making false statements to the 'Chatham community.'" (Docket Entry # 29, p. 16).  The Kirchicks also note that "the [c]omplaint is absent of any specific allegation about the words or statements published to the "Chatham community.'" (Docket Entry # 29, p. 16).  Plaintiffs respond it is sufficient that the complaint alleges that "[]Rudnick made untrue, reputation-harming statements about plaintiffs to convince business owners to sign no-trespass orders against []Kaiser" and that he did so "as part of a conspiracy with the Kirchicks and on behalf of all three [d]efendants." (Docket Entry # 40, p. 17).

For the purpose of brevity, this court refers to its previous summary and discussion of defamation law in Massachusetts and Rule 8's notice pleading requirements.  For the same reasons that plaintiffs' defamation claim fails under Rule 12(c) to survive dismissal, so does it fail under Rule 12(b)(6).  Namely, the complaint does not allege any defamatory statements made by any of the three defendants.  "Although the precise words used by [] Rudnick are currently unknown," plaintiffs ask that this court infer that "they would have necessarily included false and defamatory statements of and concerning [p]laintiffs sufficient to cause persons who do not know [p]laintiffs to bar them from their premises." (Docket

Entry # 1, pp. 25–26, ¶ 85).  This is insufficient to satisfy the requirements of Rule 12(b)(6) because the "standard . . . 'asks for more than a sheer possibility that a defendant has acted unlawfully.'"  <u>Saldivar</u>, 818 F.3d at 18 (quoting <u>Iqbal</u>, 656 U.S. at 678.  The complaint lacks "'enough facts to state a claim to relief that is plausible on its face . . . .'"  <u>See Miller</u>, 833 F.3d at 51 (quoting <u>Twombly</u>, 550 U.S. at 556, 570 (2007)).  Additionally, given the absence of even a single defamatory statement in the complaint, plaintiffs fail to "set forth such allegations in support of [their] defamation claim that were sufficient to give [the Kirchicks] 'fair notice' of [plaintiffs'] claim and the grounds upon which it rests."  <u>See N. Shore Pharmacy Servs.</u>, 491 F. Supp. 2d at 124.

For the foregoing reasons, this court will allow the Kirchicks' motion to dismiss plaintiffs' defamation claim under Rule 12(b)(6).  However, as with the defamation claim against Rudnick under Rule 12(c), this court declines to impose an outright denial of the defamation claim against the Kirchicks.  <u>See generally</u> <u>Rodi</u>, 389 F.3d at 20.  As noted above, this court will allow plaintiffs to file a motion for leave to file an amended complaint solely to cure the deficiencies in the defamation claim.  This court reiterates that it expresses no opinion on the merits of such a motion.

2.  <u>IIED (Count III)</u>

Lastly, the Kirchicks seek dismissal of Count III (IIED)
pursuant to Rule 12(b)(6) on the basis that the complaint does
not allege "a specific act of conduct that rises to the level of
'extreme and outrageous.'"  (Docket Entry # 29, p. 18).
Plaintiffs disagree and argue that, even if the individual
actions of defendants were not extreme and outrageous, their
collective actions exceed the bounds of decency in a civilized
society.  (Docket Entry # 40, p. 21).

To successfully allege an IIED claim, a plaintiff must show
that the defendant "'(1) intended to inflict emotional distress
by (2) undertaking actions that were extreme and outrageous,
thereby (3) causing emotional distress which (4) was severe.'"
<u>Young v. Wells Fargo Bank, N.A.</u>, 717 F.3d 224, 240 (1st Cir.
2013) (quoting <u>Flibotte v. Pa. Truck Lines, Inc.</u>, 131 F.3d 21,
27 (1st Cir. 1997)).  "The ensuing distress must be so severe
'that no reasonable man could be expected to endure it.'"
<u>Burgos Martinez v. City of Worcester</u>, 502 F. Supp. 3d 606, 621
(D. Mass. 2020) (quoting <u>Davignon v. Clemmey</u>, 322 F.3d 1, 8 n.2
(1st Cir. 2003)).  "Extreme and outrageous conduct is behavior
that is 'so outrageous in character, and so extreme in degree,
as to go beyond all possible bounds of decency, and to be
regarded as atrocious, and utterly intolerable in a civilized
community.'"  <u>Young</u>, 717 F.3d at 240 (quoting <u>Foley v. Polaroid</u>

56

Corp., 508 N.E.2d 72, 82 (Mass. 1987)).  In this context,
"'[o]utrageous' does not encompass 'workaday insults,
annoyances, or even threats and petty oppressions,' but rather
'a high order of reckless ruthlessness or deliberate
malevolence.'"  Bennett v. City of Holyoke, 230 F. Supp. 2d 207,
229 (D. Mass. 2002), aff'd, 362 F.3d 1 (1st Cir. 2004) (quoting
Conway v. Smerling, 635 N.E.2d 268, 273 (Mass. App. Ct. 1994)).
Massachusetts law therefore imposes "an extremely high hurdle .
. . to maintain" an IIED claim.  Sneade v. Rojas, Civil Action
No. 11-40061-TSH, 2014 WL 949635, at *8 (D. Mass. Mar. 10,
2014).

