UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GRANT KAISER and JOHN FURNISH,

    Plaintiffs,

v.

WILLIAM DEAN KIRCHICK, CAROL RUDNICK KIRCHICK, individually and as TRUSTEE of the 41 SEAVIEW TERRACE REAL ESTATE TRUST, and RONALD STEVEN RUDNICK,

    Defendants.

Civil Action No. 21-cv-10590

Leave to File Granted December 21, 2021

## PLAINTIFFS, GRANT KAISER AND JOHN FURNISH'S, SURREPLY TO DEFENDANT RONALD RUDNICK'S REPLY TO PLAINTIFFS' OPPOSITION TO RUDNICK'S MOTION FOR PROTECTIVE ORDER

Rudnick's Reply, like his initial filing, presents no basis for the Court to grant his motion for protective order. Even after knowing the bases of Plaintiffs' Opposition, and having the benefit of reviewing the detailed affidavit Plaintiffs rely upon, Rudnick's Reply is remarkable for both the absence of evidence he offers to meet his burden of proof and its failure to acknowledge binding legal authority. The motion should be denied for the reasons laid out in Plaintiffs' Opposition brief and below.

    A. <u>Rudnick Failed to Meet his Burden of Proving that the Documents Were Inadvertently Disclosed.</u>

Rudnick's Motion is premised on the notion that the Kirchick production was "inadvertent."[1] Plaintiffs' Opposition thoroughly debunks this erroneous premise, and Plaintiffs respectfully refer the Court to it for the sake of brevity. As for Rudnick's Reply, he still has

---

[1] Rudnick entitled his filing as his Motion for Protective Order Regarding *Inadvertently* Disclosed Privileged Communications (Docket Entry # 67) (italics added).

1

provided no evidence to meet his burden of proving that the documents were inadvertently disclosed. To the contrary, the evidence makes clear that the documents were intentionally and voluntarily produced by Rich May after careful consideration of whether or not privilege should be asserted over them. Rudnick's motion should be denied for this reason alone.

    B.  <u>Rudnick Failed to Meet His Burden of Proving that the Disclosure was Unauthorized</u>

Neither Rudnick's Motion nor his Reply provides any argument or cites any authorities to establish that the disclosure was unauthorized. At the December 21, 2021 hearing, however, Rudnick now appears to argue that the disclosure of the documents, even if intentional on the part of Rich May and the Kirchicks, was unauthorized as to Rudnick. However, he has not provided any evidence to suggest that was the case.

Notably, Rudnick's Reply, like his Motion, fails to provide *any* proof by affidavit from himself, from Mr. Henchy (his attorney who received the subpoena and Kirchick production in the White house cases more than two years ago), from the Kirchicks (which includes his sister), or from anyone at Rich May, attesting under oath that the documents at issue were produced without Rudnick's or the Kirchicks' knowledge, consent, or authorization, despite Plaintiffs *directly* noting the absence of any such evidence in their Opposition. Under these circumstances, the Court is entitled to draw the negative inference against the Defendants. <u>Auto. Insurers Bureau of Massachusetts v. Comm'r of Ins.</u>, 430 Mass. 285, 291 (1999).[2]

Instead of providing real proof, Rudnick attempts to distract from his Motion's evidentiary deficiency by providing an affidavit from his current counsel, Attorney Driscoll, in which he recounts a conversation he had with Attorney Holland. What is missing from Mr.

---

[2] "[A] fact finder in a civil dispute may draw a negative inference from the failure of the party with the burden of proof to call a witness or produce information within the party's control which would shed light on the party's position on a material issue." Auto Insurers, 430 Mass. at 291.

Driscoll's affidavit is more telling that what it includes. Although given the ideal opportunity to rebut Ms. Brady's affidavit, which he had reviewed, Mr. Holland instead said he did not have an "independent recollection" of the telephone conversations with Ms. Brady. In any event, the affidavit does not even provide hearsay evidence to support Rudnick's Motion, and it certainly should not be accepted by this Court as competent evidence. O'Donnell v. Boggs, No. CV 05-11257-NG, 2008 WL 11387134, at *4 (D. Mass. Mar. 13, 2008), subsequently aff'd, 611 F.3d 50 (1st Cir. 2010).

Plaintiffs submit that Attorney Brady's affidavit and the exhibits of contemporaneous documents thereto conclusively establish that Attorney Henchy knew of the subpoena, and at least implicitly authorized the disclosure of these documents in the White house case on Rudnick's behalf by failing to take any steps to prevent the production. See Ken's Foods, Inc. v. Ken's Steak House, Inc., 213 F.R.D. 89, 95 (D. Mass. 2002) (Party's failure to object to subpoena of documents waived privilege).

