UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GRANT KAISER and
JOHN FURNISH,
    Plaintiffs,

                                    CIVIL ACTION NO.
                                    21-10590-MBB

      v.


WILLIAM DEAN KIRCHICK, CAROL
RUDNICK KIRCHICK, Individually
and as Trustee of the 41 SEAVIEW
TERRACE REAL ESTATE TRUST,
and RONALD STEVEN RUDNICK,
    Defendants.


**MEMORANDUM AND ORDER RE:**
**DEFENDANT RONALD STEVEN RUDNICK'S MOTION FOR A PROTECTIVE ORDER**
**(DOCKET ENTRY # 67)**

**January 20, 2022**

**BOWLER, U.S.M.J.**

Pending before this court is a motion for a protective order filed by defendant Ronald Steven Rudnick ("Rudnick"), pursuant to Fed. R. Civ. P. 26 ("Rule 26") and Fed. R. Evid. 502 ("Rule 502"). (Docket Entry # 67). Plaintiffs Grant Kaiser ("Kaiser") and John Furnish ("Furnish") (together, "plaintiffs") oppose the motion. (Docket Entry # 74). After conducting a hearing on December 21, 2021, this court took the motion under advisement. (Docket Entry # 84).

BACKGROUND

Plaintiffs maintain a seasonal residence in Chatham, Massachusetts across from defendants William Dean Kirchick and Carol Rudnick Kirchick (together, the "Kirchicks").  (Docket Entry # 1, p. 1) (Docket Entry # 67, pp. 2-3).  Rudnick, Mrs. Kirchick's brother, "is a licensed real estate broker and a licensed contractor" in the area.  (Docket Entry # 1, p. 5, ¶ 14).

Since approximately 2017, "the [p]arties have [been] engaged in numerous lawsuits" and other disputes with one another.  (Docket Entry # 67, p. 3).  "[I]n or around August of 2017," a dispute arose between the Kirchicks and plaintiffs concerning two pear trees on plaintiffs' property, which "then devolved into another dispute regarding property and parking rights to the so-called 30' private way, the 20' T section, and ownership and rights to maintain a privet between the Kirchicks' and [] [p]laintiffs' property."  (Docket Entry # 67, p. 4).  In connection with this dispute, plaintiffs retained attorney Peter Brooks ("Attorney Brooks") to represent them, and "the Kirchicks retained [a]ttorney Bill Henchy" ("Attorney Henchy").  (Docket Entry # 67, p. 3).  In April 2018, Kaiser emailed Rudnick a settlement offer that "addressed both the White" litigation and plaintiffs' "ongoing dispute with the Kirchicks regarding

certain land rights." (Docket Entry # 79, p. 3) (Docket Entry # 79-2).

In June 2018, "Kaiser sought [] emergency harassment prevention order[s] [] against []Rudnick and the Kirchicks" (together, "defendants"). (Docket Entry # 67, p. 3). In connection with the harassment prevention orders, "[t]he Kirchicks retained the services of [a]ttorney Bill Riley" ("Attorney Riley") and Rudnick retained Attorney Henchy. (Docket Entry # 67, p. 3). A few days after Kaiser obtained the harassment prevention orders against defendants, Attorney Brooks wrote to Attorney Henchy, with Attorney Riley copied, proposing a resolution to plaintiffs' "differences" with the Kirchicks and Rudnick. (Docket Entry # 67-1); see (Docket Entry # 67, p. 4).[1] A week later, Attorney Brooks emailed Attorney Henchy: "[w]hile we may be willing to consider separating the agreements with the Kirchicks and Rudnick into two documents, the substance of these

---

[1] Rudnick mischaracterizes this correspondence, repeatedly stating that in such correspondence Attorney Brooks expressed the need for a "'*global* resolution.'" (Docket Entry # 67, pp. 2, 4) (Docket Entry # 79, p. 3) (emphasis added). As further detailed below, Rudnick relies on this quote to argue that defendants shared a "common interest." (Docket Entry # 67, p. 4, 7). Upon review of the correspondence, however, this court determined that Attorney Brooks in reality simply "present[ed] a proposal for resolution." (Docket Entry # 67-1). While Attorney Brooks proposed both "a fair resolution" and "an amicable resolution" in his correspondence from June 11, 2018, he never proposed a "global resolution." (Docket Entry # 67-1).

matters cannot be resolved without resolving the disputes with both your clients." (Docket Entry # 67-2).

In August 2018, Rudnick sued Kaiser for "contractual interference with []Rudnick's accepted offer for a home located in the same subdivision as the Kirchicks and [p]laintiffs." (Docket Entry # 67, p. 3). That action is captioned <u>Rudnick v. Kaiser, et al.</u>, 1872-cv-00426 (Barnstable Superior Court) (the "White litigation"). (Docket Entry # 67, pp. 1, 3). Rudnick retained Attorney Henchy to represent him in the matter. (Docket Entry # 67, p. 3).

