UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GRANT KAISER and JOHN FURNISH,

　　　　　　　Plaintiffs,

v.

WILLIAM DEAN KIRCHICK, CAROL
RUDNICK KIRCHICK, individually and as
TRUSTEE of the 41 SEAVIEW TERRACE
REAL ESTATE TRUST, and RONALD
STEVEN RUDNICK,

　　　　　　　Defendants.

CA No. 1:21-CV-10590-MBB

**LEAVE TO FILE GRANTED
ON JUNE 16, 2022 (ECF 168)**

**PLAINTIFFS' RESPONSE TO RONALD RUDNICK'S
STATEMENT OF MATERIAL FACTS**

Pursuant to Local Rule 56.1, Plaintiffs Grant Kaiser ("Kaiser") and John Furnish

("Furnish") hereby submits their responses to Defendant Ronald Rudnick's ("Rudnick")

Statement of Material Facts in Support of his Motion for Summary Judgment.[1]

1.　　**Defendant's Statement:** Plaintiffs Grant Kaiser and John Furnish are a married

couple who reside in Chatham, MA. (Plaintiffs' Amended Complaint, at ¶1, attached hereto as

Exhibit 1).

**Plaintiffs' Response: <u>Disputed</u>**. The evidence cited does not support this statement of

fact. Kaiser and Furnish reside in Texas. Ex. P1 at ¶1 (Plaintiffs' Amended Complaint).[2]

2.　　**Defendant's Statement:** Plaintiffs bought 39 Seaview Terrace in Chatham,

Massachusetts in 2008. *Id.*

---

[1] Plaintiffs dispute all headings in Mr. Rudnick's L.R. 56.1 statement of facts because they mischaracterize the evidence in the case. And because they are not part of the facts Mr. Rudnick alleges to be undisputed, Plaintiffs have omitted them from their response.
[2] All citations to Plaintiffs' exhibits reference exhibits attached to Plaintiffs' Statement of Additional Facts, Docket #173.

**Plaintiffs' Response:** Undisputed for the purposes of this motion.

3.    **Defendant's Statement:** Defendants Carol Kirchick and William Kirchick are a married couple that seasonally reside at 41 Seaview Terrace, Chatham, Massachusetts. *Id.* at ¶¶ 11 and 12.

**Plaintiffs' Response: <u>Disputed</u>**. The evidence cited does not support the statement that Defendants Carol Kirchick ("Carol") and William Kirchick ("William", collectively with Carol, the "Kirchicks") seasonally reside at 41 Seaview Terrace. The evidence cited states that the Kirchicks and other family members occasionally use the home on a seasonal basis. Ex. P1 at ¶¶ 11 and 12 (Plaintiffs Amended Complaint).

4.    **Defendant's Statement:** The Kirchicks have owned 41 Seaview Terrace in name or through the 41 Seaview Terrace Real Estate Trust since 1999. The Kirchicks built a new home on their property between 2008 and 2009. *Id.*

**Plaintiffs' Response: <u>Disputed</u>**. The authority cited does not support this statement of fact.

5.    **Defendant's Statement:** Defendant, Ronald Rudnick, ("Rudnick"), is the brother of Carol Kirchick and is a year-round resident of Chatham. Mr. Rudnick is a developer and commercial real estate owner of Lighthouse Realty Property Management, located in Chatham. *Id.* at ¶¶ 13 and 14.

**Plaintiffs' Response: <u>Disputed</u>**. The evidence cited does not support the statement that Rudnick is a developer or the owner of an entity named Lighthouse Realty Property Management. Plaintiffs further **<u>dispute</u>** that any entity named Lighthouse Realty Property Management exists. (<u>See</u> Secretary of the Commonwealth of Massachusetts Corporate Entity Database Search Results, attached hereto as <u>Exhibit P238</u> (Lighthouse Realty Property

2

Management – "No records found")). It is undisputed for the purposes of this motion that Mr.
Rudnick is the brother of Mrs. Kirchick.

6.     **Defendant's Statement:** 39 Seaview Terrace and 41 Seaview Terrace are located
adjacent to one another. *Id.* at ¶ 12.

**Plaintiffs' Response:** Undisputed for the purposes of this motion that 39 Seaview
Terrace is located to the east of 41 Seaview Terrace.

7.     **Defendant's Statement:** From 2009 until sometime in 2017 the Plaintiffs and the
Kirchicks "enjoyed what Plaintiffs believed to be a friendly, neighborly relationship." *Id.* at ¶ 22;
(Deposition Testimony of Plaintiff, Grant Kaiser, 77:10-17, attached hereto as Exhibit 2).

**Plaintiffs' Response:** Undisputed for the purposes of this motion.

8.     **Defendant's Statement:** After the Plaintiffs purchased 39 Seaview Terrace in
2008, Plaintiffs planted vegetation, including immature pear trees along the property line
between the properties owned by the Plaintiffs and the Kirchicks. (Exhibit 1, at ¶ 21).

**Plaintiffs' Response: <u>Disputed</u>**. The evidence cited does not support the statement that
Plaintiffs planted any vegetation on the property and does not support the statement that
immature pear trees were planted along the property line. Plaintiffs do not dispute for purpose of
this motion that Plaintiffs' Amended Complaint, at ¶21 states: "In December 2008 and with the
intention of being good neighbors, Plaintiffs reached out to the Kirchicks to discuss trees planted
by their builder along the fence line between 39 and 41 Seaview Terrace." Ex. P1 at ¶ 21.

9.     **Defendant's Statement:** Unknown to the Kirchick's, in 2008, Kaiser specifically
requested the trees be planted "(to shield their view to the deck) and/or add another tree." (Email
Correspondence, July 16, 2008, attached hereto as Exhibit 3).

**Plaintiffs' Response: <u>Disputed</u>**. The evidence cited does not support the statement that

Kaiser took action that was unknown to the Kirchicks. (Email Correspondence, July 28, 2017, attached hereto as Exhibit P236 ("As we understood your original intent it was to provide you privacy when using your deck and we as well appreciate having similar privacy when we are using our deck."). Further, the statement is taken out of context. Kaiser and Furnish requested that trees be planted to provide them with privacy, however the trees were not planted where Kaiser and Furnish requested. (See G. Kaiser Deposition Testimony at 287:15-21, attached hereto as Exhibit P7).

10.    **Defendant's Statement:** The Plaintiffs and the Kirchicks have been communicating about the trees since December 2008. (Exhibit 1, at ¶21).

**Plaintiffs' Response: Disputed**. The evidence cited does not support the alleged statement of fact. The Kirchicks admit that they did not communicate anything about the trees to Plaintiffs for six years (2011 and 2017). (See C. Kirchick Deposition Testimony at 76:18-78:9, 95:6-12, attached hereto as Exhibit P5; W. Kirchick Deposition Testimony at 88:3-89:21, attached hereto as Exhibit P3).

11.    **Defendant's Statement:** On December 11, 2008, Mr. Kaiser emailed Mr. Kirchick, "Unfortunately, the builder apparently planted the trees recently and we do not think they are in the locations we would have chosen." (Email Correspondence, December 11, 2008, attached hereto as Exhibit 4).

**Plaintiffs' Response:** Undisputed for the purposes of this motion.

12.    **Defendant's Statement:** By 2010-2011, the Plaintiffs were aware that the Kirchicks wanted two pear trees removed to preserve their view. (Deposition Testimony of Plaintiff, John Furnish, 223, attached hereto as Exhibit 5).

**Plaintiffs' Response: <u>Disputed</u>.** The Kirchicks admit they had no right to a view over Plaintiffs' property. (<u>See</u> W. Kirchick Deposition Testimony at 42:21-43:5, attached hereto as <u>Exhibit P3</u> ("Q: Have you or the trust ever had any type of enforceable legal right to a view over my client's property? A. No.")). It is undisputed for the purposes of this motion that the Kirchicks made Plaintiffs aware in 2010-2011 that they wanted two pear trees removed from Plaintiffs' property.

13.     **Defendant's Statement:** Since 2011, other than moving one pear tree at the end, the rest of the pear trees have remained where they were planted. (Deposition Testimony of Defendant, Carol Kirchick, 76-77, attached hereto as <u>Exhibit 6</u>).

**Plaintiffs' Response:** Undisputed for the purposes of this motion that Plaintiffs moved one pear tree at the Kirchick's request. **<u>Disputed</u>** because the statement is incomplete. In 2018, Kaiser offered to take down an additional tree, however the Kirchicks declined, demanding that Plaintiffs cut down two trees. (<u>See</u> G. Kaiser Deposition Testimony at 177:13-178:11, attached hereto as <u>Exhibit P7</u>; J. Furnish Deposition Testimony at 232:4-13, attached hereto as <u>Exhibit P8</u>; Email Correspondence, April 13, 2018, attached hereto as <u>Exhibit P78</u>).

14.     **Defendant's Statement:** The pear trees continued to grow, and, by July 2017, the pear trees completely blocked any view out of any window, upstairs or downstairs, in the Kirchicks' house. *Id.* at 95.

**Plaintiffs' Response: <u>Disputed</u>.** The pear trees have never blocked the view out of every window, upstairs or downstairs, in the Kirchicks' house. (<u>See</u> W. Kirchick Deposition Testimony at 24:3-18, attached hereto as <u>Exhibit P3</u>; Email Correspondence, April 13, 2018, attached hereto as <u>Exhibit P78</u>; Email Correspondence, June 7, 2018, attached hereto as <u>Exhibit P66</u>; Photograph, attached hereto as <u>Exhibit P43</u>; Photograph, attached hereto as <u>Exhibit P45</u>).

15.     **Defendant's Statement:** There were no communications between the Plaintiffs and the Kirchicks regarding the pear trees from 2011, when the furthest pear tree was removed, until July 2017 when Carol Kirchick sent an email to Plaintiffs. *Id.*

**Plaintiffs' Response:** The evidence cited does not support this statement of fact. Further, **disputed**, because the pear tree was relocated, not removed. (See Email Correspondence, May 6, 2011, attached hereto as Exhibit P70). Otherwise, it is undisputed for the purposes of this motion that from 2011 until Mrs. Kirchick's email on July 28, 2017, neither Mr. nor Mrs. Kirchick raised any issued about the pear trees with Plaintiffs.

16.     **Defendant's Statement:** In July 2017, Carol Kirchick emailed the Plaintiffs and asked if they could all meet to discuss the Kirchicks' concern over the pear trees. *Id.* at 77; (Email Correspondence July 28, 2017, attached hereto as Exhibit 7).

**Plaintiffs' Response:** Undisputed for the purposes of this motion.

17.     **Defendant's Statement:** In August 2017, Mr. Kaiser came over to the Kirchicks' house, took photographs from the Kirchicks' windows, both upstairs and downstairs. (Exhibit 1, at ¶ 25); (Exhibit 6, at 80).