     A plaintiff's IIED claim may be based on a pattern of
misconduct, rather than a single incident.  See N. Shore
Pharmacy Servs., 491 F.Supp. 2d at 132 ("Evidence that the
defendant engaged in a 'pattern of conduct" or '[r]epeated
harassment' 'may compound the outrageousness of incidents which,
taken individually, might not be sufficiently extreme to warrant
liability for infliction of emotional distress.'" (quoting Boyle
v. Wenk, 392 N.E.2d 1053, 1055 (Mass. 1979))).  Accordingly, a
court looks at the totality of the circumstances, rather than a
single incident, to determine whether a defendant engaged in
extreme and outrageous conduct.  See N. Shore Pharmacy Servs.,
491 F.Supp. 2d at 132.

Here, viewing the facts in plaintiffs' favor, defendants'
conduct was extreme and outrageous.  The complaint alleges the
following "unlawful pattern of conduct" by defendants:

> (i) threatening to make [p]laintiffs' 'lives miserable'
> until [p]laintiffs capitulate to their unlawful demands, or
> leave Chatham; (ii) threatening to destroy [p]laintiff's
> property; (iii) trespassing on [p]laintiffs' property; (iv)
> threatening to remove [p]laintiffs' mailbox, in violation
> of federal law . . .; (v) threatening to use their alleged
> influence with local authorities against [p]laintiffs; (vi)
> threatening to use their combined influence to deny
> [p]laintiffs access to local accommodations; (vii)
> encouraging others to take meritless actions against
> [p]laintiffs' (viii) impeding access to [p]laintiffs'
> property by deliberately placing commercial trucks and
> other vehicles at the entrance of the private way leading
> to [p]laintiffs' home, for days and weeks at a time; and
> (ix) following and harassing service providers working on
> [p]laintiffs' yard.

(Docket Entry # 1, pp. 3-4).  Plaintiffs also allege that the
Kirchicks, through their attorney, threatened to resurface the
private way used by plaintiffs to access their home (Docket
Entry #1, p. 13); that Rudnick threatened to 'drive'
[p]laintiffs 'out of town'" (Docket Entry # 1, p. 13) and tear
out plaintiffs' bushes and mailbox (Docket Entry # 1, p. 15);
that Rudnick repeated his threats via phone call, text, and
email (Docket Entry # 1, pp. 14-16); and that Rudnick's threats
were particularly "ominous" and "alarming" because of his "well-
known conviction for conspiring to violate the Controlled
Substances Act by coordinating the theft of thousands of pounds

of marijuana from the South Yarmouth Police Barracks."   (Docket Entry # 1, p. 14).

This court finds that plaintiffs "ha[ve] presented enough evidence to support a finding that [defendants]' actions were far more egregious than mere bad manners, and [that] it is appropriate for a jury 'to make common sense judgments, from the totality of the circumstances,' about whether such actions were 'extreme and outrageous.'"   See N. Shore Pharmacy Servs., 491 F.Supp. 2d at 132 (citation omitted).   The complaint sufficiently alleges that defendants' conduct did not constitute ordinary "'workaday insults'" or "'annoyances'" but rather demonstrated "'deliberate malevolence.'"   See Bennett, 230 F. Supp. 2d at 229 (quoting Conway, 635 N.E.2d at 273).   The facts alleged indicate a "'[r]epeated harassment'" of plaintiffs.   See N. Shore Pharmacy Servs., 491 F.Supp. 2d at 132 (citation omitted).   Dismissal of the IIED claim is therefore not appropriate at this stage.

<u>CONCLUSION</u>

For the foregoing reasons: defendants' special motions to dismiss counts II and V pursuant to the anti-SLAPP statute (Docket Entry ## 25, 28) are **DENIED**; Rudnick's motion to dismiss pursuant to Rule 12(c) (Docket Entry # 25) is **DENIED** as to Count V; and the Kirchicks' motion to dismiss pursuant to Rule 12(b)(6) (Docket Entry # 28) is **DENIED** as to Count III.   As for

the remaining defamation claim (Count II), Rudnick's partial
motion to dismiss pursuant to Rule 12(c) (Docket Entry # 25) and
the Kirchicks' partial motion to dismiss pursuant to Rule
12(b)(6) (Docket Entry # 28) will be **ALLOWED** as to Count II on
or after February 10, 2022, unless plaintiffs file prior to that
date a motion for leave to amend the complaint (solely to cure
the deficiencies in the defamation claim) that attaches a
proposed amended complaint sufficiently alleging a defamation
claim against defendants.

_____/s/ Marianne B. Bowler_____
**MARIANNE B. BOWLER**
United States Magistrate Judge