Because the disclosure was authorized by Rudnick and it was not inadvertent, he has no right to now claim any privilege over the documents.

C. Any Privilege was Waived Over the Documents at Issue Regardless of Whether the Disclosure was Unauthorized or Inadvertent

Rudnick also continues to fundamentally misunderstand the standard to be applied to the issue at hand. His Reply, just like his argument at the December 21, 2021 hearing, focuses solely on the issue of whether the disclosure was an intentional waiver or was an inadvertent or unauthorized production. However, that question is only the first step in the analysis. In *every* inadvertent disclosure case, it is necessarily so that the attorney who produced the documents at issue did not have actual authority to do so from the client. The critical second step in the analysis is whether, *despite* the fact that the disclosure was unauthorized or inadvertent, the

privilege was nonetheless waived.

Even if the unproven allegations in Rudnick's Reply were true, Rudnick fails to address in any way the vital second step in the analysis, that the factors considered in evaluating whether waiver occurred weighed in his favor. See Amgen Inc. v. Hoechst Marion Roussel, Inc., 190 F.R.D. 287, 291 (D. Mass. 2000). Rudnick's Reply in no way controverts Attorney Brady's affidavit, which establishes that Rudnick and his counsel failed to take any steps to prevent the Kirchick production in the first place or to claim the documents were privileged during the last two years. Rudnick asserts (again without proof) that neither he nor his counsel participated in the telephone conferences referenced in Ms. Brady's affidavit.[3] However, even if that were so, it is undisputed that his attorney, Mr. Henchy, who was fully aware of every step in the Kirchick production—from service of the subpoena to full production—during the entire time the state court action was pending (a) never served any objection to the subpoenas served on the Kirchicks, (b) received copies of the entire production within days of the Kirchicks' production (c) never raised any questions about the Kirchicks' production of 553 pages of documents, (d) never asserted that the production was "inadvertent," (e) never claimed that the Kirchicks' disclosures violated any privilege Rudnick might have, and (f) did not take any action to prevent further disclosure of the documents.[4] It is axiomatic that Mr. Henchy's knowledge is imputed to Rudnick. O'Donnell v. Boggs, No. CV 05-11257-NG, 2008 WL 11387134, at *16 (D. Mass. Mar. 13, 2008), aff'd, 611 F.3d 50 (1st Cir. 2010) ("The knowledge imbued upon plaintiff's counsel is imputed to plaintiff, his client.").

At the hearing on this motion and in his Reply, Rudnick's counsel focused on the

---

[3] Reply at 4.

[4] See Brady Aff. at ¶ 34.

transcript of a motion to compel hearing in the White house case in order to claim that Attorney Henchy somehow took some steps to protect the documents shortly after they were disclosed by the Kirchicks, but his description of the hearing mischaracterized what occurred. The hearing in the White house litigation was on Plaintiffs' motion to compel Rudnick to testify and make production. The hearing did not concern in any manner Plaintiffs' subpoena to the Kirchicks and their production. Henchy was arguing that no further production needed to be made by Rudnick, *not* that the Kirchicks' production had been improper. It remains undisputed that Rudnick and his attorneys made no affirmative attempt to protect the documents or undo any "inadvertent" or "unauthorized" disclosure in any way over the past two years. The portions of the transcript cited by Rudnick in his motion only serve to reinforce that Henchy was aware of the Kirchick production at the time of the hearing and at least acquiesced in their production by taking no steps to claim they were improperly produced.

In addition to all of this, the evidence also definitively establishes that the other <u>Amgen</u> factors weigh heavily in Plaintiffs' favor, including that the documents were widely disseminated, and that the disclosure was vast in scope and extent. Rudnick has made no attempt to counter these points, and thus the Court should find that a waiver occurred.

D. <u>Even if the Court Were to Grant the Relief Rudnick Seeks, Many Documents Will Remain Public.</u>

As a practical matter, it is entirely unclear how the relief Rudnick has requested can "undo" the extensive disclosure of the documents and recapture any privilege. Rudnick requests that the Court order Plaintiffs to return and/or destroy all copies of the documents and be barred from using them in this litigation. However, these documents have already been so widely disseminated that this relief will serve no purpose. As noted at the December 21, 2021 hearing, many of the documents are in the public domain, having been filed in multiple cases in the

Barnstable Superior Court, publicly filed in this Court, and republished in Barnstable Superior Court by the Defendants' counsel. The Defendants also briefed extensive motions to dismiss without asking this Court to strike any of the subject documents from its consideration of the allegations in the Complaint. They then engaged in a two-hour hearing on those motions and said nothing about these documents, and then sat back and waited as the Court took the issue under advisement. Now, references to and descriptions of these documents are laced throughout this Court's 60-page order on the Defendants' motions. Rudnick seemingly expects this Court retract and rewrite the opinion, somehow untangling the documents from that decision. Even if his motion had had some merit, practically speaking, its objective is unachievable at this stage. He simply waited too long to try to claim any privilege.