"On February 5, 2019, [p]laintiffs' then-attorney, Thomas Moriarty ["Attorney Moriarty"], deposed []Rudnick in the White litigation" with plaintiffs present. (Docket Entry # 67, p. 5) (Docket Entry # 67-3). Attorney Moriarty "inquired about" certain "communications between []Rudnick and the Kirchicks," to which Attorney Henchy, Rudnick's "counsel at the time[,] made multiple objections . . . and asserted attorney-client privilege." (Docket Entry # 67, p. 5) (Docket Entry # 67-3 at 124:4-126:8). In September 2019, "Attorney Moriarty served . . . . . subpoena[s] . . . on the Kirchicks to obtain any and all communications between them and [] Rudnick." (Docket Entry # 67, p. 5); <u>see</u> (Docket Entry ## 74-1, 74-2). In November and December 2019, Rich May, P.C. ("Rich May"), a law firm

representing the Kirchicks,[2] produced in response several hundred pages of correspondence.  (Docket Entry # 67, p. 5) (Docket Entry # 74, pp. 4-5).

In or about October 2019, Attorney Moriarty filed a motion in the White litigation to compel testimony by Rudnick and the production of documents related to certain communications between defendants.  (Docket Entry # 67, p. 5) (Docket Entry # 67-4).  Attorney Henchy, representing Rudnick, opposed the motion and "argu[ed] that an attorney-client relationship existed and that []Rudnick had not waived his privilege." (Docket Entry # 67, p. 5) (Docket Entry # 67-4).  After a hearing on the motion in December 2019, the court ordered Rudnick to produce "a privilege log," rather than "the production of any communications."  (Docket Entry # 67, p. 5); see (Docket Entry # 74, p. 6).  Rudnick failed to timely produce the privilege log, however, prompting plaintiffs to notify the court and "request[] that the [c]ourt order Rudnick to (a) produce the requested documents and (b) testify regarding the communications."  (Docket Entry # 74, pp. 6-10).  "The next day, February 6, 2020, Rudnick (by and through Attorney Henchy) filed a voluntary stipulation of dismissal of all claims against

_____

[2]  Jeffrey Loeb ("Attorney Loeb") from Rich May is the Kirchick's attorney of record for the action before this court, along with John Donovan and Matthew Rush from Sloane & Walsh LLP.  (Docket Entry ## 9, 12, 32).

[p]laintiffs" in the White litigation.  (Docket Entry # 74, p. 7).  Accordingly, "the [c]ourt never issued any ruling on the merits of [plaintiffs'] [m]otion to [co]mpel, never ruled that the Kirchicks acted as Rudnick's attorney relative to the White [litigation], and never ruled that Rudnick's communications with the Kirchicks were entitled to any protection from disclosure." (Docket Entry # 74, p. 7) (Docket Entry # 74-1, p. 8, ¶ 31); see (Docket Entry # 67, p. 5) (Docket Entry # 79, p. 5).

The action before this court, initiated in April 2021, arises from the dispute concerning the two pear trees on plaintiffs' property "that interfered with the Kirchicks' view." (Docket Entry # 1, pp. 1-2, ¶¶ 1-2).[3]  The parties do not dispute that plaintiffs have produced copies of correspondence between Rudnick and the Kirchicks that were previously produced in the White litigation.  See generally (Docket Entry ## 67, 74, 79, 80).  According to Rudnick, "the majority" of the correspondence consists of "[attorney-client] privileged communications." (Docket Entry # 67, p. 5).[4]

---

[3]  This court's prior opinion (Docket Entry # 76) provides additional details from the complaint that are not relevant here.
[4]  In this action, Rudnick is represented by Patrick Driscoll ("Attorney Driscoll") from the law firm Boyle Shaughnessy Law, P.C.  (Docket Entry # 15).  According to Attorney Driscoll, Attorney Loeb denied that his firm, Rich May, disclosed the communications at issue here.  (Docket Entry # 67, p. 6). Attorney Driscoll indicates that, contrary to Attorney Loeb's denial, "there is a letter from Attorney Moriarty addressed to

On November 19, 2021, plaintiffs filed four motions to
compel in this action: (1) against the Kirchicks, for the
production of "further documents in response to" plaintiffs'
production request (Docket Entry # 54); (2) against Rudnick, for
the production of "further documents in response to" plaintiffs'
production request (Docket Entry # 56); (3) against Rudnick, for
the production of documents reflected on his privilege log
(Docket Entry # 58) and (4) against the Kirchicks, for the
production of documents reflected on the Kirchicks' privilege
log (Docket Entry # 60).  Defendants filed their oppositions on
November 24 and December 3, 2021.  (Docket Entry ## 66, 68, 69,
70).  On December 21, 2021, this court held a hearing on
plaintiffs' motions to compel (Docket Entry ## 54, 56, 58, 60),
as well as Rudnick's motion for a protective order (Docket Entry
# 67) that this memorandum and order address.  This court denied
plaintiffs' motions to compel (Docket Entry ## 54, 56, 58, 60)
without prejudice and took Rudnick's motion for a protective
order (Docket Entry # 67) under advisement.  Plaintiffs filed
both an opposition (Docket Entry # 74) and sur-reply (Docket
Entry # 80) to Rudnick's motion for a protective order (Docket

---

Rich May discussing the disclosure."  (Docket Entry # 67, p. 6).
A copy of such letter was not filed, however, with either
Rudnick's motion for a protective order (Docket Entry # 67) or
reply (Docket Entry # 79).