**Plaintiffs' Response: Disputed**. At the request of the Kirchicks, Mr. Kaiser visited 41 Seaview Terrace and took one photograph from one of the upstairs windows. (See W. Kirchick Deposition Testimony at 111:4-17, attached hereto as Exhibit P3 ("He asked to go upstairs to take a picture out of the guest bedroom."); Email Correspondence, August 23, 2017, attached hereto as Exhibit P47 (re: "the photo you took from our upstairs"); Photograph, August 12, 2017, attached hereto as Exhibit P48)).

18.     **Defendant's Statement:** When leaving the Kirchicks' house, Mr. Kaiser told the Kirchicks that he would speak with Mr. Furnish, who was in charge of landscaping, and get back

to them about trying to do something about the pear trees. (Exhibit 6, at 77).

**Plaintiffs' Response: Disputed.** Plaintiffs dispute that Mr. Kaiser said they would try "to do something about the pear trees." (See W. Kirchick Deposition Testimony at 111:4-17, attached hereto as Exhibit P3). Plaintiffs do not dispute for the purposes of this motion that when leaving 41 Seaview Terrace in August 2017, Mr. Kaiser told the Kirchicks that he would discuss their request with Mr. Furnish.

19.     **Defendant's Statement:** Mr. Kirchick followed up with Mr. Kaiser via email on August 19, 2017 to inquire whether Kaiser and Furnish had "reached a decision on the trees." (Email Correspondence, August 19, 2017, attached hereto as Exhibit 8).

**Plaintiffs' Response:** Undisputed for the purposes of this motion.

20.     **Defendant's Statement:** Mr. Kaiser responded on August 22, 2017 that he was "consulting with [the] landscaping company to determine whether the tree can be transplanted successfully somewhere else on our property. I will keep you posted." (Email Correspondence, August 19, 2017, attached hereto as Exhibit 9).

**Plaintiffs' Response: Disputed** that the statement accurately quotes the document relied upon. In further response, undisputed for the purposes of this motion.

21.     **Defendant's Statement:** On August 22, 2017 after receiving Mr. Kaiser's email discussing the removal of "the tree," Carol wrote to Rudnick and Mr. Kirchick to discuss a response stating, "for whatever its worth, the last time they moved one of the trees was August 2011. Granted the roots system was not as developed but they moved it nevertheless. Maybe the time of year is irrelevant right now. Maybe we should say we'd appreciate them taking care of this as soon as practicable rather than letting the trees continue to grow and remind them that it is two trees and not one. All along from day one, we complained about the last three trees. It's like

Chinese water torture the way they drag their feet. I realize they can do whatever they want. And they do." (Email Correspondence, August 22, 2017, attached hereto as <u>Exhibit 10</u>).

**Plaintiffs' Response: <u>Disputed</u>** that the statement accurately quotes the document relied upon. In further response, undisputed for the purposes of this motion.

22.    **Defendant's Statement:** On August 23, 2017 at 9:37AM, Mr. Kirchick responded to Mr. Kaiser thanking him for the heads up about the tree but stating "as you know from the photo you took from our upstairs it is the two trees at the end that are completely obscuring our view from those windows." (<u>Exhibit 9</u>).

**Plaintiffs' Response: <u>Disputed</u>** that the statement accurately quotes the document relied upon. Plaintiffs also dispute that this email reflects being sent at 9:37 AM. The email attached as Rudnick Exhibit 9 is dated August 23, 2017, at 9:38 AM. In further response, undisputed for the purposes of this motion.

23.    **Defendant's Statement:** Mr. Rudnick suggested to Carol Kirchick that he would park a Lighthouse Realty vehicle on the Kirchicks' side of the private right-of-way with the hope that this may result in the Plaintiffs contacting the Kirchicks to discuss how they could resolve the issue with the pear trees. (Deposition Testimony of Defendant, Ronald Rudnick, at 57-58, 60, 63-64, attached hereto as <u>Exhibit 11</u>); (<u>Exhibit 6</u> at 173, 206).

**Plaintiffs' Response: <u>Disputed</u>**. Mr. Rudnick parked the Lighthouse Realty truck in the private way to limit Plaintiffs' access to the private way and to harass Plaintiffs. <u>See, e.g.</u>, Email Correspondence, August 31, 2017, attached hereto as <u>Exhibit P93</u> (email from C. Kirchick to W. Kirchick and Rudnick, in which C. Kirchick writes, concerning Plaintiffs' landscapers, "By the way, they had trouble getting the truck in the driveway . . . [smile" emoji]);" Email Correspondence, September 13, 2017, attached hereto as <u>Exhibit P100</u> (C. Kirchick writes to W.

Kirchick and Rudnick, after Kaiser emails the Kirchicks to alert them that the Lighthouse Realty Truck is parked in the private way despite no work being done on the Kirchick's property, "How about saying – "Does the truck bother you even though it doesn't affect your enjoyment of your property? Now you know what those damn trees are doing to us[.]""); J. Furnish Deposition Testimony at 119:9-120:4, attached hereto as Exhibit P8 (testifying that "Rudnick told us that he was going to continue to park trucks in the way until we were either run out of town or that we cut down the trees."); G. Kaiser Answers and Objections to Interrogatories Propounded by R. Rudnick, Answer No. 9(a), p. 6, attached hereto as Exhibit P125 (discussing Defendants' intent to harass Plaintiffs by parking Lighthouse Realty trucks in the private way); J. Furnish Answers and Objections to Interrogatories Propounded by R. Rudnick, Answer No. 7(b), p. 6, attached hereto as Exhibit P240 (same). It is also **disputed** that the Kirchicks have a "side" of the private way. No court has ever determined that the Kirchicks own any portion of the private way. (See R. Rudnick Deposition Testimony at 267:5-10, attached hereto as Exhibit P6; Final Judgement, January 21, 202[2], attached hereto as Exhibit P237 (Final Judgment dismissing Kirchicks' claims against Plaintiffs concerning rights in the private way with prejudice)).

24. **Defendant's Statement:** Mr. Rudnick instructed one of the Lighthouse Realty employees to park the Lighthouse Realty vehicle for him. (Exhibit 11 at 208).

**Plaintiffs' Response: Disputed**. The evidence provided by Rudnick does not support this statement of fact. There is no page 208 in Exhibit 11. It is undisputed for the purposes of this motion that Mr. Rudnick  testified in his deposition that he instructed someone that worked for him to park the truck.

25. **Defendant's Statement:** The truck remained parked on the Kirchick's property in the right of way for approximately three weeks from August 21, 2017 through September 2017.

(Hearing Transcript, Barnstable District Court, July 17, 2018 at 7-9, attached hereto as <u>Exhibit 12</u>).

 **Plaintiffs' Response: <u>Disputed</u>**. The evidence cited does not support the statement that a truck was parked on the Kirchick's property. No court has ever determined that the Kirchicks own any portion of the private way. (<u>See</u> R. Rudnick Deposition Testimony at 267:5-10, attached hereto as <u>Exhibit P6</u>; Final Judgement, January 21, 202[2], attached hereto as <u>Exhibit P237</u> (Final Judgment dismissing Kirchicks' claims against Plaintiffs concerning rights in the private way with prejudice)).

 26. **Defendant's Statement:** On September 11, 2017, Mr. Rudnick emailed Mrs. Kirchick to tell Plaintiffs to talk to him if they asked about the truck. (<u>Exhibit 1</u> at ¶36).

 **Plaintiffs' Response:** Undisputed for the purposes of this motion.

 27. **Defendant's Statement:** In regards to parking of the vehicle, Plaintiffs allege, "Defendants' purpose was to send a message to Plaintiffs that life would become unpleasant for them if they did not capitulate to Defendants' demands." *Id.* at 30.

 **Plaintiffs' Response:** Undisputed for the purposes of this motion.

 28. **Defendant's Statement:** Despite Kirchick's repeated requests for a meeting regarding the trees, Plaintiffs left Chatham in October 2017 and emailed the Kirchicks "we're back in Houston now and don't plan to return to Chatham until Spring. We can talk then." (Email Correspondence, October 9, 2017, attached hereto as <u>Exhibit 13</u>).

 **Plaintiffs' Response: <u>Disputed</u>**. The evidence cited does not support the statement that the Kirchicks' repeatedly made requests to Plaintiffs to meet regarding the trees that went unanswered. On the contrary, Kaiser in fact meet with the Kirchicks on August 12, 2017, and sent an email to the Kirchicks on September 10, 2017, offering to meet a second time to further

discuss the matter, but the Kirchicks would not be in Chatham. Plaintiffs thereafter left Chatham

in September 2017, not October 2017, because Mr. Furnish's aunt was in hospice care and took a

turn for the worse. (See Email Correspondence, September 21, 2017, attached hereto as Exhibit

P51). In addition, a hurricane was predicted to adversely affect Chatham before the Kirchicks

returned. (See W. Kirchick Deposition Testimony at 94:20-96:7, attached hereto as Exhibit P3;

C. Kirchick Deposition Testimony at 76:21-77:15, attached hereto as Exhibit P5; Email

Correspondence, September 10, 2017, attached hereto as Exhibit P49; Hurricane Warning,

September 18, 2017, attached hereto as Exhibit P50).

      29.    **Defendant's Statement:** In the winter of 2017-2018, the Kirchicks had a survey

completed by Terry Eldredge to confirm that the Plaintiffs fencing, mailbox, and certain

vegetation were within the Kirchicks property line. (Sketch Plan by Eldredge Surveying &

Engineering, LLC, December 13, 2017, attached hereto as Exhibit 14).

      **Plaintiffs' Response: <u>Disputed</u>**. The evidence cited does not support this statement of

fact. For example, Exhibit 14 has a revision effective June 21, 2018. Further **<u>disputed</u>** to the

extent Rudnick is asserting that the private way is the Kirchick's property. No court has ever

determined that the Kirchicks own any portion of the private way. (See R. Rudnick Deposition

Testimony at 267:5-10, attached hereto as Exhibit P6; Final Judgement, January 21, 202[2],

attached hereto as Exhibit P237 (Final Judgment dismissing Kirchicks' claims against Plaintiffs

concerning rights in the private way with prejudice)). Plaintiffs **<u>dispute</u>** that the survey was done

to "confirm" the items alleged. Defendants were looking for issues "to figure out whether or not

we could have any leverage of negotiations." (See R. Rudnick Deposition Testimony at 80:9-18,

attached hereto as Exhibit P6).

      30.    **Defendant's Statement:** In response to the survey, on March 23, 2018, the

Kirchick's counsel, Attorney William Riley sent a letter to the Plaintiffs regarding the Plaintiffs' pear trees, mailbox, view easement and the Parties rights concerning the private way. (Attorney Correspondence, March 23, 2018, attached hereto as Exhibit 15).

**Plaintiffs' Response: <u>Disputed</u>**. The evidence cited does not support the statement of fact that the letter was sent in response to the survey. It is undisputed for purposes of this motion that Plaintiffs received a letter dated March 23, 2018, from Attorney William Riley.