E. <u>Rudnick Failed to Meet his Burden of Proving that the Documents are Privileged.</u>

Finally, it is worth noting again that Rudnick failed to take the basic step of identifying the documents in particular he claims are protected. While Rudnick's counsel noted at the December 21, 2021 hearing that the documents are all "on his privilege log," the Plaintiffs cannot determine which of the documents on the log are subject to this motion based on the minimal information provided on the log. While Rudnick is seeking to claim some privilege over some of the documents produced by the Kirchicks' attorneys, Rich May, in response to Plaintiffs' subpoena in the White house case, Rudnick has not met his burden of definitively identifying the documents.

Rudnick's Reply still offers no proof that any of the subject communications were privileged in the first instance, and a cursory review of the subset of these documents attached to the Complaint makes clear why. Most of these documents constitute communications between Mrs. Kirchick and her brother simply discussing their dislike for the neighbors. There is no legal

6

advice or strategy being discussed in the vast majority of documents at issue.[5] They are, thus, not subject to protection.

Moreover, even if legal advice had been discussed, all of the available evidence supports a finding that there was no legally recognized common interest between Rudnick and the Kirchicks that would preserve any privilege. Rudnick and the Kirchicks were never co-parties in any litigation they filed against Plaintiffs, and Defendants' separate lawsuits against Plaintiffs, filed at separate times, and involving separate properties did not create a common interest. The Kirchicks' attorneys, Rich May, specially retained to respond to the Plaintiffs' subpoena, concluded there was no common interest during the time the documents they produced were created. See Brady Aff. at ¶¶ 24-25 and Ex. G. Even Rudnick's attorney Henchy conceded that Rudnick's state court suit against Plaintiffs had nothing to do with the Kirchicks:

> But **the allegation in the [Rudnick's] complaint does not relate to the Kirchicks.** It relates to a legal relationship between Mr. Kaiser and Mr. Furnish and Mr. Rudnick . . . . **I don't see where the Kirchicks have anything to add or subtract from that particular matter**.

Plaintiffs' Opposition, Ex. P at 16.[6] Because no common interest attached to the communications, disclosures between the Defendants waived any attorney-client privilege that may have otherwise protected the communication.

---

[5] Rudnick certainly has not identified any attorney-client privileged communications.

[6] Again, as stated in Plaintiffs' Opposition, notwithstanding all the above, the Kirchick production (and more) are entitled to no protection because the Defendants sought advice and assistance in furtherance of their extortionate behavior to secure a valuable property right to which they were not legally entitled. See United States v. Zolin, 491 U.S. 554 (1989); Purcell v. District Attorney for the Suffolk Dist., 424 Mass. 109, 115 (1997).

## Conclusion

For the foregoing reasons, Rudnick's motion for protective order should be denied in its entirety and Plaintiffs should be awarded their fees and costs in connection with responding to this motion.[7]

Respectfully submitted,

GRANT KAISER and JOHN FURNISH,

By their attorneys,

/s/ Alycia M. Kennedy
Howard M. Cooper (BBO #543842)
Alycia M. Kennedy (BBO # 688801)
Todd & Weld LLP
1 Federal Street, 27th Floor
Boston, MA 02110
hcooper@toddweld.com
akennedy@toddweld.com
(617) 724-2626

Dated: December 30, 2021

## CERTIFICATE OF SERVICE

I, Alycia M. Kennedy, hereby certify that this document has been filed through the ECF system, will be sent electronically to the registered participants as identified on the notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

/s/ Alycia M. Kennedy
Alycia M. Kennedy

---

[7] Rudnick attaches to his motion a letter from his counsel that reiterates his position concerning a series of phone calls where he alleges the documents were discussed amongst counsel to this case. As noted in Plaintiffs' Opposition, counsel's account of these calls is inaccurate. Further, the source of the documents did not prevent Rudnick from moving for a protective order in April 2021, when he first allegedly discovered that allegedly protected documents were in Plaintiffs' hands. The letter serves no other purpose than to confuse the issues and has no bearing on the fact that Rudnick's motion is meritless, and fees should be awarded.