Entry # 67) and his reply to their opposition (Docket Entry # 79).

## DISCUSSION

Rudnick moves for a protective order to prevent plaintiffs "from using privileged communications between [] Rudnick and/or" the Kirchicks "and/or their respective counsel, that" he alleges "were inadvertently disclosed in" the White litigation by Rich May "without [] Rudnick's knowledge or assent." (Docket Entry # 67, p. 1). The protective order is necessary, Rudnick argues, "to prevent irreparable harm to" him and because he "never waived his privilege in regard to the inadvertently disclosed communications." (Docket Entry # 67, p. 1); see (Docket Entry # 79, pp. 1, 3-5). Plaintiffs deny that the "documents were inadvertently disclosed" and that "he did not know about the production of these documents." (Docket Entry # 74, p. 1); see (Docket Entry # 80, pp. 1-3). They also argue that, even if the documents were inadvertently produced, Rudnick has waived the privilege. (Docket Entry # 74, p. 2) (Docket Entry # 80, pp. 3-5).

Rudnick asks that this court: "conclude that the communications reflected in his privilege log are privileged; [] order [] [p]laintiffs to return the communications to [] [d]efendants" and "destroy all paper and electronic copies of the communications" within five days of the order; "and,

8

preclude [] [p]laintiffs from using the communications in discovery or at trial."  (Docket Entry # 67, pp. 2, 13).[5] Plaintiffs, in turn, request that Rudnick's motion for a protective order (Docket Entry # 67) be denied and this court "require Rudnick to pay [p]laintiffs' reasonable expenses and attorneys' fees incurred in responding to [his] motion." (Docket Entry # 74, p. 2); see (Docket Entry # 80, p. 8).

I.    Protective Orders Under Rule 26

Under Rule 26, "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."  Fed. R. Civ. P. 26(b)(1).  A party "from whom discovery is sought may move for a protective order," provided the motion "include[s] a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action."  Fed. R. Civ. P. 26(c)(1).  "The court may, for good cause, issue an order to protect" such party "from annoyance, embarrassment, oppression,

---

[5]  Despite Rudnick's request that this court issue an order concluding "that the communications reflected in his privilege log are privileged," he fails to provide this court with a copy of such privilege log with either his motion for a protective order (Docket Entry # 67) or reply (Docket Entry # 79). However, after a review of the docket, this court infers that the privilege log at issue is that which he attached as Exhibit A to his opposition to plaintiffs' motion to compel documents from him.  (Docket Entry ## 68, 68-1).

or undue burden or expense, including . . . forbidding the disclosure or discovery" and "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters[.]"  Fed. R. Civ. P. 26(c)(1).

"'The "good cause" standard in the Rule is a flexible one that requires an individualized balancing of the many interests that may be present in a particular case.'"  Gill v. Gulfstream Park Racing Ass'n., Inc., 399 F.3d 391, 402 (1st Cir. 2005) (brackets omitted) (quoting United States v. Microsoft Corp., 165 F.3d 952, 959-60 (D.C. Cir. 1999)).  However, "'a finding of good cause must be based on a particular factual demonstration of potential harm, not on conclusory statements.'"  United States v. Padilla-Galarza, 990 F.3d 60, 77 (1st Cir. 2021) (citation and brackets omitted); see Heagney v. Wong, No. CV 15-40024-TSH, 2016 WL 2901731, at *3 (D. Mass. May 18, 2016) ("[B]road allegations of harm, unsubstantiated by specific examples or articulated reasons, do not satisfy the Rule 26(c) test." (quoting Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986))).  As the party seeking a protective order, Rudnick "'has the burden of showing that good cause exists for the issuance of that order.'"  United States v. Delaney, No. 09-10312-RGS, 2010 WL 2817190, at *3 (D. Mass. July 15, 2010) (quoting Pub. Citizen v. Liggett Grp., Inc., 858 F.2d 775, 789 (1st Cir. 1988)).

Rudnick has failed to meet such burden.  He alleges in a conclusory fashion that a protective order is necessary "to prevent irreparable harm to" him and does not substantiate that allegation "by specific examples or articulated reasons." (Docket Entry # 67, pp. 1, 13).  See Heagney, 2016 WL 2901731, at *3.  That "broad allegation[] of harm . . . do[es] not satisfy the Rule 26(c) test."  See id.  For this reason, and for the additional reasons that follow, this court declines to grant Rudnick a protective order.