31.    **Defendant's Statement:** The letter requested a response by April 30, 2018. Exhibit 13. *Id.*

**Plaintiffs' Response:** Undisputed for the purposes of this motion.

32.    **Defendant's Statement:** The same week of Attorney Riley's March 23, 2018 letter regarding the Boundary Dispute, Rudnick, submitted an offer to purchase 31 Seaview Terrace, Chatham, Massachusetts for the amount of $875,000.00. (Ronald Rudnick Contract to Purchase Real Estate, 31 Seaview Terrace, attached hereto as Exhibit 16).

**Plaintiffs' Response: <u>Disputed</u>**. The evidence cited does not support the statement that Exhibit 16 was submitted the same week of Attorney Riley's March 23, 2018 letter. This statement is also **<u>disputed</u>** because it mischaracterizes the threats, intimidation, and coercion and suggesting that it was a legitimate "Boundary Dispute." Plaintiffs do not dispute for the purposes of this motion that Mr. Rudnick prepared an undated, partially complete document purporting to be an offer to purchase 31 Seaview Terrace containing multiple contingencies and provisions that "time is of the essence" and a deadline for acceptance of 5:00 p.m. on March 29, 2018. See Rudnick Exhibit 16. Plaintiffs dispute that Rudnick's "offer" to purchase 31 Seaview Terrace was timely accepted by the personal representatives of the Estate of Elaine White and that any acceptance thereafter constituted a legally binding contract to purchase and sell.

12

33.    **Defendant's Statement:** 31 Seaview Terrace is in the same subdivision and across the street from the Kirchicks house and shares a private way with both 41 Seaview Terrace and 39 Seaview Terrace. (Exhibit 14).

**Plaintiffs' Response: <u>Disputed</u>**. The evidence cited does not establish that 31 and 41 Seaview Terrace share the private way, nor does it establish that 31 Seaview Terrace is in the same subdivision as 41 Seaview Terrace.

34.    **Defendant's Statement:** On March 30, 2018, the executor of Elaine White's estate, accepted Ronald Rudnick's full purchase offer of $875,000.00. (Exhibit 16).

**Plaintiffs' Response: <u>Disputed</u>**. Plaintiffs do not dispute for the purposes of this motion that Mr. Rudnick prepared an undated, partially complete document purporting to be an offer to purchase 31 Seaview Terrace containing multiple contingencies and provisions that "time is of the essence" and a deadline for acceptance of 5:00 p.m. on March 29, 2018. See Rudnick Exhibit 16. Plaintiffs **<u>dispute</u>** that Rudnick's "offer" to purchase 31 Seaview Terrace was timely accepted by the personal representatives of the Estate of Elaine White and that any acceptance thereafter constituted a legally binding contract to purchase and sell.

35.    **Defendant's Statement:** The following business day, April 2, 2018, Plaintiffs, having learned that Rudnick was purchasing 31 Seaview Terrace, submitted a competing offer that was $500.00 greater than Rudnick's accepted offer. (Grant Kaiser Contract to Purchase Real Estate, 31 Seaview Terrace, attached hereto as Exhibit 17).

**Plaintiffs' Response: <u>Disputed</u>**. The evidence cited does not establish that Plaintiffs submitted an offer because of learning that Rudnick might have expressed an interest in buying the property. Plaintiffs learned that the property was for sale when they received a letter from the listing broker (Doane Correspondence, March 27, 2018, attached hereto as Exhibit P239), or that

Plaintiffs submitted a higher and better offer than Rudnick's after having learned that Rudnick had purportedly made an offer to purchase 31 Seaview Terrace. Plaintiffs did not know that Rudnick had made an offer until after they made their own offer. (See J. Furnish Deposition Testimony at 293:7-295:10, 296:13-297:21, attached hereto as Exhibit P8; G. Kaiser Deposition Testimony at 35:20-36:19, attached hereto as Exhibit P7). It is further **disputed** that this statement of fact is complete, as Plaintiffs' offer to the estate was superior to Rudnick's, not only because it was for more money, it also included other very advantageous terms: it was an all-cash offer, as-is condition, quick 10-day close, and had no contingencies. See Rudnick Exhibit 17.

36.    **Defendant's Statement:** Rudnick retained Attorney William Henchy, to compel the sale of 31 Seaview Terrace to him in lieu of his accepted offer. (See Barnstable Superior Court Civil Action No.: 1872CV00191).

**Plaintiffs' Response: Disputed**. Rudnick initially hired Attorney William F. Riley and James Norcross, who filed the Verified Complaint for Specific Performance on April 11, 2018. (See Verified Complaint for Specific Performance, April 11, 2018, attached hereto as Exhibit P53). It is undisputed for purposes of this motion that Mr. Henchy at some point thereafter made an appearance in the case.

37.    **Defendant's Statement:** The Plaintiffs, who were not parties to that litigation, retained Attorney William Litchfield to appear before the Honorable Judge Nickerson of the Barnstable Superior Court on April 13, 2018 in regards to Rudnick's request for a preliminary injunction to compel the sale of 31 Seaview Terrace to him. (Transcript of Hearing, Barnstable Superior Court, April 13, 2018, attached here as Exhibit 18); (See Barnstable Superior Court Civil Action No.: 1872CV00191).

14

**Plaintiffs' Response: <u>Disputed</u>**. The evidence cited does not establish this statement of fact and it is incorrect. Plaintiffs did not retain Attorney William Litchfield to appear at a hearing regarding Mr. Rudnick's request for preliminary injunction in Barnstable Superior Court. <u>See</u> Hearing Transcript at 2, Barnstable Superior Court, April 13, 2018, attached as Rudnick Exhibit 18. Plaintiffs also **<u>dispute</u>** that the goal of seeking a preliminary injunction was to compel the sale to Rudnick; it sought to prevent the sale to others unless and until further order of the court. (<u>See</u> Verified Complaint for Specific Performance, April 11, 2018, attached hereto as <u>Exhibit P53</u>).

38.     **Defendant's Statement:** On April 6, 2018, Attorney William Riley made a settlement offer via email to the Plaintiffs on behalf of Rudnick and the Kirchicks regarding both the White House and the Boundary Dispute. (Email Correspondence, April 6, 2018 attached hereto as <u>Exhibit 19</u>).

**Plaintiffs' Response: <u>Disputed</u>**. This statement is **<u>disputed</u>** because it mischaracterizes the threats, intimidation, and coercion and suggesting that it was a legitimate "settlement offer" or "Boundary Dispute," which it was not.

39.     **Defendant's Statement:** Attorney Riley proposed that Mr. Rudnick assign his Contract to Purchase 31 Seaview Terrace to the Plaintiffs in return for a payment of $100,000 and "for the removal of the 2 trees…" The settlement offer also proposed the Kirchicks would "waive any rights they have in the fee in the way of Library Lane." *Id.*

**Plaintiffs' Response: <u>Disputed</u>.** Plaintiffs dispute that Mr. Rudnick had a legally binding contract to purchase 31 Seaview Terrace. Plaintiffs do not dispute for the purposes of this motion that Mr. Rudnick prepared an undated, partially complete document purporting to be an offer to purchase 31 Seaview Terrace containing multiple contingencies and provisions that "time is of

15

the essence" and a deadline for acceptance of 5:00 p.m. March 29, 2018. <u>See</u> Rudnick <u>Exhibit 16</u>. Plaintiffs dispute that Rudnick's "offer" to purchase 31 Seaview Terrace was timely accepted by the personal representatives of the Estate of Elaine White and that any acceptance thereafter constituted a legally binding contract to purchase and sell. The statement is also **<u>disputed</u>** because it mischaracterizes the threats, intimidation, and coercion and suggesting that it was a legitimate "settlement offer," which it was not. It is undisputed for the purposes of this motion that the email referenced makes these statements.

40.     **Defendant's Statement:** According to the Plaintiffs' Amended Complaint and deposition testimony, Rudnick held four phone calls with the Plaintiffs on April 12th and 13th 2018 to discuss the White House and the Boundary Dispute. (<u>Exhibit 1</u> at ¶¶ 48, 51, 52, and 54).

**Plaintiffs' Response: <u>Disputed</u>.** As stated in Plaintiffs' Amended Complaint and deposition testimony, Rudnick held five phone calls with the Plaintiffs on April 12 and 13, 2018. (<u>See</u> J. Furnish Deposition Testimony at 311:15-312:9, attached hereto as <u>Exhibit P8</u>; G. Kaiser Deposition Testimony at 93:17-94:10, attached hereto as <u>Exhibit P7</u>). Further **<u>disputed</u>** because the statement mischaracterizes the threats, intimidation and coercion and suggesting it was a legitimate "Boundary Dispute," which it was not.

41.     **Defendant's Statement:** The Plaintiffs allege that they were threatened and intimidated by Rudnick on each of the four phone calls. *Id.*

**Plaintiffs' Response:** Undisputed for the purposes of this motion that Rudnick threatened and intimidated Plaintiffs during his five phone calls with the Plaintiffs on April 12 and 13, 2018. (<u>See</u> J. Furnish Deposition Testimony at 311:15-312:9, attached hereto as <u>Exhibit P8</u>; G. Kaiser Deposition Testimony at 93:17-94:10, attached hereto as <u>Exhibit P7</u>).

42.     **Defendant's Statement:** Following the phone calls, Grant Kaiser continued to

communicate with Mr. Rudnick via text messages and emails memorializing their discussions and exchange of offers. (*See generally*, <u>Exhibits 20, 21, 22, 23, 24, 25</u>).

     **Plaintiffs' Response: <u>Disputed</u>.** This statement of fact mischaracterizes the communications that it cites. As alleged in Plaintiffs' Amended Complaint, during this time period, "Mr. Rudnick continued to harass Mr. Kaiser by text and email that day asking where Mr. Kaiser would like Mr. Rudnick to store his property[,]" and "[a]lthough Mr. Kaiser responded that he preferred to involve his attorney in the hope of reaching an amicable resolution, Mr. Rudnick ignored the offer and continued to harass him." Ex. P1 (Amended Complaint ¶56); <u>see</u> <u>also</u> Email Correspondence, April 13, 2018, attached hereto as <u>Exhibit P128</u>). It is undisputed for purposes of this motion that Mr. Kaiser, despite the threats, dealt with the situation in an attempt to deescalate matters.

     43.    **Defendant's Statement:** On April 12, 2018, Mr. Kaiser texted Mr. Rudnick "Sorry I couldn't take your call. Do you have an email address where I can send you something for your consideration. After you review information, we can discuss if you like[.]" (Text Message, April 12, 2018, attached hereto as <u>Exhibit 20</u>).

     **Plaintiffs' Response:** Undisputed for the purposes of this motion.

     44.    **Defendant's Statement:** On April 13, 2018, at 9:32AM Grant Kaiser emailed Mr. Rudnick thanking him for speaking last night "about getting this resolved" and included a counter-proposal to "resolve all the issues between us." (Email Correspondence, April 13, 2018, attached hereto as <u>Exhibit 21</u>).