II.  The Attorney-Client Privilege

In this diversity case, Massachusetts law determines the scope of the attorney-client privilege.  Fed. R. Evid. 501; F.D.I.C. v. Ogden Corporation, 202 F.3d 454, 460 (1st Cir. 2000); Amica Mutual Insurance Co. v. W.C. Bradley Co., 217 F.R.D. 79, 81 (D. Mass. 2003).  The privilege protects communications made in confidence between the client and the attorney for the purpose of obtaining legal advice.  See Upjohn Co. v. United States, 449 U.S. 383, 389 (1981); McCarthy v. Slade Associates, Inc., 972 N.E.2d 1037, 1045-1046 (Mass. 2012). The privilege is narrowly construed.  Clair v. Clair, 982 N.E.2d 32, 40 (Mass. 2013).

The party asserting the "privilege bears the burden of showing that the privilege applies."  Vicor Corp. v. Vigilant Ins. Co., 674 F.3d 1, 17 (1st Cir. 2012).  This means showing

that: "(1) the communications were received from a client during the course of the client's search for legal advice from the attorney in his or her capacity as such; (2) the communications were made in confidence; and (3) the privilege as to these communications has not been waived."  Clair, 982 N.E.2d at 41 n.28; Comm'r of Revenue v. Comcast Corp., 901 N.E.2d 1185, 1195 (Mass. 2009).  Thus, in asserting the privilege, Rudnick bears the burden of establishing these elements.  See Clair, 982 N.E.2d at 41 n.28.  "[W]hether an attorney-client relationship existed" and "'[w]hether there has been a waiver'" are "mixed question[s] of law and fact" for the court.  Patel v. Martin, 111 N.E.3d 1082, 1091 (Mass. 2018) (quoting McCarthy, 972 N.E.2d at 1045).

While Massachusetts law governs the general scope of the privilege, Rule 502 determines whether disclosure of privileged material that "is made in a state proceeding and not the subject of a state-court order concerning waiver" operates as a waiver in subsequent proceedings.  Fed. R. Evid. 502(c).[6]  Under Rule 502, such disclosure "does not operate as a waiver in a federal proceeding if the disclosure: (1) would not be a waiver . . .

_____

[6] Here, the disclosure at issue occurred during the White litigation (a state proceeding in Massachusetts) and was "not the subject of a state-court order concerning waiver."  See Fed. R. Evid. 502(c); see also (Docket Entry # 67, pp. 1, 3, 5) (Docket Entry # 74, p. 7).

if it had been made in a federal proceeding" (that is, "the disclosure [was] inadvertent," the privilege holder "took reasonable steps to prevent disclosure," and "the holder promptly took reasonable steps to rectify the error, including (if applicable) following [Rule] 26 (b)(5)(B)"); "or (2) is not a waiver under the law of the state where the disclosure occurred."  Fed. R. Evid. 502(b), (c).

In Massachusetts, where the disclosure here occurred, there are "certain exceptions to the attorney-client privilege and some circumstances in which the privilege may be deemed waived other than by express waiver."  See Darius v. City of Bos., 741 N.E.2d 52, 54 (Mass. 2001).  For example, "[t]he attorney-client privilege may [] be waived by the inadvertent disclosure of privileged documents."  In re: New England Compounding Pharmacy, Inc., No. MDL 13-2419-RWZ, 2016 WL 6883215, at *2 (D. Mass. July 28, 2016).  "In considering whether an inadvertent disclosure constitutes waiver, courts examine: '(1) the reasonableness of the precautions taken to prevent inadvertent disclosure, (2) the amount of time it took the producing party to recognize its error, (3) the scope of the production, (4) the extent of the inadvertent disclosure, and (5) the overriding interest of fairness and justice.'"  Santiago v. Lafferty, No. 13-CV-12172-IT, 2015 WL 717945, at *6 (D. Mass. Feb. 19, 2015) (citation omitted).

A.   <u>The Common Interest Doctrine</u>

"[A]n exception to waiver of the attorney-client privilege" is "[t]he common interest doctrine." <u>Hanover Ins. Co. v. Rapo & Jepsen Ins. Services, Inc.</u>, 870 N.E.2d 1105, 1109 (Mass. 2007). "Broadly stated, the common interest doctrine '*extends* the attorney-client privilege to any privileged communication shared with another represented party's counsel in a confidential manner for the purpose of furthering a common legal interest.'" <u>Id.</u> (citation and brackets omitted) (emphasis added); <u>see</u> <u>Cavallaro v. United States</u>, 284 F.3d 236, 250 (1st Cir. 2002) ("The common-interest doctrine prevents clients from waiving the attorney-client privilege when attorney-client communications are shared with a third person who has a common legal interest with respect to these communications, for instance, a codefendant."); <u>see also</u> <u>Hanover</u>, 870 N.E.2d at 1110 ("[T]he principle . . . applies to protect privileged communications shared by counsel for coplaintiffs."). More specifically, the common interest doctrine provides:

> 'If two or more clients with a common interest in a litigated or nonlitigated matter are represented by separate lawyers and they agree to exchange information concerning the matter, a communication of any such client that otherwise qualifies as privileged . . . that relates to the matter is privileged as against third persons. Any such client may invoke the privilege, unless it has been waived by the client who made the communication.'