     **Plaintiffs' Response: <u>Disputed</u>** that this email was sent at 9:32 am. The email was sent at 10:32 am EDT. (<u>See</u> Email Correspondence, April 13, 2018, attached hereto as <u>Exhibit P56</u>). Further disputed because the statement mischaracterizes certain of the terms identified as part of

Kaiser's communication, when they were proposed by Defendants. The quotation attributed to Rudnick appeared in the portion of the email memorializing the terms requested by Rudnick. Similarly, the proposed term that the Kirchicks would relinquish rights in the private way was a term offered by Defendants, and not Kaiser. <u>Id.</u>; Attorney Correspondence, March 23, 2018, attached hereto as <u>Exhibit P119</u>.

45.    **Defendant's Statement:** In the counter-proposal, Mr. Kaiser offered $15,000 to Rudnick for the White House and offered to remove one pear tree if the Kirchicks relinquished their rights in the private way. The only direct quote from Rudnick that Kaiser memorialized in these written communications is Rudnick's statement that, "he (Rudnick) will be on our (Kaiser & Furnish's) side forever." *Id.*

   **Plaintiffs' Response: <u>Disputed</u>**. The statement is incomplete, because Plaintiffs attempt to resolve the threats, intimidation, and coercion  included more terms that those listed here. <u>See</u> Rudnick's Exhibit 21. Further **<u>disputed</u>** because the statement mischaracterizes certain of the terms identified when they were in fact proposed by Defendants. For example, the quotation attributed to Rudnick appeared in the portion of the email regarding certain terms requested by Rudnick. Similarly, the proposed term that the Kirchicks would relinquish rights in the private way was a term offered by Defendants, and not Kaiser. <u>Id.</u>; <u>see also</u> Attorney Correspondence, March 23, 2018, attached hereto as <u>Exhibit P119</u>)

46.    **Defendant's Statement:** On April 13, 2018 at 11:43AM Mr. Kaiser sent a second email attaching photographs of the disputed trees from the Kirchick's house. (Email Correspondence, April 13, 2018, attached hereto as <u>Exhibit 22</u>).

   **Plaintiffs' Response: <u>Disputed</u>**. "Disputed trees" is not defined. The photograph relied upon shows multiple trees and does not establish which of the trees Mr. Rudnick refers to as the

"disputed trees." Further, it is **_disputed_** to the extent the statement implies that there was a legal dispute about the location of any trees located on Plaintiffs' property. Defendants admit that they never had any legal right to demand removal of the trees. (See R. Rudnick Deposition Testimony at 243:1-244:20, attached hereto as Exhibit P6; C. Kirchick Deposition Testimony at 41:10-20, 54:6-57:6, 66:16-20, 181:1-3 ("It was not an enforceable promise; we know that. It was not a legal obligation; we know that."), 230:4-13, attached hereto as Exhibit P5). It is further **_disputed_** that this email was sent at 11:43 a.m. The email was sent at 12:43 PM EDT. (See Email Correspondence, April 13, 2018, attached hereto as Exhibit P59).

47.    **Defendant's Statement:** On April 13, 2018, at 11:54AM Mr. Kaiser texted Mr. Rudnick "Can our person go into bill and carols deck to take photo from there" (Exhibit 20).

   **Plaintiffs' Response:** Undisputed for the purposes of this motion.

48.    **Defendant's Statement:** Mr. Rudnick responded "Yes" to which Mr. Kaiser replied "Thanks." At 1:08PM Mr. Rudnick texted Mr. Kaiser two photos of the pear trees and wrote "They look different with leaves[.]" *Id.*

   **Plaintiffs' Response:** Undisputed for the purposes of this motion that at 11:54 AM, Mr. Rudnick texted Mr. Kaiser "Yes" and Mr. Kaiser replied "Thanks." And that at 1:08 PM, Mr. Rudnick texted Mr. Kaiser two photographs of pear trees and wrote "They look different with leaves."

49.    **Defendant's Statement:** On April 13, 2018 at 2:27PM Mr. Rudnick texted Mr. Kaiser, "I was just informed we do not have a deal by your atty with great respect would u just text me where u want your mail box and fence and I will have professional landscape co to dig up your bushes and burlap them in a ball these bushes I'm speaking are near the mail box again with respect. Ron. Ty" *Id.*

**Plaintiffs' Response:** Undisputed for the purposes of this motion.

50.     **Defendant's Statement:** On April 13, 2018 at 2:27PM Mr. Kaiser responded to Mr. Rudnick via text message, "You're dealing with me not him" *Id.*

**Plaintiffs' Response:** Undisputed for the purposes of this motion.

51.     **Defendant's Statement:** On April 13, 2018 at 3:40PM counsel for Mr. Rudnick and the Plaintiffs attended a Motion for Preliminary Injunction regarding the White House litigation. The hearing finished at 4:03PM. (Exhibit 18).

**Plaintiffs' Response:** It is undisputed for purposes of this motion that counsel for Mr. Rudnick attended the hearing. Plaintiffs did not.

52.     **Defendant's Statement:** On April 13, 2018 at 5:01PM Mr. Rudnick text Mr. Kaiser "I'm done no deal just please text me where we will store your fence and plants. Ty" (Exhibit 20).

**Plaintiffs' Response: __Disputed__** that the statement accurately quotes the authority cited.

53.     **Defendant's Statement:** At 5:03PM, Mr. Kaiser emailed Mr. Rudnick, regarding the settlement discussions, requesting Mr. Rudnick speak with Attorney Riley, concluding "I think we're very close to a deal." (Email Correspondence, April 13, 2018, attached hereto as Exhibit 23).

**Plaintiffs' Response: __Disputed__** that this email was sent at 5:03 pm. The email was sent at 6:02 pm EDT. (See Email Correspondence, April 13, 2018, attached hereto as Exhibit P55). It is also **__disputed__** because it characterizes what was going on as "settlement discussions." The statement is **__disputed__** because it mischaracterizes the threats, intimidation, and coercion and suggesting that it was legitimate "settlement discussions," which it was not. There were discussions but they were under duress and included Defendants threatening Plaintiffs.

20

54.    **Defendant's Statement:** At 5:13PM Mr. Rudnick responded via email requesting Mr. Kaiser respond to his text requesting where to store the fence and plants. (Email Correspondence, April 13, 2018, attached hereto as <u>Exhibit 24</u>).

**Plaintiffs' Response: <u>Disputed</u>.** The statement mischaracterizes the email upon which it relies. Rudnick did not simply request that Kaiser respond to his text and request that Kaiser advise him where to store the fence and plants. On the contrary, Rudnick's email, which states the following, amounts to a threat:

> Every body knows me that I wouldn't have atty negotiate for me I'm done please just answer my text where to put your fence and plants I do not have wait to ask I told you that u had your opening to make this happen I'm going forward on all phases at this point[.]

Rudnick's <u>Exhibit 21</u>. Further **<u>disputed</u>** that this email was sent at 5:13pm. The email was sent at 6:13 pm EDT. (<u>See</u> Email Correspondence, April 13, 2018, attached hereto as <u>Exhibit P60</u>).

55.    **Defendant's Statement:** At 6:05PM Mr. Kaiser text Mr. Rudnick "Sent you an email." (<u>Exhibit 20</u>).

**Plaintiffs' Response:** Undisputed for the purposes of this motion.

56.    **Defendant's Statement:** At 7:53PM Mr. Kaiser text Mr. Rudnick, "Sorry at dinner out. Talk tomorrow morning?" *Id.*

**Plaintiffs' Response:** Undisputed for the purposes of this motion.

57.    **Defendant's Statement:** On April 14, 2018, Mr. Kaiser again emailed Mr. Rudnick "Sorry I couldn't take your call last night. Were out to dinner. Attorney asked me not to contact you until after he speaks to Riley." (Email Correspondence, April 14, 2018, attached hereto as <u>Exhibit 25</u>).

**Plaintiffs' Response: <u>Disputed</u>.** The paragraph does not accurately quote the email relied upon, does not reflect significant portions of the email, and as a result, mischaracterizes

Kaiser's email to Rudnick.

58.      **Defendant's Statement:** Mr. Rudnick responded via text message at 2:18PM "I'm not going to give up my rights on 31 Seaview terr also I will not take down your fence or mail box till you are satisfied. I think 30 days should give you plenty of time to get your surveyor. I'm giving way to [sic] much up over 2 trees. Ty Ron" (Exhibit 20).

**Plaintiffs' Response:** Undisputed for the purposes of this motion.

59.      **Defendant's Statement:** On April 16, 2018 at 5:20PM Mr. Kaiser responded to Mr. Rudnick "Finally talked with counsel this morning. Got your text. I understand your position. Thanks for giving us 30 days to get the fence fixed." *Id.*

**Plaintiffs' Response:** Undisputed for the purposes of this motion.

60.      **Defendant's Statement:** Mr. Rudnick did not have any further communication with the Plaintiffs either directly or through intermediaries, other than his attorneys, after April 16, 2018. (Affidavit of Grant Kaiser, June 7, 2018, attached hereto as Exhibit 27).

**Plaintiffs' Response: Disputed**. The evidence cited does not support this statement of fact. Further **disputed** because Rudnick has communicated with Plaintiffs after April 16, 2018. (See J. Furnish Deposition Testimony at 104:13-105:1, attached hereto as Exhibit P8 (recounting communications Rudnick had with him later than April 16, 2018); Kaiser Answers to Defendant Ronald Rudnick's Interrogatories, attached as Exhibit 5, No. 14 (identifying interactions with Rudnick since July 17, 2018); R. Rudnick Deposition Testimony at 67:24-69:6, attached hereto as Exhibit P6 (Rudnick's testimony regarding his July 18, 2018 communication with Kaiser following a court hearing, in which Rudnick said to Kaiser "now the fun begins.")).

61.      **Defendant's Statement:** On May 24, 2018 Attorney Riley emailed Attorney Roberts stating, "I learned this afternoon that my client intended to park and remove some

vegetation." *Id.*

      **Plaintiffs' Response: <u>Disputed</u>**. This excerpt mischaracterizes the evidence relied upon because it takes the evidence out of context. At the time Attorney Riley emailed Attorney Roberts, the parties had agreed not to take any action towards one another, without prior notice through counsel. Defendants severely damaged portions of the privet leading to Plaintiffs' home. Attorney Riley did not provide advance notice to Plaintiffs, and instead, provided notice hours *after* Defendants damaged the privet. <u>See</u> Rudnick Exhibit 27, p. 3.

      62.    **Defendant's Statement:** On May 24, 2018, the Kirchick's landscaped a "mature privet lining" located on the Kirchick property. (Photographs of Landscaping, May 24, 2018, attached hereto as <u>Exhibit 26</u> and <u>Exhibit 28</u>).