Hanover, 870 N.E.2d at 1110 (quoting The Restatement (Third) of the Law Governing Lawyers § 76(1) (2000)).  Typically, the doctrine applies "when two or more clients consult or retain an attorney on particular matters of common interest." Vicor, 674 F.3d at 19.

Defendants alleging a common interest must "prove that '(1) the communications were made in the course of a joint defense effort, (2) the statements were designed to further the effort, and (3) the privilege has not been waived.'" Hanover, 870 N.E.2d at 1113 (quoting United States v. Bay State Ambulance & Hosp. Rental Serv., Inc., 874 F.2d 20, 28 (1st Cir. 1989)). However, "because the [common interest] privilege is derivative of attorney[-]client privilege, a proponent must also demonstrate that the statement in question was made with respect to representation and in confidence." Woods Hole Oceanographic Inst. v. ATS Specialized, Inc., No. CV 17-12301-NMG, 2020 WL 9741335, at *4 (D. Mass. May 11, 2020).

As to the first two elements of the common interest doctrine, Rudnick argues that "[t]he communications by and between []Rudnick and the Kirchicks concerning [] [p]laintiffs were part of a joint defense effort," as evidenced by "Attorney Brooks' June 11, 2018 correspondence in which he "propos[ed] a 'global resolution' for all the differences that existed between the" parties.  (Docket Entry # 67, pp. 4, 7) (Docket Entry # 67-

1).  According to Rudnick, "[n]umerous of the emails . . . discuss defense strategy, where [] [p]laintiffs had ongoing disputes with []Rudnick concerning the White litigation at the same time [] [p]laintiffs were engaging in an ongoing dispute with the Kirchicks . . . ."  (Docket Entry # 67, pp. 7-8).  He contends that his communications with "the Kirchicks as to how to respond to []Kaiser's repeated demands for the Kirchicks to relinquish their requests to remove the pear trees as well as the Kirchicks' property rights to the 30' private way were clearly designed to further [] [d]efendants' joint defense." (Docket Entry # 67, p. 8).

In response, plaintiffs note that Rudnick does not identify "the common legal interest he shared with the Kirchicks" and "when it began or when it ended."  (Docket Entry # 74, p. 17). Plaintiffs argue that "Rudnick and the Kirchicks shared no legally cognizable common interest even though they were litigating against the Plaintiffs simultaneously because they were separate matters."  (Docket Entry # 74, p. 17).  More specifically, "Rudnick and the Kirchicks were never co-parties in any litigation they filed against [p]laintiffs" and "[t]heir separate suits against [p]laintiffs were unrelated."  (Docket Entry # 74, p. 17).  Plaintiffs also allege that "two people [] represented by the same attorney . . . can freely share legal advice among them without waiver . . . only when the parties are

represented by the same counsel *in the same matter*," and, even so, "[t]hey still need to demonstrate a common interest . . . ." (Docket Entry # 74, p. 17).

With respect to the third element of the common interest doctrine, Rudnick argues that he "never waived his privilege" because waiver "under the common interest doctrine[] requires the consent of all parties who hold the privilege" and he never consented to a waiver.  (Docket Entry # 67, pp. 7-8) (emphasis omitted); see (Docket Entry # 79, pp. 3-5).  He further argues that he "made every possible attempt to preserve and protect his privilege by consistently asserting the attorney-client privilege at his deposition[] and filing an opposition to [plaintiffs'] motion to compel" in the White litigation. (Docket Entry # 67, p. 8); see (Docket Entry # 79, p. 5). Plaintiffs, in turn, maintain that Rich May's disclosure of defendants' correspondence operated as a waiver because: Rudnick has not proven that he "took reasonable steps to prevent the 'inadvertent' disclosure"; he has "taken an extraordinary amount of time to raise the issue"; the size of the disclosure was "substantial" as compared to the size of the production; the disclosure "has been widely disseminated"; and "fairness dictates that the privilege should be deemed waived, especially

when compared with [d]efendants' lack of diligence."  (Docket Entry # 74, pp. 12-16); see (Docket Entry # 80, pp. 4-5).[7]

For the following reasons, this court finds that the common interest doctrine does not apply here.  As a preliminary matter, and as plaintiffs note, Rudnick never clearly identifies what the "common interest" is that defendants purportedly share.  See (Docket Entry # 74, p. 17); see generally (Docket Entry ## 67, 79).  Instead, he points to "Attorney Brooks' June 11, 2018 correspondence," in which he alleges that Attorney Brooks "propos[ed] a 'global resolution' for all the differences that existed between the" parties.  (Docket Entry # 67, pp. 4, 7) (Docket Entry # 67-1).  That correspondence, Rudnick argues, "establishes that communications between []Rudnick, the Kirchicks and their counsel fall within the common interest doctrine."  (Docket Entry # 67, p. 7).  This court disagrees. If the common interest among defendants is obtaining a "global resolution" of the parties' disputes, at that rate plaintiffs would also share that interest.  But certainly communications between plaintiffs and defendants would not be subject to the attorney-client privilege.