      **Plaintiffs' Response: <u>Disputed</u>**. The evidence cited does not support this statement of fact. **<u>Disputed</u>** that the Kirchicks "landscaped" the privet, where all Defendants joined together with Lighthouse Realty employees in the private way leading to Plaintiffs' house to destroy significant portions of the privet. (<u>See</u> May 24, 2018 Photographs, attached hereto as <u>Exhibit P130</u>; Affidavit, June 7, 2018, attached as <u>Exhibit P121</u>; J. Furnish Deposition Testimony at 362:3-23, attached as <u>Exhibit P8</u>). Further, **<u>disputed</u>** that the evidence cited supports the statement that the entire privet is located on the Kirchicks' property. Portions of the privet are located within the private way. (<u>See</u> Sketch Plan, December 13, 2017, attached hereto as <u>Exhibit P61</u>). No court has ever determined that the Kirchicks own any portion of the private way. (<u>See</u> R. Rudnick Deposition Testimony at 267:5-10, attached hereto as <u>Exhibit P6</u>; Final Judgement, January 21, 202[2], attached hereto as <u>Exhibit P237</u> (Final Judgment dismissing Kirchicks' claims against Plaintiffs concerning rights in the private way with prejudice)).

      63.    **Defendant's Statement:** Communication between counsel for Plaintiffs and

Rudnick continued on June 1, 2018 when Attorney Riley requested a telephone conference with Attorney Brooks. Attorney Brooks was out of the country and stated he would call "when I get back to the states Monday." (Attorney Email Correspondence, June 1, 2018, attached hereto as Exhibit 29).

**Plaintiffs' Response: <u>Disputed</u>**. Attorney Brooks requested a call with Attorney Riley, and not the other way around. <u>See</u> Rudnick <u>Exhibit 29</u>.

64.    **Defendant's Statement:** On June 1, 2018, Attorney Riley also emailed Attorney Roberts regarding the ongoing Boundary Dispute writing "I am hereby providing notice that my clients intend to remove the vegetation on June 8, 2018…" (Attorney Email Correspondence, June 1, 2018, attached hereto as Exhibit 30).

**Plaintiffs' Response: <u>Disputed</u>** because the quoted language is incomplete and therefore mischaracterizes the evidence. Mr. Riley's email acknowledges that the vegetation the Kirchicks intended to remove was Plaintiffs' property. Further **<u>disputed</u>** because the statement mischaracterizes threats, intimidation, and coercion, suggesting that it was a legitimate "Boundary Dispute," which it was not.

65.    **Defendant's Statement:** On June 6, 2018 Attorney Riley emailed Attorney Brooks requesting a surveyor confirm if a portion of the Plaintiff's [sic] irrigation system was on the Kirchick's [sic] property. (Attorney Correspondence, June 6, 2018, attached hereto as Exhibit 31).

**Plaintiffs' Response:** Undisputed for the purposes of this motion.

66.    **Defendant's Statement:** On June 7, 2018 at 11:53AM Attorney Riley emailed Attorney Brooks stating "I am able to give assurances that nothing will be done by my clients or their agents this Friday." Attorney Riley also wrote that he had an offer to transmit regarding the

White House and the Boundary Dispute. (Attorney Correspondence, June 6, 2018, attached hereto as <u>Exhibit 32</u>).

 **Plaintiffs' Response: <u>Disputed</u>**. This statement is **<u>disputed</u>** because it mischaracterizes the threats, intimidation, and coercion and suggesting that it was a legitimate "offer" or "Boundary Dispute," which it was not. In the email that Rudnick cites, Attorney Riley references "the issues with the Kirchicks," and not a "Boundary Dispute."

 67. **Defendant's Statement:** Attorney Riley texted Attorney Brooks on June 7, 2018 at 4:53PM stating, "Peter we are good send it when you can" in reference to ongoing settlement discussions regarding the White House and Boundary Dispute. (Attorney Correspondence, Text Messages, June 7, 2018, attached hereto as <u>Exhibit 33</u>).

 **Plaintiffs' Response: <u>Disputed</u>**. The evidence cited does not support the statement that the text message was sent in reference to ongoing "settlement discussions." On the contrary, the text message reflects that Plaintiffs' counsel viewed Defendants' ongoing actions as threatening and coercive. This statement is further **<u>disputed</u>** because it mischaracterizes the threats, intimidation, and coercion and suggesting that it was a legitimate "settlement discussion" or "Boundary Dispute," which it was not.

 68. **Defendant's Statement:** Attorney Brooks responded via text message that the Lighthouse Realty Truck was "an act of bad faith" and that the Plaintiffs "would not respond under those circumstances." *Id.*

 **Plaintiffs' Response:** Undisputed for the purposes of this motion.

 69. **Defendant's Statement:** Attorney Brooks further responded via text message, "I hope you are communicating with Bill and Carol and not just Ron on this. I think Bill would be quite upset to see the complaint I have prepared to file. I know as a member of the bar I would

not want to be facing a harassment prevention order." *Id.*

**Plaintiffs' Response:** Undisputed for the purposes of this motion. In further response, Attorney Brooks' text was sent because of Defendants' imminent threat to harm Plaintiffs' property. See Rudnick's Exhibit 33.

70.    **Defendant's Statement:** Attorney Riley immediately responded to Attorney Brooks via three simultaneous text messages "The truck will be moved shortly" "call me immediately the offer is withdrawn" "he says he will be there in the morning removing vegetation from the right of way." *Id.*

**Plaintiffs' Response: <u>Disputed</u>** that the evidence cited establishes that Attorney Riley immediately responded with the three text messages cited. Undisputed for purposes of this motion that Attorney Riley sent the text messages cited at some time. It is undisputed for purposes of this motion that Attorney Riley told Mr. Brooks that "the offer is withdrawn" and "he says he will be there in the morning removing vegetation from the right of way."

71.    **Defendant's Statement:** Plaintiffs allege that a Lighthouse Realty truck was parked on the Kirchick's property from May 24, 2018 through June 8, 2018. (Exhibit 1 at ¶58)

**Plaintiffs' Response: <u>Disputed</u>**. The evidence cited does not support this statement of fact. The Amended Complaint alleges that "Defendants had these trucks parked there every day during non-business hours and throughout weekends and holidays through June 8, 2018." Further, the paragraph does not limit the statement to Lighthouse Realty trucks; the Kirchicks also parked in the private way during this time. See Photographs, June 8, 2018, attached hereto as Exhibit P200 (showing the Kirchicks' vehicle parked in the private way). It is also disputed that the Lighthouse Realty trucks were parked on the Kirchick's property. No court has ever determined that the Kirchicks own any portion of the private way. (See R. Rudnick Deposition

Testimony at 267:5-10, attached hereto as Exhibit P6; Final Judgement, January 21, 202[2], attached hereto as Exhibit P237 (Final Judgment dismissing Kirchicks' claims against Plaintiffs concerning rights in the private way with prejudice).

72.     **Defendant's Statement:** Plaintiffs allege the Lighthouse Realty vehicle "sent a threatening message." (Exhibit 2, at 81:16-19); (Exhibit 1, generally).

**Plaintiffs' Response: <u>Disputed</u>**. The evidence does not support the alleged fact. There is no page 81 in Exhibit 2. Further, the authority cited is incomplete and the statement therefore mischaracterizes the testimony cited. When asked whether "that vehicle, as parked there, as shown in Exhibit 1, is sending you and your husband a threatening message[,]" Kaiser responded "Yes. That's what Mr. Rudnick told us." (See G. Kaiser Deposition Testimony at 81:16-19, attached hereto as Exhibit P7).[3]

73.     **Defendant's Statement:** At all times, the truck was parked on property owned by the Kirchicks. (Exhibit 2, at 67-76). (Photographs of Truck, attached hereto as Exhibit 34).

**Plaintiffs' Response: <u>Disputed</u>**. The authority cited (photographs) do not establish the statement that the Kirchicks own the property on which the trucks were parked. No court has ever determined that the Kirchicks own any portion of the private way. (See R. Rudnick Deposition Testimony at 267:5-10, attached hereto as Exhibit P6; Final Judgement, January 21, 202[2], attached hereto as Exhibit P237 (Final Judgment dismissing Kirchicks' claims against Plaintiffs concerning rights in the private way with prejudice)). Further, at times, the trucks were parked at the northern side of the private way, which Kirchicks' do not claim to own. See, e.g., Photograph, attached hereto as Exhibit P62; Photograph, attached hereto as Exhibit P198;

---

[3] Plaintiffs cite to their own exhibit here rather than Rudnick's because Rudnick did not include the page cited in his exhibits.

Photograph, July 1, 2018, attached hereto as <u>Exhibit P205</u>; Attorney Correspondence, March 23, 2018, attached hereto as <u>Exhibit P119</u> (setting forth Defendants' claim that the Kirchicks own the fee to the middle of the private way).

74.   **Defendant's Statement:** At all times, the truck never impeded the Plaintiffs from accessing their home via the private way. (<u>Exhibit 2</u> at 79:3-16; 80:5-17); (<u>Exhibit 5</u> at 28-34).

**Plaintiffs' Response: <u>Disputed</u>**. The evidence cited does not support this statement of fact. On the contrary, the evidence cited establishes that at times Plaintiffs could not access their property via the private way and instead had to drive over their neighbor's lawn in order to access their home due to Defendants' vehicles being parked in their driveway. Rudnick's <u>Exhibit 2</u> at 80:5-17. The evidence cited further establishes that vehicles visiting Plaintiffs' property were prevented from accessing the property at times. Rudnick's <u>Exhibit 5</u> at 30:12-32:7. <u>See also</u> Photograph, attached hereto as <u>Exhibit P62</u>; Photograph, attached hereto as <u>Exhibit P198</u>; Photograph, July 1, 2018, attached hereto as <u>Exhibit P205</u>.

75.   **Defendant's Statement:** On June 6, 2018, Plaintiffs met with Chatham Police Sergeant William Glover and Chatham Police Chief, Mark Pawlina in-person at Chatham Police Headquarters. (<u>Exhibit 1</u> at ¶60); (Police Report from Chatham Police Department, June 6, 2018, attached hereto as <u>Exhibit 35</u>).

**Plaintiffs' Response:** Undisputed for the purposes of this motion.

76.   **Defendant's Statement:** Sergeant Glover advised the Plaintiffs that there were three options regarding the "ongoing property dispute." Specifically, the Police Report narrative as drafted by Sergeant Glover states:

> Mr. Kaiser and Mr. Furnish were advised of the option to have their attorneys file a civil injunction with the court to prevent removal of the planting till civil matters could be processed as well as MGL 265 sec 43A of their right to go to District court and seek a Criminal Harassment order against Mr. Rudnick.

> Another option would be to give me a chance to could contact Mr. Rudnick and
> discuss slowing things down and letting the attorneys do their job before
> damaging property which could have civil ramification as well as his threats being
> interpreted as criminal harassment.

*Id.*

**Plaintiffs' Response: <u>Disputed</u>.** During the meeting, the officers advised Plaintiffs that they were very familiar with Rudnick and the things that had been done, and Sergeant Glover suggested that Plaintiffs should get harassment prevention orders so that the police could protect them. (<u>See</u> J. Furnish Deposition Testimony at  256:3-16, attached hereto as <u>Exhibit P8</u>).