_____

[7]  Rudnick does not present a waiver argument under the common doctrine that examines these various factors.  See generally (Docket Entry # 67, pp. 7-9) (Docket Entry # 79, pp. 2-3).  This court will examine such factors below in connection with the parties' arguments as to potential waiver under Rule 502.

Moreover, even if the correspondence from plaintiffs' counsel can be said to evidence that counsel's *belief* that defendants were engaged in a joint defense, that does not mean that defendants did in fact share a common interest and were engaged in a joint defense.  The same applies to any supposed belief that Kaiser may have had that "the disputes with []Rudnick and the Kirchicks" were a "'single dispute.'"  (Docket Entry # 79, p. 3).  Put simply, this court is not persuaded that how *plaintiffs* and *plaintiffs' attorneys* treated the disputes with defendants is indicative of whether a common interest did actually exist among *defendants*.  It is also dubious that, contrary to Rudnick's representations, "Attorney Henchy and Attorney Riley were representing the Kirchicks contemporaneously with []Rudnick."  (Docket Entry # 67, p. 6).[8]  For these reasons,

---

[8]  In his summary of the relevant facts and procedural history, for example, Rudnick indicates that: Attorney Henchy represented him when he sued Kaiser in August 2018 for "contractual interference with [his] accepted offer for a home"; Attorney Riley represented the Kirchicks in a dispute arising from their requests that plaintiffs remove two pear trees, which "then devolved into another dispute regarding property and parking rights"; Attorney Henchy represented Rudnick also in connection with harassment prevention orders that Kaiser sought against defendants in June 2018; Attorney Henchy represented him during his February 2019 deposition; and the law firm Rich May represented the Kirchicks in the White litigation.  (Docket Entry # 67, pp. 1, 3-5).  Any "contemporaneous" representation of Rudnick and the Kirchicks by the same counsel for the same dispute is not evident here.

Rudnick has failed to establish the first element of the common interest doctrine.

Similarly, as to the second element of the common interest doctrine, this court disagrees that defendants' communications "as to how to respond to []Kaiser's repeated demands . . . were clearly designed to further [] [de]fendants' joint defense." (Docket Entry # 67, p. 8).  It is unclear whether, at the early stage of the parties' disagreements in 2017 in which some of the communications between defendants took place, Rudnick or the Kirchicks were even represented by counsel.  See Hanover, 870 N.E.2d at 1109 ("[T]he common interest doctrine 'extends the attorney-client privilege to any privileged communication shared with *another represented* party's *counsel* in a confidential manner for the purpose of furthering a common legal interest.'" (citation omitted) (emphasis added)).  Nor is it clear what the defendants' "joint defense" would have been, particularly given that they filed separate lawsuits against plaintiffs.  This court is therefore unpersuaded that the communications between Rudnick and the Kirchicks were "clearly designed to further" a joint defense.  See (Docket Entry # 67, p. 8).  Thus, Rudnick has also failed to establish the second element of the common interest doctrine.

Even assuming arguendo that Rudnick had successfully demonstrated that his communications with the Kirchicks "'were

made in the course of a joint defense effort'" and "'designed to further the effort,'" he has not established the third and final element of the common interest doctrine: that the "'the privilege has not been waived.'"   See Hanover, 870 N.E.2d at 1113 (citation omitted).   As previously noted, Rudnick argues that "waiver . . . under the common interest doctrine[] requires the consent of all parties who hold the privilege," regardless of "whether the parties are represented by the same or separate counsel."   (Docket Entry # 67, p. 7) (citing ZVI Const. Co., LLC v. Levy, 60 N.E.3d 368, 378 (Mass. App. Ct. 2016)).   In support of this proposition, Rudnick relies on ZVI Const. Co., LLC v. Levy, where the court noted that "there are many cases holding that, in circumstances where multiple clients are jointly represented by the same counsel, or in the analogous situation where multiple clients represented by separate counsel join together pursuant to a so-called 'common interest' or 'joint defense' agreement, all of the clients must waive the attorney-client privilege for a waiver to occur."   ZVI, 60 N.E.3d at 378. Plaintiffs dispute that ZVI is applicable to this case on the basis that it "involved *co-clients* in the *same matter* represented by the *same counsel*, and the parties asserting the privilege 'acted repeatedly and successfully to protect the privilege of the subject communications.'"   (Docket Entry # 74, p. 19) (citing ZVI, 60 N.E.3d at 379).   In his reply (Docket

Entry # 79), Rudnick responds that ZVI is analogous to this case because "[]Rudnick and the Kirchick[s] were represented by both Attorney Henchy and Attorney Riley contemporaneously regarding their collective disputes with [] [p]laintiffs."  Plaintiffs are correct that ZVI is dissimilar to this action, but it is primarily because the parties in that case did not dispute that the individuals asserting the privilege had previously entered into a "common interest" agreement.  ZVI, 60 N.E.3d at 378.  As noted previously, Rudnick has failed to show that he and the Kirchicks were jointly represented by the same counsel or that they shared a "common interest" or "joint defense."  The common interest doctrine therefore does not apply here, regardless of whether Rudnick consented to the Kirchick's disclosure and thereby "waived" his purported privilege.  See ZVI, 60 N.E.3d at 378.  As further detailed below, however, this court concludes that, even if the attorney-client privilege (and, by extension, the common interest doctrine) applied here, Rudnick subsequently waived the privilege.