77.    **Defendant's Statement:** During his deposition, Sergeant Glover testified that he did not "encourage" Kaiser or Furnish to seek a Criminal Harassment Order but "just made them aware of their options." (Deposition Testimony of Sergeant Glover 17: -24; 31:15-18, attached hereto as <u>Exhibit 36</u>).

**Plaintiffs' Response: <u>Disputed</u>**. Sergeant Glover testified only that "I think I just made them aware of their option." Rudnick's <u>Exhibit 36</u> at 19:5-10.

78.    **Defendant's Statement:** Plaintiffs never told the Chatham Police prior to seeking the orders that they were engaged in a dispute with Rudnick regarding the purchase of the White House. *Id.* at 31-32:24-9; 36-40.

**Plaintiffs' Response: <u>Disputed</u>.** It is **<u>disputed</u>** that Plaintiffs, at the time they met with the Chatham Police, were involved in litigation with Mr. Rudnick regarding the purchase of the White house. It was Mr. Rudnick that sued Plaintiffs in August 2018. (<u>See</u> G. Kaiser Deposition Testimony at 108:1-19, attached hereto as <u>Exhibit P7</u>).

79.    **Defendant's Statement:** Plaintiffs did not provide the police with the text messages or emails exchanged between Kaiser and Rudnick regarding offers to resolve the White House and Boundary Dispute. *Id.* at 33-35.

**Plaintiffs' Response: <u>Disputed</u>** because the statement mischaracterizes the threats,

intimidation, and coercion and suggesting that it was a legitimate "offer" or "Boundary Dispute," which it was not.

80.    **Defendant's Statement:** On June 7, 2018 Mr. Kaiser filed complaints for Harassment Prevention Order ("HPO") pursuant to G.L. c. 258E against the Kirchicks and Rudnick in Orleans District Court. (Exhibit 1 at ¶63).

**Plaintiffs' Response: Disputed.** The authority cited does not support the alleged statement. It is undisputed for purposes of this motion that Kaiser filed complaints for HPOs against the Kirchicks and Rudnick, but **disputed** that he filed the complaints on June 7, 2018.

81.    **Defendant's Statement:** On Friday, June 8, 2018, Grant Kaiser appeared before Judge Welsh in the Orleans District Court and obtained ex-parte harassment prevention orders pursuant to M.G.L. c. 258E against each of the Defendants. (Transcript of Hearing, Barnstable District Court, June 8, 2018, attached hereto as Exhibit 37).

**Plaintiffs' Response:** Undisputed for the purposes of this motion.

82.    **Defendant's Statement:** The M.G.L. c. 258E Orders provided that "violation of this order is a criminal offense punishable by imprisonment or fine or both." (Harassment Prevention Order for Ronald Rudnick, June 8, 2018, attached hereto as Exhibit 38).

**Plaintiffs' Response:** It is undisputed for the purposes of this motion, that the form Harassment Prevention Order used by Massachusetts Trial Courts (Form HA-2 (5/10)), contains the statement, "violation of this order is a criminal offense punishable by imprisonment or fine or both." (Harassment Prevention Order, June 8, 2018, Rudnick Exhibit 38).

83.    **Defendant's Statement:** The Defendants were served with the Orders by the Chatham Police the same day. *Id.*

**Plaintiffs' Response: Disputed** that the evidence cited supports this statement of fact.

84.     **Defendant's Statement:** The next business day, June 11, 2018, Rudnick's and Kirchicks' then counsel, Attorney Henchy received a letter from the Plaintiffs' former counsel, Attorney Brooks. (Attorney Correspondence, June 11, 2018, attached hereto as <u>Exhibit 39</u>).

**Plaintiffs' Response: <u>Disputed</u>**. It is undisputed that Mr. Brooks emailed Mr. Henchy a letter dated June 11, 2018. It is disputed that the authority cited establishes that the Kirchicks had retained, or even spoken to, Attorney Henchy. (<u>See</u> Attorney Correspondence, June 12, 2018, attached hereto as <u>Exhibit P63</u>; June 12, 2018 Attorney Correspondence, June 12, 2018, attached hereto as <u>Exhibit P64</u>).

85.     **Defendant's Statement:** In the June 11, 2018 letter, Attorney Brooks thanked Attorney Henchy for speaking with him regarding the Kirchicks and Rudnick efforts in attempting to resolve both the White house and 30' way disputes. *Id.* This statement is also disputed because it mischaracterizes the threats, intimidation, and coercion and suggesting that it was a legitimate "dispute."

**Plaintiffs' Response: <u>Disputed</u>**. Mr. Brooks thanked Attorney Henchy for speaking with him the previous Friday. Mr. Brooks did not thank Attorney Henchy for any actions that Defendants took; on the contrary, Mr. Brooks pointed out to Attorney Henchy that "[y]our clients have threatened that if my clients do not agree to remove two pear trees, your clients will make my clients [sic] lives miserable and run them out of town."

86.     **Defendant's Statement:** In the letter, Brooks advises that although he acknowledged Rudnick's offer to accept $40,000 to relinquish the purchase rights of the White House, Kaiser and Furnish would only pay $15,000 and would only take down one tree for the Kirchicks' in exchange for the Kirchicks forfeiting all rights concerning the 30' way. *Id.*

**Plaintiffs' Response: <u>Disputed</u>**. Attorney Brooks' proposed agreement contains terms

other than those stated, many of which were for the benefit of Defendants. See Rudnick Exhibit 39. This statement of fact therefore mischaracterizes the evidence cited. This statement is also **disputed** because it mischaracterizes the Defendants March 23, 2018 offer to give up their rights to the private way. (Attorney Correspondence, March 23, 2018, attached hereto as Exhibit P119).

87.     **Defendant's Statement:** On July 17, 2018, Rudnick appeared for the extension hearing on Kaiser's ex-parte harassment prevention order against him. Rudnick was represented by Attorney Henchy. (Exhibit 12).

**Plaintiffs' Response:** Undisputed for the purposes of this motion.

88.     **Defendant's Statement:** Kaiser and Furnish retained Attorney Matthew Kelley ("Kelley") to represent them. *Id.*

**Plaintiffs' Response:** Undisputed for the purposes of this motion.

89.     **Defendant's Statement:** At the courthouse, Attorney Kelley requested Rudnick's counsel put the hearing off for another two weeks. Rudnick declined to put off the hearing. (Exhibit 11 at 65).

**Plaintiffs' Response: Disputed.** It is **disputed** that the authority cited establishes the statement. There is no page 65 in Exhibit 11.

90.     **Defendant's Statement:** Judge Welsh conducted a full evidentiary hearing on the Plaintiffs request to extend the HPO against Rudnick. (Exhibit 12).

**Plaintiffs' Response: Disputed** that Furnish filed a complaint seeking an HPO against any Defendant. See Rudnick's Exhibit 12, generally. It is undisputed for the purposes of this motion that Judge Welsh conducted an evidentiary hearing regarding Kaiser's request to extend the HPO against Mr. Rudnick.

91.     **Defendant's Statement:** During the full evidentiary hearing, Mr. Kaiser provided

testimony. (Exhibit 12).

**Plaintiffs' Response:** Undisputed for the purposes of this motion.

92. **Defendant's Statement:** In his testimony, Mr. Kaiser testified that Mr. Rudnick never threatened him verbally. (Exhibit 12 at 32).

**Plaintiffs' Response: <u>Disputed</u>**. This statement is taken out of context and therefore mischaracterizes the evidence. Kaiser testified that Rudnick never verbally threatened to physically harm him but that Rudnick threatened to physically harm him through his actions. Rudnick's Exhibit 12 at 31-32. Kaiser further testified that Rudnick threatened to harm his property. <u>Id</u>. at 32.

93. **Defendant's Statement:** In his testimony, Mr. Kaiser testified that the mature privet was "along the side of the Kirchick property." When shown his testimony from the June 8, 2018 ex-parte hearing in front of Judge Welsh, Mr. Kaiser admitted that the mature privet was on the Kirchick side of the property. (Exhibit 12 at 31).

**Plaintiffs' Response: <u>Disputed</u>**. The evidence cited does not support the statement that Kaiser was shown any testimony from any prior hearing. See Rudnick Exhibit 12 at 31. Further **<u>disputed</u>** because the statement mischaracterizes the testimony cited. Kaiser did not "admit" anything; he answered Attorney Henchy's questions that the privet butchered by Defendants "lines the right of way leaving my house," and "is to the side of the Kirchick property." <u>Id.</u>

94. **Defendant's Statement:** Kaiser admitted to Judge Welsh on July 17, 2018, that the vehicle was parked in the private way. Id. at 9.

**Plaintiffs' Response: <u>Disputed</u>**. The statement mischaracterizes the testimony cited. Kaiser did not "admit" anything; he answered Attorney Kelley's questions. <u>See</u> Rudnick's Exhibit 12 at 9. It is undisputed for the purposes of this motion that the vehicle was parked in the

33

private way.

95.     **Defendant's Statement:** After testimony from both Kaiser and Furnish, Judge

Welsh concluded that although he felt "Mr. Rudnick went a little too far" in an ongoing

negotiation, the conduct did not amount to "harassment." Id. at 45-46.

**Plaintiffs' Response: <u>Disputed</u>.** "Harassment" is not defined for purposes of the

statement. Judge Welsh did not conclude that Rudnick's behavior was not harassment in general,

only that Rudnick's behavior was not the type of harassment where a c. 258E harassment

prevention order would be granted. Undisputed for purposes of this motion that Judge Welsh

concluded that Mr. Rudnick went a little too far and further, that Rudnick went "beyond . . . what

can be considered civil negotiation." Rudnick's Exhibit 12 at 45-46.

96.     **Defendant's Statement:** Judge Welsh subsequently denied the request for a

harassment prevention order against Rudnick. Id.

**Plaintiffs' Response:** Undisputed for the purposes of this motion.

97.     Kaiser and Furnish state that the claims against them were dismissed with

prejudice in February 2020. (Exhibit 2 at 157-158).

**Plaintiffs' Response: <u>Disputed</u>.** The authority cited does not support this statement of

fact. Further, it does not state which "claims" it refers to. It is undisputed that Mr. Rudnick filed

a dismissal of his claims against Plaintiffs in <u>Rudnick v. Kaiser</u>, C.A. No. 1872V00426, in the

Barnstable County Superior Court, on February 5, 2020.

98.     **Defendant's Statement:** Kaiser testified that he donated $25,000 to the White

family so that they could resolve the White House litigation. Id. at 265-267.

**Plaintiffs' Response: <u>Disputed</u>.** The authority cited does not support the alleged

statement of fact. It is undisputed for the purposes of this motion that Kaiser testified that he paid

$25,000 to the White Estate because it was cheaper for Plaintiffs to try to resolve their case against the Estate rather than to continue litigating. (See G. Kaiser Deposition Testimony at 255-256, attached hereto as Exhibit P7).