Finally, and again assuming arguendo that there was a common interest among defendants, Rudnick has failed to meet his burden of showing that the communications between Rudnick and the Kirchicks were subject to the attorney-client privilege.  See Woods Hole, 2020 WL 9741335, at *4 ("[B]ecause the [common interest] privilege is derivative of attorney[-]client

privilege, a proponent must also demonstrate that the statement
in question was made with respect to representation and in
confidence."); see also McCarthy, 972 N.E.2d at 1045-1046;
Cavallaro, 284 F.3d at 250.  He has not demonstrated that the
"that the statement[s] in question [were] made with respect to
representation and in confidence."  See Woods Hole, 2020 WL
9741335, at *4.  To begin with, Rudnick's privilege log
identifying the purportedly privileged communications simply
lists, as a description of the claimed privilege for each
document, either "[l]egal strategy" or "[e]xpert retention."
See generally (Docket Entry # 68-1).  Rudnick also does not
provide this court with actual examples of, via exhibits or
otherwise, the communications that he claims are privileged.
Neither his privilege log nor his motion for a protective order
therefore shed any light as to how the communications between
Rudnick and the Kirchicks are subject to the attorney-client
privilege.

This court also notes that Rudnick does not identify a
particular subset of communications between him and the
Kirchicks that demonstrate a "joint defense" but rather seeks a
protective order as to all of "the communications reflected in
his privilege log."  (Docket Entry # 67, p. 2).  As noted above,
Rudnick has failed to show that all those communications are
privileged.  Without further details or limitations, and because

the attorney-client privilege is narrowly construed, this court declines to issue a blanket protective order over all those communications.  See Clair, 982 N.E.2d at 40.[9]

B.   Inadvertent Disclosure

The "common interest" doctrine aside, Rudnick also addresses waiver of the attorney-client privilege under Rule 502.  See (Docket Entry # 67, p. 10).  Relying on Rule 502, he argues that "[d]espite the fact that Rich May disclosed the privileged communications, the communications remain privileged where []Rudnick never assented and had no knowledge of the inadvertent disclosure."  (Docket Entry # 67, p. 10).  Plaintiffs deny that the disclosure was inadvertent and contend that, "even had the disclosure been inadvertent, any privilege protections were waived by [the] disclosure."  (Docket Entry # 74, pp. 10, 12).  The disclosure operated as a waiver, plaintiffs contend, because: Rudnick has not proven that he "took reasonable steps to prevent the 'inadvertent' disclosure"; he has "taken an extraordinary amount of time to raise the

---

[9]  While Rudnick's motion for a protective order (Docket Entry # 67) focuses on communications between Rudnick and the Kirchicks, Rudnick's privilege log also lists a handful of communications between Rudnick and one or more of his attorneys.  See, e.g., (Docket Entry # 68-1, document 371).  To the extent Rudnick seeks a protective order that includes the communications with his attorneys, he has failed to meet his burden of showing that such communications are subject to the attorney-client privilege.  See Clair, 982 N.E.2d at 41 n.28.

issue"; the size of the disclosure was "substantial" as compared to the size of the production; the disclosure "has been widely disseminated"; and "fairness dictates that the privilege should be deemed waived, especially when compared with [d]efendants' lack of diligence."  (Docket Entry # 74, pp. 12-16); see (Docket Entry # 80, pp. 4-5).

Even if the disclosure was indeed "inadvertent," this court agrees with plaintiffs that Rudnick has waived any attorney-client privilege Rudnick he alleges to have had.  In determining whether Rudnick waived his privilege, this court examined a variety of factors: "'(1) the reasonableness of the precautions taken to prevent inadvertent disclosure, (2) the amount of time it took . . . to recognize its error, (3) the scope of the production, (4) the extent of the inadvertent disclosure, and (5) the overriding interest of fairness and justice.'"  See Santiago, 2015 WL 717945, at *6 (citation omitted).  First, as to reasonable precautions Rudnick may have taken to prevent the disclosure, he argues that "through motion practice and oral argument [he] continued to maintain that his communications with the Kirchicks remained privileged, even after certain communications were produced in response to the subpoena served on the Kirchicks in the White litigation." (Docket Entry # 79, p. 5).  While this weighs against finding

waiver, the remaining factors weigh in favor of waiver, as
further detailed below.