99.   **Defendant's Statement:** As a prophylactic measure and to minimize future unintended or incidental interactions with Kaiser, Rudnick obtained the no-trespass orders against Kaiser at his privately owned and/or controlled commercial properties. (Exhibit 11 at 131:1-13).

**Plaintiffs' Response: Disputed**. Plaintiffs **dispute** that Mr. Rudnick obtained the no-trespass orders to reduce contact with Kaiser. Rudnick threatened Plaintiffs in April 2018 that he would obtain no-trespass orders if Plaintiffs did not cut down the trees his sister wanted removed. (See G. Kaiser Deposition Testimony at 95:18-96:22, attached hereto as Exhibit P7). Additionally, after obtaining the no-trespass orders against Mr. Kaiser, Mr. Rudnick took actions to increase the probability of interacting with Mr. Kaiser. After July 2018, Rudnick trespassed on Plaintiffs' own property. (See e.g., Photograph, September 18, 2018, attached hereto as Exhibit P193 (depicting Rudnick's vehicle); Text Message, September 19, 2018, attached hereto as Exhibit P195;  Photograph, October 24, 2018, attached hereto as Exhibit P194 (depicting Rudnick in front of Plaintiffs' home); Photograph, June 11, 2019, attached hereto as Exhibit P219; J. Furnish Deposition Testimony at 104:13-23, 155:12-156:8, attached hereto as Exhibit P8). This evidence destroys any claim Rudnick has that he took out No Trespass Orders to ensure that he did not unintentionally interact with Kaiser.

100.   **Defendant's Statement:** In the summer of 2018, Mr. Rudnick issued "no trespass" orders prohibiting Mr. Kaiser from visiting restaurants and other retail establishments in Chatham from properties he owned and/or controlled. (Exhibit 11 at 110:14-19).

**Plaintiffs' Response: <u>Disputed</u>**. Rudnick issued No Trespass Orders both to restaurants and retail establishments located in properties that he owned and controlled and to at least one entity that he neither owned nor controlled. <u>See, e.g.</u>, (<u>See</u> K. McLain Deposition Testimony at 7:18-8:16, 12:1-4, 27:5-28:4, attached hereto as <u>Exhibit P9</u>) (Executive Director of the Chatham Orpheum Theatre testified that Rudnick had him sign an application for a No Trespass Order and also that the Chatham Orpheum Theatre owned the building in which it was located).

101.    **Defendant's Statement:** The Plaintiffs alleged the "no-trespass" orders were "intentionally designed to publicly humiliate Plaintiffs, to exclude Plaintiffs, and to impose severe emotional distress on them while curtailing the use and enjoyment of their property in Chatham." (Exhibit 1 at ¶ 90).

**Plaintiffs' Response:** Undisputed for the purposes of this motion.

102.    **Defendant's Statement:** Plaintiffs allege in their Amended Complaint that the Defendants' alleged harassment campaign was motivated by the Defendants' "deep-seated hatred for the same sex couple next door." Id. at 28.

**Plaintiffs' Response:** Undisputed for the purposes of this motion.

103.    **Defendant's Statement:** Kaiser testified that the basis for claiming that the Defendants have a hatred for same-sex couples was because, "we can think of no better explanation." (Exhibit 2 at 153).

**Plaintiffs' Response: <u>Disputed</u>**. This statement is incomplete and therefore mischaracterizes the evidence. When asked whether it is Plaintiffs' position that Defendants are have an obsessive hatred of them based on their sexual orientation, Kaiser testified both that Plaintiffs could think of no better explanation for the level of Defendants' hatred, for example that they call them "awful dirtbags, bastards, pigs[,]" and "they want to paint the private way –

the entrance to our house purple so as to say, [t]his is where the fags live. (See G. Kaiser
Deposition Testimony at 153:2-155:6, attached hereto as Exhibit P7).

104.    **Defendant's Statement:** The no trespass orders obtained by Rudnick were lawful
and obtained after conversation with the Chatham Police, pursuant to M.G.L. ch. 266 sec. 120.
(Chatham Police Department No Trespass Orders, attached hereto as Exhibit 40).

**Plaintiffs' Response: <u>Disputed</u>**. This is a question of law which is not properly the
subject of a L.R. 56.1 statement and should be stricken. Neither Rudnick nor any other person
who signed a no-trespass order against Mr. Kaiser had good cause to exclude him from public
establishments. Rudnick only persuaded the restaurant and retail owners to sign the No Trespass
Order applications by providing the false information, including that Kaiser intended to enter
their premises and pretend to fall, then sue both Rudnick and the restaurant and store owner. (See
K. McLain Deposition Testimony at 12:15-13:13, attached hereto as Exhibit P9). Rudnick also
told owners that Kaiser had taken an HPO out against him and that the No Trespass Order was
necessary to ensure that Rudnick could visit his own properties, when in fact Kaiser's HPO
against Rudnick was no longer in effect. (See J. Zartarian Deposition Testimony at 19:16-20:10;
23:5-24:8; 26:2-28:11, attached hereto as Exhibit P10).

105.    **Defendant's Statement:** Mr. Rudnick did not obtain any no trespass orders
against Mr. Furnish. Id.

**Plaintiffs' Response:** Undisputed for the purposes of this motion.

106.    **Defendant's Statement:** At all times, Mr. Furnish was free to enter into
properties owned and/or controlled by Mr. Rudnick. Id.

**Plaintiffs' Response: <u>Disputed</u>**. Mr. Furnish was not able to enter properties owned
and/or controlled by Rudnick when accompanied by Kaiser, his husband. (See J. Furnish

Deposition Testimony at 28:4-6, attached hereto as <u>Exhibit P8</u>).

107. **Defendant's Statement:** In their Amended Complaint, Plaintiffs allege Rudnick, "informed business owners, falsely, that Kaiser and/or Furnish intended to harm either their businesses, Rudnick, or both." (Exhibit 1 at ¶73).

**Plaintiffs' Response:** Undisputed for the purposes of this motion.

108. **Defendant's Statement:** The only alleged defamatory statements in Count Two of the Plaintiffs' Complaint states "Defendants, through Mr. Rudnick, published to business owners and operators that "these people,' referring to Mr. Kaiser and Mr. Furnish, in an illegal scheme to defraud, planned to stage a fake slip and fall accident at one or more of their premises and to sue them for money damages; that Mr. Kaiser was 'going after' Mr. Rudnick; and that the HPO was still in place (when it was not) and implied that it was obtained under false pretenses." Id. at 99.

**Plaintiffs' Response: <u>Disputed</u>**. Count Two also incorporates all allegations set forth above in the Amended Complaint. Further, Count Two alleges that "Defendants, in concert, knowingly and intentionally, and falsely, published to a substantial portion of the Chatham community that Mr. Kaiser and Mr. Furnish, had engaged in bad behavior sufficient to warrant the issuance of No Trespass Orders as they intended to harm either the businesses, Mr. Rudnick, or both." Rudnick's Exhibit 1, ¶¶ 98-99.

109. **Defendant's Statement:** Plaintiffs' allege "Defendants published their defamations of and concerning Plaintiffs despite knowing that Plaintiffs had not engaged in any behavior which would justify the issuance of any no trespass order, with no basis for stating that they had a plan to stage a fraudulent accident and then sue the business owners/operators, and knowing that Mr. Kaiser had not obtained the HPO against Mr. Rudnick under false pretenses

and had not lied to the Court in obtaining it." Id.

**Plaintiffs' Response:** Undisputed for the purposes of this motion.

110.    **Defendant's Statement:** Plaintiffs allege that Rudnick falsely, "told Kevin

McLain, the director of the Orpheum Theater, that Plaintiffs intended to commit criminal acts by

staging a fake slip and fall accident on one or more of their establishments and thereafter sue

them for money damages." Id. at 74.

**Plaintiffs' Response:** Undisputed for the purposes of this motion.

111.    **Defendant's Statement:** The Amended Complaint also alleges, "[a]s a further

example, Rudnick told John Zartarian [('Zartarian')], owner of Del Mar, that Kaiser was 'going

after' him; that Plaintiffs obtained an HPO under false pretenses; and that the HPO was still in

effect and prevented Rudnick from entering property that Rudnick owned if Kaiser and Furnish

were present." Id. at 79.

**Plaintiffs' Response:** Undisputed for the purposes of this motion.

112.    **Defendant's Statement:** Plaintiffs' [sic] allege Defendants statements were

defamatory per se and Plaintiffs need not prove any special damages. Id. at 99.

**Plaintiffs' Response:** Undisputed for the purposes of this motion.

113.    **Defendant's Statement:** Plaintiffs allege "Defendants in fact caused Plaintiffs

emotional distress, humiliation and embarrassment for which Defendants are liable. Defendants

also caused Plaintiffs to be held up to, or to fear being help up to, public scorn and ridicule and

damaged reputations, all of which has caused Plaintiffs damages for which Defendants are

liable." Id. at 99.

**Plaintiffs' Response:** Undisputed for the purposes of this motion.

114.    **Defendant's Statement:** Kevin McLain is the Executive Director of The

39

Chatham Orpheum Theater in Chatham, MA. (Deposition Testimony of Kevin McLain, attached

hereto as Exhibit 41).

**Plaintiffs' Response:** Undisputed for the purposes of this motion.

115.   **Defendant's Statement:** The Chatham Orpheum Theater is situated in a

condominium complex owned by Lighthouse Realty. Id. at 9.

**Plaintiffs' Response: <u>Disputed</u>**. The evidence cited does not support this statement of

fact.

116.   **Defendant's Statement:** Lighthouse Realty does not own The Chatham Orpheum

Theater. Id.

**Plaintiffs' Response:** Undisputed for the purposes of this motion.

117.   **Defendant's Statement:** Although McLain signed a trespass order at Rudnick's

request, Kaiser informed the Chatham Police that Lighthouse Realty did not own The Chatham

Orpheum Theater. (Police Report from Chatham Police Department, August 4, 2018, attached

hereto as Exhibit 42).

**Plaintiffs' Response:** Undisputed for the purposes of this motion.

118.   **Defendant's Statement:** The order was never served on Kaiser and Kaiser was

never barred from the The [sic] Chatham Orpheum Theater. Id.

**Plaintiffs' Response: <u>Disputed</u>**. The No Trespass Order was served on Kaiser when

Kaiser went to the police department and the officer handed Kaiser the signed Chatham

Orpheum Theater No Trespass Notice. Kaiser then advised the officer that Rudnick did not own

the Chatham Orpheum Theatre. <u>See</u> Police Report from Chatham Police Department at R00063,

July 31, 2018 attached hereto as <u>Exhibit P190</u>.

119.   **Defendant's Statement:** When asked about the conversation Rudnick had with

McLain, McLain testified, "[w]hat I remember was that the general gist of the conversation."
(Exhibit 41 at 14).

**Plaintiffs' Response:** Undisputed for the purposes of this motion that this is part of a
statement made by Mr. McLain.

120.    **Defendant's Statement:** During McLain's deposition, Plaintiffs' counsel tried to
suggest to McLain that Rudnick would, "make things difficult for him" if he did not sign the
trespass order. Id. at 18:23-19:19.

**Plaintiffs' Response: <u>Disputed</u>**. The evidence cited does not support the statement that
Plaintiffs' counsel tried to "suggest" anything to McClain. Plaintiffs' counsel simply asked "Did
-- did Mr. Rudnick tell you that if you  did not sign this document, that he could make things
difficult for you?" <u>See</u> Rudnick's Exhibit 41 at 18:23-19:1. Further, the Chatham Police records
state: "McLain said that he signed the notice at Rudnick's request because he said if he did not
Rudnick would make things difficult for him as he owns most of the property around the
theater." See Police Report from Chatham Police Department at R000063, June 6, 2018, attached
hereto as <u>Exhibit P53</u>).

121.    **Defendant's Statement:** McLain denied that Rudnick pressured him, but testified
that the Plaintiffs' former lawyer, William Litchfield called and threatened him over the phone,
stating that he would challenge the theater's charitable tax status and discourage donors from
donating because Litchfield believed erroneously that Kaiser was banned from the theater. Id. at
46:19-49:22.

**Plaintiffs' Response: <u>Disputed</u>**. When shown his police report, which stated that
McLain reported to police that "he signed the notice at Rudnick's request because he said if he
did not Rudnick would make things difficult for him as he owns most of the property around the

theatre[,]" McLain testified:

> Yeah, I was speaking philosophically. I wasn't speaking literally. I was speaking in the sense that -- in the sense that my feeling was Ron was very upset, and that he wanted me to sign this because -- for all of the obvious reasons we've stated here before.
>
> And in my conversation with him, with the police officer, I said, you know, I said, I felt like I -- I needed to sign it because, theoretically, you know, my life could be made very difficult here because of the situation the theater is in.

(See K. McLain Deposition Testimony at 28:5-17, attached hereto as Exhibit P9). Further **disputed** that Attorney Litchfield was acting in any manner at Plaintiffs' instruction or that he threatened Mr. McLain at all. See id. at 47:19-48:1.

122.    **Defendant's Statement:** McLain testified that he was so disturbed by the Plaintiffs' lawyer, William Litchfield's threats, that he called the Chatham Police to have the conversation memorialized. Id. at 36.

**Plaintiffs' Response: Disputed**. The evidence cited does not support this statement of fact. In further response, at a different point in his deposition, McClain testified that he called Chatham Police to document the fact that he had not applied for a No Trespass Order against Kaiser. (See K. McLain Deposition Testimony at 50:15-51:9, attached hereto as Exhibit P9).

123.    **Defendant's Statement:** McLain further testified that Rudnick did not defame either Plaintiff in the single conversation he had with Rudnick about the Plaintiffs and nothing Rudnick said to McLain held the Plaintiffs up to "scorn, hatred, ridicule or contempt." Id. at 54:17-55:5.

**Plaintiffs' Response: Disputed**. This line of questioning asked McLain to provide a legal opinion, which he was not qualified to provide. Further, McLain testified that Rudnick told him that Kaiser intended to pretend to fall and then sue everyone in the condominium, a

statement that by itself would subject Kaiser to scorn, ridicule, or contempt. (See K. McLain Deposition Testimony at 12:20-13:12, attached hereto as Exhibit P9).

124. **Defendant's Statement:** McLain testified that he had one conversation with Rudnick regarding an "order" but that he did not recall whether the order related to the Plaintiffs. Id. at 12.

**Plaintiffs' Response: <u>Disputed</u>**. The evidence cited does not support this statement of fact because McLain did not testify that he did not recall whether the conversation he had with Rudnick regarding an order related to Plaintiffs. In further response, McLain testified during his deposition that McLain did not remember the specifics of his conversation with Rudnick but testified to the "general gist" of the conversation. (See K. McLain Deposition Testimony at 14:8-16:3, attached hereto as Exhibit P9).

125. **Defendant's Statement:** McLain testified, "my remembrance of that conversation was that this person was going to come onto the condominium complex and pretend – or – or fall, or pretend to fall, and then sue all of us. And he was trying to get an order so that if that happened or if something happened, then that would protect us." Id. at 13.

**Plaintiffs' Response:** Undisputed for the purposes of this motion.

126. **Defendant's Statement:** McLain testified that Rudnick told him he was concerned that Kaiser would file a lawsuit against Rudnick and/or the condominium trust. Id. at 42:22-43:5.

**Plaintiffs' Response:** Undisputed for the purposes of this motion.

127. **Defendant's Statement:** Specifically, McLain testified to the following:

> Q: Would it be fair to say, sir, that nothing Mr. Rudnick said to you about this person in that early-morning conversation held that person up to scorn, hatred, ridicule or contempt? Would that be an accurate statement?
> **A: That would be accurate. We never had any detailed conversations**

43

> **about Mr. Kaiser or the other gentleman at all, it was –**
> Q: And your – and your view of Mr. Kaiser or Mr. Furnish was not
> affected in any way from anything Mr. Rudnick said to you that day,
> correct?
> **A: That is correct.**

Id. at 54:17-55:5.

**Plaintiffs' Response: <u>Disputed</u>**. Portions of this line of questioning asked McLain to provide a legal opinion, which he was not qualified to provide. Further, McLain testified that Rudnick told him that Kaiser intended to pretend to fall and then sue everyone in the condominium, a statement that by itself would subject Kaiser to scorn, ridicule, or contempt. (<u>See</u> K. McLain Deposition Testimony at 12:20-13:12, attached hereto as <u>Exhibit P9</u>).

128.    **Defendant's Statement:** McLain testified that despite having several conversations with Rudnick after this discussion, Rudnick never mentioned Kaiser or the trespass orders again. Id. at 36:21-37:3.

**Plaintiffs' Response:** Undisputed for the purposes of this motion.

129.    **Defendant's Statement:** McLain testified that his opinion of Kaiser was not altered during the single conversation with Rudnick and that "I don't even think I remembered this gentleman's name two minutes after we had the conversation." Id. at 53.

**Plaintiffs' Response:** Undisputed for the purposes of this motion.

130.    **Defendant's Statement:** John Zartarian is the owner of Del Mar restaurant. (Deposition Testimony of John Zartarian, attached hereto as Exhibit 43).

**Plaintiffs' Response:** Undisputed for the purposes of this motion.

131.    **Defendant's Statement:** In July and August 2018, Rudnick, through Lighthouse Realty, owned the property where Del Mar operates. Id. at 12.

**Plaintiffs' Response: <u>Disputed</u>**. The authority does not support the alleged fact.

132.   **Defendant's Statement:** Zartarian testified that prior to speaking to Rudnick, he did not know and had no opinion of Kaiser. Id. at 29:11-15.

**Plaintiffs' Response:** Undisputed for the purposes of this motion.

133.   **Defendant's Statement:** Zartarian testified that Rudnick "came to me and said that he had a dispute with these two people, and that they had issued a restraining order on him and that he didn't want to be excluded from a property that he owned, real estate that he owned in a restaurant that he was a very good customer in, and he asked me to sign this." Id. at 20.

**Plaintiffs' Response:** Undisputed for the purposes of this motion.

134.   **Defendant's Statement:** Specifically, Zartarian testified to the following:

> Q: And did he explain the basis for the restraining order to you?
> **A: No, just that there was a dispute.**
> Q: Did he explain anything further about what the restraining order pertained to?
> **A: He did not.**

Id. at 22:23-23:4.

**Plaintiffs' Response:** Undisputed for the purposes of this motion.

135.   **Defendant's Statement:** Zartarian testified that after speaking with Rudnick, he did not form a negative opinion of Kaiser. Id. at 20.

**Plaintiffs' Response: <u>Disputed</u>**. The evidence cited does not support this statement of fact.

136.   **Defendant's Statement:** Plaintiffs allege, "hundreds of thousands of dollars have been spent dealing with Defendants' conduct including attorneys' fees and travel expenses to attend various hearings and depositions." (Affidavit of John Furnish, July 30, 2021, attached hereto as Exhibit 44).

**Plaintiffs' Response: <u>Disputed</u>** that the authority cited is accurately quoted.

137.   **Defendant's Statement:** Plaintiffs filed this defamation claim without ever knowing what Rudnick said to the business owners that signed the no trespass orders. (Plaintiffs' Original Complaint, Exhibit 45).

   **Plaintiffs' Response: <u>Disputed</u>**. The authority cited does not establish the fact alleged. The statement also mischaracterizes the evidence cited. The original Complaint states that "[a]lthough the precise words used by Mr. Rudnick are currently unknown they would have necessarily included false and defamatory statements of and concerning Plaintiffs sufficient to cause persons who do not know Plaintiffs to bar them from their premises." (<u>See</u> Rudnick Exhibit 45, ¶85; J. Furnish Deposition Testimony at 65:7-68:1, attached hereto as <u>Exhibit P8</u>). While Plaintiffs had a general understanding that Rudnick had defamed them, they learned the precise words that Rudnick used to defame them during discovery. (<u>See</u>, <u>e.g.</u>, K. McLain Deposition Testimony at 12:15-13:13, attached hereto as <u>Exhibit P9</u>).

138.   **Defendant's Statement:** Furnish alleges "serious emotional distress" related to Defendants conduct has caused his to seek "medical treatment for stress, anxiety, sleep disturbances, difficulty concentrating and feeling overwhelmed due to the stress of their harassment." (Exhibit 44 at ¶39).

   **Plaintiffs' Response:** Undisputed for the purposes of this motion.

139.   **Defendant's Statement:** As a result of the Defendants' alleged conduct, Furnish testified that he treated with Paulette Richard-O'Rourke and Kumara Sidhartha, MD. (Exhibit 5, at 129-30; 142).

   **Plaintiffs' Response:** Undisputed for the purposes of this motion.

140.   **Defendant's Statement:** Kaiser testified that despite these allegations, he has not sought any medical or therapeutic treatment as a result of the Defendants' conduct. (Exhibit 2 at

323).

**Plaintiffs' Response: <u>Disputed</u>**. The authority cited for the allegedly undisputed fact is not contained in the exhibit. Exhibit 2 does not contain a page 323.

Respectfully submitted,

GRANT KAISER and JOHN FURNISH,

By their attorneys,

/s/ Howard M. Cooper
Howard M. Cooper (BBO #543842)
Max D. Stern (BBO # 479560)
Maria T. Davis (BBO #675447)
Alycia M. Kennedy (BBO # 688801)
Todd & Weld LLP
1 Federal Street, 27th Floor
Boston, MA 02110
hcooper@toddweld.com
mdstern@toddweld.com
mdavis@toddweld.com
akennedy@toddweld.com
(617) 720-2626

Dated: June 30, 2022

## <u>CERTIFICATE OF SERVICE</u>

I, Alycia Kennedy, hereby certify that this document has been filed through the ECF   system, will be sent electronically to the registered participants as identified on the notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

/s/ Alycia Kennedy

Alycia Kennedy