As to the second factor, Rudnick raised the privilege issue
more than two years after most of the documents were disclosed
in production.  (Docket Entry # 74-1, ¶¶ 19-20).  Rudnick argues
that "it was only after commencing discovery that [his] current
counsel was able to understand the origin of the disclosure and
therefore prepare" a motion for a protective order.  (Docket
Entry # 79, p. 6).  On April 4, 2021, however, plaintiffs filed
their complaint in this action that referenced and attached
copies of correspondence that Rudnick now alleges are
privileged.  See generally (Docket Entry # 1); see (Docket Entry
# 74, pp. 13-14).  Even if this court assumes that "[]Rudnick's
current counsel was able to understand the origin of the
disclosure" only after commencing discovery (Docket Entry # 67,
p. 6), it still does not explain why he did not move for a
protective order after discovering the purportedly privileged
documents in the complaint.

With respect to the scope of the production and the extent
of the disclosure, the Kirchicks' production was several hundred
pages (Docket Entry # 74, p. 15) (Docket Entry # 80, p. 4), "the
majority" of which Rudnick alleges consists of "[attorney-
client] privileged communications."  (Docket Entry # 67, p. 5).
The disclosure was therefore substantial "as compared to the

size of [the] production," suggesting that it was not "a reasonable mistake."  See Santiago, 2015 WL 717945, at *7-8; see also Amgen Inc. v. Hoechst Marion Roussel, Inc., 190 F.R.D. 287, 292 (D. Mass. 2000).  Additionally, and as plaintiffs note, "[t]he Kirchick production has not only been viewed by [p]laintiffs and their multiple sets of counsel" but also "all other counsel (and presumably forwarded to their clients) in at least three different cases, and a partial production has been made in a fourth case."  (Docket Entry # 74, p. 15).  The extent of the disclosure is therefore also substantial, weighing in favor of waiver.  See Santiago, 2015 WL 717945, at *8.

Finally, although this court "is sensitive to the fact that [Rudnick] may be disadvantaged" by the use of the purportedly privileged documents in this case, "the overriding interests of fairness and justice" weigh in favor of waiver.  See In re: New England Compounding Pharmacy, 2016 WL 6883215, at *4.  "'A determination of the overreaching issue of fairness' involving the protection of an attorney-client privileged communication, 'must be judged against the care or negligence with which the privilege is guarded with care and diligence or negligence and indifference.'"  In re: New England Compounding Pharmacy, 2016 WL 6883215, at *4 (quoting Figueras v. Puerto Rico Elec. Power Auth., 250 F.R.D. 94, 98 (D.P.R. 2008) (internal quotations removed)).  Here, the substantial size of the disclosure, the

widespread dissemination of the disclosed documents, and "the passage of time before" Rudnick "asserted the privilege are indicative of negligence, not diligence."  See In re: New England Compounding Pharmacy, 2016 WL 6883215, at *4; see also Amgen, 190 F.R.D. at 292 (finding waiver where counsel produced "approximately 200 documents" and discovered the disclosure five days later).  For these reasons, this court finds that Rudnick has waived any alleged attorney-client privilege he alleges to have had.

III. **Plaintiffs' Request for Reasonable Expenses and Attorneys' Fees Incurred in Responding to Rudnick's Motion for a Protective Order (Docket Entry # 67)**

A court may award reasonable expenses, including attorneys' fees, to a party that prevails on a motion for a protective order.  See Fed. R. Civ. P. 26(c)(3); Fed. R. Civ. P. 37(a)(5). As the prevailing party here, plaintiffs seek an award of "reasonable expenses and attorney[s'] fees incurred in responding to" Rudnick's motion for a protective order (Docket Entry # 67).  (Docket Entry # 74, p. 20); see (Docket Entry # 80, p. 8).  Plaintiffs argue that "an imposition of expenses and fees" is warranted because: "(a) the motion does not include affidavits or other documents proving the facts on which it is based, (b) the factual contentions have no support and (c), given these circumstances, it is reasonable to conclude that Rudnick's motion was filed for an improper purpose."  (Docket

Entry # 74, p. 20).  Rudnick, in turn, asks this court to "deny [] [p]laintiffs' request for expenses and attorneys' fees." (Docket Entry # 79, pp. 5-6).

At this time, this court reserves judgment on plaintiffs' request for reasonable expenses and attorneys' fees incurred in responding to Rudnick's motion for a protective order (Docket Entry # 67).  Plaintiffs' request for reasonable expenses and attorneys' fees (Docket Entry # 74, p. 20) (Docket Entry # 80, p. 8) is denied without prejudice, to be renewed at the conclusion of the case.

CONCLUSION

For the foregoing reasons, Rudnick's motion for a protective order (Docket Entry # 67) is **DENIED** and plaintiffs' request for expenses and attorneys' fees (Docket Entry ## 74, 80) incurred in responding to the motion is **DENIED** without prejudice.

/s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge